UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| AF HOLDINGS, LLC, ) <br> ) <br>    Plaintiff/Counter-Defendant, ) <br> v. ) <br> ) <br> ELLIOT OLIVAS, ) <br> ) <br>    Defendant/Counter-Plaintiff. ) <br> ) | Civil Action No. 3:12-cv-01401-JBA <br><br> JUNE 27, 2013 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR DEFAULT JUDGMENT PURSUANT TO FED.R.CIV.P. 55 AND AS A SANCTION UNDER FED.R.CIV.P. 37(b) & 41(b)**

Pursuant to Rules 55, 37, 41, of the Federal Rules of Civil Procedure, Defendant Elliot Olivas ("Defendant") seeks entry of a default judgment on its counterclaims against Plaintiff AF Holdings, LLC ("Plaintiff").

### I. RELEVANT FACTS AND PROCEDURAL HISTORY

**A. Plaintiff's Fraud on the Court.**

Plaintiff's counsel, Prenda Law, Inc.,[1] is a law firm whose principals, John Steele, Paul Duffy and Paul Hansmeier, have developed a lucrative practice monetizing copyright infringement allegations of pornographic films. Their practice has entailed filing multiple lawsuits against individuals in districts across the United States, leveraging the individual defendant's fear of being exposed to their friends, family members, and employers as not only a copyright infringer, but a stealer and viewer of pornography. As Bloomberg Business week reported:

> Prenda's methods exhibit a dark understanding of copyright law and the Internet, as detailed in hundreds of court documents and by the few defendants brave enough to fight back. Typically, Prenda starts by filing preliminary lawsuits against John Does identified only by their IP address, the number assigned to every computer with an Internet connection. Then it asks judges to compel Internet service providers (ISPs) such as Comcast and AT&T to surrender the names of those customers. Next, Prenda says it will sue those people unless they pay to settle the claims. When it does name someone in a suit, Prenda usually posts his name—defendants are almost always men—on its website, along with a link to the lawsuit. If a spouse or potential employer Googles the defendant, they'll learn he's been accused of stealing salacious movies such as *Sexual Obsession*.

---

[1] Prenda Law, Inc. a/k/a Steele Law a/k/a Steele Hansmeier PLLC a/k/a Anti-Piracy Law Group a/k/a Paul Duffy Law Group.

Claire Suddath, *Prenda Law, the Porn Copyright Trolls*, Bloomberg Businessweek (May 30, 2013).[2]

1. **Opposing Counsel's Undisclosed Interest in and Control of the Litigation.**

Prenda Law and its clients, including Plaintiff, use the Media Copyright Group, LLC ("MCG")[3] to "monitor [] and document[] Internet-based piracy of our clients' copyrighted creative works." Peter Hansmeier, MCG's sole employee and declarant, is also the brother of Prenda Law's Paul Hansmeier. John Steele has publicly stated "he and a partner [presumptively, Paul Hansmeier] spent about $250,000 to develop software that tracks illegal BitTorrent sharing from an office in Minneapolis."[4] If we are to take John Steele at his word, then Prenda Law also owns and operates the company responsible for identifying infringements.[5]

2. **A Stolen Identity Makes for a Straw Plaintiff.**

Plaintiff alleges that it was assigned the copyright to *Sexual Obsession* pursuant to an assignment agreement. (Complaint ¶ 19, Dkt. #1). The assignment agreement is dated effective June 12, 2011. (Complaint, Ex. B, p. 1.) It bears a signature for Raymond Rogers, on behalf of assignors; and bears a signature for Alan Cooper, on behalf of assignee AF Films, LLC. *(Id.*p. 3.) Yet, the only Alan Cooper to ever come forward disclaimed any association with Plaintiff.

> At the center of this issue is the identity of a person named Alan Cooper and the validity of the underlying copyright assignments. If it is true that Alan Cooper's identity was misappropriated and the underlying copyright assignments were improperly executed using his identity, then Plaintiff faces a few problems.
>
> First, with an invalid assignment, Plaintiff has no standing in these cases. Second, by bringing these cases, Plaintiff's conduct can be considered vexatious, as these cases were filed for a facially improper purpose. And third, the Court will not idle while Plaintiff defrauds this institution.

*Ingenuity 13 LLC v. John Doe*, No. 12-cv-08333-ODW, ECF No. 48 (C.D. Cal. Feb. 27, 2013). *See also AF Holdings LLC v. John Doe*, No. 12-cv-01449-JNE, ECF No. 33 (D. Minn. June 20, 2013);

---

[2] Available at: http://www.businessweek.com/articles/2013-05-30/prenda-law-the-porn-copyright-trolls.

[3] MCG also operates as 6881 Forensics, a Minnesota corporation, but no such company is registered in Minnesota. Compare Declaration of Peter Hansmeier filed in *AF Holdings LLC v. Does 1-1,140,* No. 11-cv-01274, ECF No. 3-1 (D.D.C. 2011) with that filed in *AF Holdings LLC v. John Doe*, No. 12-cv-02393-CRB, ECF No. 7-1 (N.D. Cal. 2012).

[4] Steve Schmadeke, *Chicago lawyer leads fight against porn piracy*, Chicago Tribune (November 15, 2010). Available at: http://articles.chicagotribune.com/2010-11-15/news/ct-met-porn-attorney-20101115_1_face-lawsuitanti-piracy-campaign-copyright-violators.

[5] At no point that counsel is aware of, has this interest in or control over the litigation been disclosed to a court.

*AF Holdings LLC v. Joe Navasca*, No. 12-cv-02396, ECF No. 76 (N.D. Cal April 23, 2013); *AF Holdings LLC v. Harris*, No. 12-cv-02144-GMS, ECF No. 51 (D. Az. May 17, 2013).

Plaintiff further claims to be a limited liability company organized and existing under the laws of the Federation of Saint Kitts and Nevis. (Complaint 1 ¶ 2.  *See also* Notice of Order in Related Case, Dkt. # 25.)  In reality, it is an alias of its counsel.  Judge Wright, in *Ingenuity 13, LLC,* found:

> [John] Steele, [Paul] Hansmeier, and [Paul] Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the AF Holdings and Ingenuity l3 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.
>
> The Principals stole the identity of Alan Cooper (of 2l70 Highway 47 North, Isle, MN 56342). The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings. Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele. There is no other person named Alan Cooper related to AF Holdings or Ingenuity 13.

(Order Issuing Sanctions, attached as Ex. A to Notice of Order, Dkt # 25.)

At the show-cause hearing before Judge Wright, John Steele, Paul Hansmeier, and Paul Duffy all invoked their Fifth Amendment privilege against self-incrimination and refused to answer any questions. *Id.* at 3. See also *Alan Cooper v. John Steele, Prenda Law, Inc., AF Holdings, LLC and Ingenuity13, LLC*, No. 27-cv-13-3463 (4th Dist., Hennepin Cty., Minn. 2013) (wherein Prenda Law and AF Holdings failed to answer the complaint and plaintiff moved for default).

**3.  A Manufactured Cause of Action.**

Adding to the undisclosed interests and stolen identity, evidence in a related matter indicates that Prenda Law not only fabricated the Plaintiff AF Holdings, but the cause of action as well. *First Time Videos v. Oppold*, No. 12-cv-01493-CEH-KRS, ECF No. 37-11 (M.D. Fla. 2013). A user identified as "sharkmp4" distributed Plaintiff's films, including *Sexual Obsession*, via BitTorrent from several IP addresses. *Id.* at ¶¶ 21-26. These same IP address were used to log into John Steele's GoDaddy account, highlighting how someone at Prenda Law has full access and control over

3

Plaintiff's works.[6]   More specifically, it indicates that someone at Prenda Law actually placed the work that is alleged to have been infringed onto the electronic medium by which is alleged to have been infringed.

Prenda Law represents an entire in-house copyright trolling monopoly—not designed to promote works for distribution and sale, but to allege infringement and reap profits from the threat of litigation. *AF Holdings v. Does 1-135*, No. 11-cv-0336-LHK, ECF No. 43-1 pp. 4-6 (N.D. Cal. Feb. 23, 2012).

**B.   Factual & Procedural Background of the Instant Suit.**

On June 13, 2011, Plaintiff filed suit against 1,140 Does, including Defendant, in the District Court for the District of Columbia, wherein it falsely claimed jurisdiction was proper because, "each Defendant may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District." *AF Holdings v. Does 1-1,140*, No. 11-cv-01274-RBW, ECF No. 1 ¶ 5 (D.D.C. June 13, 2011) ("D.C. action"). At the time it filed its complaint in D.C. action against the Defendant, Plaintiff knew that the District of Columbia court did not have jurisdiction over Defendant. Plaintiff cannot claim that it was mistaken as to the District of Columbia court's jurisdiction because it has repeatedly demonstrated it is able to determine the proper jurisdiction based solely on the IP addresses it collects.

> "Plaintiff used geo-location technology to trace the IP address of John Doe to a point of origin within the State of []. Geo-location is a method for ascertaining the likely geographic region associated with a given IP address at a given date and time."

*AF Holdings v. Davis*, No. 12-cv-22149-JEM, ECF No. 11 ¶ 6 (S.D. Fla. Oct. 29, 2012).[7] In part, Plaintiff's goal was to confront Defendant with the financial and logistical burdens of defending in a remote foreign jurisdiction to coerce settlement.

Plaintiff voluntarily dismissed all 1,140 individuals on February 2, 2012.[8]

---

[6] Even if Defendant had infringed Plaintiff's work, an "implied license" would shield him from liability because the Plaintiff has implicitly consented to the distribution of its copyrighted work. *AP v. Meltwater U.S. Holdings, Inc.*, 106 U.S.P.Q.2D (BNA) 1509 (S.D.N.Y. 2013); see also *MacLean Assoc., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 Fed. 769, 778-79 (3d Cir. 1991).

[7] See also, *AF Holdings v. Jacobs*, No. 12-cv-04240, ECF No. 14 ¶ 6 (N.D. Ill. Nov. 12, 2012); *AF Holdings v. Hatfield*, No. 12-cv-02049-PJH, ECF No. 14 ¶ 10 (N.D. Cal. June 14, 2012); *AF Holdings v. Does 1-97*, No. 11-cv-3067, 2011 U.S. Dist. LEXIS 126225 (N.D. Cal. 2011) (finding no conspiracy because Plaintiff failed to show any of the Doe defendants exchanged any piece of the seed file with one another).

[8] Once pressed by the D.C. court to identify those Doe Defendants it had jurisdiction over, Plaintiff chose instead to dismiss the action in its entirety. Among AFH's actions against 68 named individuals, *none* are residents of D.C.

4

That action was one of roughly 200 John Doe lawsuits filed by Plaintiff in various in United States District Courts. In each, Plaintiff alleges infringement of the copyright in a pornographic video entitled *Sexual Obsession* against a total of 3,092 individuals.[9]

Plaintiff instituted the current action on October 1, 2012, premised upon the same facts as the D.C. action and alleging copyright infringement, contributory infringement and civil conspiracy against the Defendant. Defendant was sued in the immediate action even though Plaintiff admitted in the D.C. action that it did not not know if Defendant is the same individual as the subscriber. (D.C. action, Order, Sept. 8, 2011; see also *id.* Jan. 30, 2012.)[10] Prior to that, in communications to Defendant's family, Plaintiff had instead identified Janet Olivas, the subscriber of the account and the Defendant's mother, as the infringer.

Plaintiff completed service on the Defendant on January 4, 2013. The Defendant filed and served his Answer and Counterclaims upon the Plaintiff on January 25, 2013.

On March 11, 2013, in a related matter ("California action") involving Plaintiff and its counsel, a hearing was held on an Order to Show Cause. *Ingenuity 13, LLC v. John Doe*, No. 12-cv-8333-ODW, ECF No. 48 (N.D. Cal. 2013). In the immediate days thereafter, Plaintiff initiated voluntary dismissal of numerous copyright infringement actions it had initiated in federal courts throughout the country. See, e.g., *AF Holdings v. Navasca*, No. 12-cv-02396, ECF No. 76 (N.D. Cal. 2013); *AF Holdings LLC v. John Doe*, No. 12-cv-01449-JNE, ECF No. 33, fn. 3 (D. Minn. June 20, 2013). On March 14, 2013, Plaintiff's counsel offered to dismiss its claims with prejudice, but only on the condition Defendant also dismiss his counterclaims and consent to seal the matter. Defendant declined the offer.

On March 20, 2013, a Pre-Filing Conference was held before this Court. During the conference, Plaintiff represented it would be filing a motion to dismiss Defendant's counterclaims and was given a deadline to file such by April 4, 2013. No motion was ever filed nor has Plaintiff otherwise answered the counterclaims against it.

---

[9] *Agence France Presse v. Morel*, No. 10-cv-02730, 2013 U.S. Dist. LEXIS 73401, *6-9 (S.D.N.Y. May 21, 2013) (addressing the question whether an infringer (or group of joint infringers) could be held liable for multiple statutory damages awards based on the infringement of a single copyrighted work if that party was jointly liable with a number of other infringers who were not, themselves, jointly liable with one another.); *McClatchey v. Associated Press*, No. 05-cv-145, 2007 U.S. Dist. LEXIS 40416, *9 (W.D. Pa. June 4, 2007)

[10] See also, *Hatfield*, at ECF Nos. 1 & 14 n.1 (Apr. 24, 2012 & June 14, 2012, respectively); *Botson*, at ECF No. 1 n. 1 (N.D. Cal. Apr. 24, 2012).

On April 3, 2013, Defendant's counsel sent Plaintiff, via certified mail and e-mail, a summary of the initial disclosures he would be seeking under Rule 26(a)(1). Plaintiff did not respond other than to inform Defendant that the matter was forwarded to Paul Duffy of Prenda Law, Inc.

On May 6, 2013, in the California action, Plaintiff and its counsel were sanctioned, in part, for the creation of a fictitious plaintiff—namely, AF Holdings. Defendant filed a copy of the Order with this Court (Dkt. # 25, Ex. A).

On May 8, 2013, Defendant contacted Plaintiff to inquire whether it would still be pursuing its claims. Plaintiff said that it would be voluntarily dismissing its claims with prejudice.

On May 30, 2013, Defendant delivered its Rule 26(f) Proposed Joint Pretrial Discovery Schedule to the Plaintiff. Again, Plaintiff did not respond other than to inform Defendant that the request was forwarded to Paul Duffy of Prenda Law, Inc. Defendant subsequently filed a Rule 26(f) report indicating that he had attempted to confer with the Plaintiff but was unable to do so. (*Dkt. # 27.*)

On June 3, 2013, evidence indicating that Prenda Law not only fabricated the Plaintiff AF Holdings, but the cause of action as well, was filed in a related matter. *First Time Videos v. Oppold*, No. 12-cv-01493-CEH-KRS, ECF No. 37-11 (M.D. Fla. 2013).

In short, Plaintiff has failed to consult with Defendant on the 26(f) report within the allotted time frame; has failed to communicate with Defendant to schedule discovery dates; has failed to dismiss it claims with prejudice as repeatedly promised and generally has failed to respond to or communicate with Defendant to facilitate the progression of the case.

## II. LEGAL STANDARD

**A.  Standard for Default Judgment Under Rule 37.**

Rule 37 of the Federal Rules of Civil Procedure "provides generally for sanctions against parties or persons unjustifiably resisting discovery." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2281 (2d ed. 1994). It provides in pertinent part:

> "If a party … fails to obey an order to provide or permit discovery, including an order under Rule 26(f) … the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: … An order striking out pleadings or parts thereof, … or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

Fed. R. Civ. P. 37(b)(2)(C).

In deciding whether to enter a default judgment pursuant to Rule 37, courts look for guidance to cases decided under Rule 41(b). *See, e.g., Almonte v. Coca-Cola Bottling Co. of New York*, 169 F.R.D. 246, 249-50 (D. Conn. 1996) ("[T]he factors for dismissal under Rule 41(b) are helpful in considering a dismissal under Rule 37.").

Thus, a court's discretion whether or not to grant a default judgment motion under Rule 37 is cabined by several factors. These include "1) any history of noncompliance; 2) prejudice to the moving party caused by the noncompliant party; 3) the extent of warning or notice given to the noncompliant party about the possibility of sanctions; and 4) relative fault of the party as opposed to the party's attorney." *See, e.g., Shannon v. Gen. Elect. Co.*, 186 F.3d 186, 193 (2d Cir. 1999); *Sequeria v. Ford Motor Co.*, No. 04-cv-883, 2005 U.S. Dist. LEXIS 12555, *2 (D. Conn. June 23, 2005). Additionally, "[t]he sanction of dismissal should not be imposed under Rule 37 unless the failure to comply with a pretrial production order is due to 'willfulness, bad faith, or any fault' of the deponent." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (quoting *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986)); *Simmons v. Abruzzo*, 49 F.3d 83, 88 (2nd Cir. 1995); *Bobal v. Rensselaer Polytechnic Institute*; 916 F.2d 759, 764 (2nd Cir. 1990) cert. denied 499 U.S. 943 (1991). Courts in the Second Circuit have also considered whether lesser sanctions would be effective. *American Cash Card v. AT&T*, 184 F.R.D. 521, 524 (S.D.N.Y. 1999) aff'd 2000 U.S. App. LEXIS 6318 (2d Cir. Apr. 6, 2000).

**B. Rule 41(b) Dismissal Standard.**

Under Rule 41(b),

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

In considering a dismissal for failure to comply with a court order under Rule 41, the Second Circuit has set forth five factors that courts should consider:

> 1) the duration of the plaintiff's failures; 2) whether plaintiff has received notice that further delays would result in dismissal; 3) whether the defendant is likely to be prejudiced by further delay; 4) whether the district court judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard; and 5) whether the judge has adequately assessed the efficacy of lesser sanctions.

7

*Lucas v. Miles*, 84 F.3d 532, 535 (2nd Cir. 1996) (citations omitted).

### C. Standard for Default Judgment Under Rule 55.

Rule 55(a) is "the basic procedure to be followed when there is a default in the course of litigation." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). Under Rule 55(a), "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Rule 55(b)(2) allows a party to apply to the Court for entry of a judgment by default. Fed. R. Civ. P. 55(b)(2); *TYR Sport, Inc. v. TYR Natural Spring Water, Inc.,* No. 12-cv-761, 2013 U.S. Dist. LEXIS 81574 (D. Conn. June 5, 2013) (citing Fed. R. Civ. P. 55(b)). More specifically, in order to grant a motion for default judgment, the plaintiff must satisfy the following requirements: "1) show that the defendant was properly served with a summons and complaint; 2) obtain the entry of default; and 3) provide an affidavit setting forth the salient facts including, if the defendant is a person, showing that he or she is not an infant or incompetent, or a member of the United States Military Service." *Id*. (citing Fed. R.Civ. P. 55(b)(2)). (other citation omitted).

"When a default judgment is entered, the defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as to claims relating to damages." *Coated Fabrics Co.*, 2008 U.S. Dist. LEXIS 3470, *4 (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In determining whether to enter a default judgment, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See, *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (citations omitted). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] … delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993) (citations omitted).

In considering a motion for default judgment, the Court is guided by the same three factors that apply to a motion to set aside entry of a default judgment. See, *Buttnugget Publishing v. Radio*

*Lake Placid, Inc.*, 807 F. Supp. 2d 100, 106 (N.D.N.Y. 2011); see also *Enron Oil Corp.*, 10 F.3d at 95; *Rodriguez v. Almighty Cleaning, Inc.,* 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011) (citations omitted). Specifically, the court considers "1) 'whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Rodriguez*, 784 F. Supp. 2d at 123 (quotation and other citations omitted); see also, *Mason Tenders District Council Welfare Fund v. M&M Contracting & Consulting*, 193 F.R.D. 112, 114-15 (S.D.N.Y. 2000) (citation omitted).

### III. ARGUMENT

The record before the Court establishes chronic failure on the part of the Plaintiff to cooperate with discovery and to obey court orders directing responses. Although the typical Rule 55 case is one in which a default has entered because a defendant failed to timely answer, the Court of Appeals for the Second Circuit has also acknowledged a district court's authority to enter a default against a defendant that has failed to "otherwise defend" by inter alia, failing to proceed with discovery. *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 130 (2d Cir. 2011).

There are two basic limitations upon a district court's discretion in imposing sanctions pursuant to Rule 37(b)(2). The rule expressly requires that the sanctions must be "just"; and the sanction must relate to the particular claim to which the discovery order was addressed. *Insurance Corp. of Ireland v. Campagnie des Bauxites*, 456 U.S. 694, 707 (1982); *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991). There is no question that the latter requirement has been met. As to the former, the determination of whether a sanction is "just" must be evaluated in light of the record as a whole. *Campagnie des Bauxites*, 456 U.S. at 707-08; *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979); *John B. Hull v. Waterbury Petroleum Products, Inc.,* 845 F.2d 1172, 1176-77 (D.Conn. 1988); *Jones v. Niagara Frontier Transp. Auth.,* 836 F.2d 731, 735 (2d Cir. 1987).

In deciding whether to dismiss a complaint pursuant to Rule 37, courts look for guidance to cases decided under Rule 41(b). *See, e.g., Almonte v. Coca-Cola Bottling Co. of New York*, 169 F.R.D. 246, 249-50 (D. Conn. 1996) ("[T]he factors for dismissal under Rule 41(b) are helpful in considering a dismissal under Rule 37."). Indeed, Plaintiff's inaction in this case also implicates Rule 41, which provides that a court may, in its discretion, dismiss an action based upon the failure of a

plaintiff to prosecute the action or comply with any order of the court. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962). This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases.

The propriety of a dismissal under either Rule 37(b) (for failure to cooperate in discovery) and/or Rule 41(b) (for failure to prosecute) is informed by five relevant factors:

> 1) the duration of the plaintiff's failures; 2) whether plaintiff has received notice that further delays would result in dismissal; 3) whether the defendant is likely to be prejudiced by further delay; 4) whether the district court judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard; and 5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*See Shannon v. Gen. Elect. Co.*, 186 F.3d 186, 193 (2d Cir. 1999); *Sequeria v. Ford Motor Co.*, No. 04-cv-883, 2005 U.S. Dist. LEXIS 12555, *2 (D. Conn. June 23, 2005).

Consideration of these factors under the facts of this case compels the conclusion that Plaintiff's claims should be dismissed with prejudice:

### A. History of the Plaintiff's Noncompliance.

Plaintiff's failure to prosecute its claims began on March 20, 2013. In a pre-filing conference held before this Court, Plaintiff represented it would be filing a motion to dismiss Defendant's counterclaims. The Court ordered Plaintiff's motion be filed by April 4, 2013. ECF No. 23. More than 60 days later, no motion or answer has been filed. It is well settled that Rule 41(b) "authorizes a district court to dismiss a complaint for failure to comply with a court order, treating the noncompliance as a failure to prosecute." *Shabtai v. Levande*, 38 Fed. Appx. 684, 686 (2d Cir. 2002).

Plaintiff's failure to respond to discovery began on April 3, 2013, when Defendant's counsel sent Plaintiff via certified mail and e-mail a summary of the initial disclosures he would be seeking under Rule 26(a)(1). Plaintiff did not respond other than to inform Defendant that the request was forwarded to Paul Duffy of Prenda Law, Inc. On May 30, 2013, Defendant delivered its 26(f) Proposed Joint Pretrial Discovery Schedule to the Plaintiff. Again, Plaintiff did not respond.[11] On June 4, 2013, Defendant contacted Plaintiff to inquire about his proposed 26(f) report. Again, Defendant was told his requests were forwarded to Paul Duffy. *Siems v. City of Minneapolis*, 560 F. 3d 824 (8th Cir. 2009) (Dismissal of plaintiff's claims with prejudice under Rule 41(b) was justified

---

[11] "If a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f), the court may, after giving an opportunity to be heard, require that party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(f).

given failure by plaintiff's counsel to comply with district court's orders to prepare 26(f) report; counsel's violation of court's orders was willful, and lesser sanctions such as exclusion of evidence would have been futile.)

In short, Plaintiff has a history of noncompliance in this case. Plaintiff has repeatedly flouted it obligations, and it is clear that it will continue to do so. In the circumstances here, the preference for resolving cases on the merits is outweighed by the need for general deterrence and docket control.

**B. Plaintiff has Actively Avoided Warnings of Dismissal.**

Plaintiff has avoided "warnings" of dismissal by 1) failing to engage Defendant's counsel in any discussion of its discovery obligations; and 2) a persistent pattern of intentional delay in pursuing its own claims and defending against the counterclaims.

Although formal warnings often precede the imposition of serious sanctions, the Second Circuitdoes not considered warnings to be an absolute condition precedent. *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).

> We decline to hobble the necessary discretion of district courts to control discovery by imposing a further requirement of formal and specific warnings before imposing Rule 37(b)(2) sanctions, bearing in mind that, as we hold *supra,* such sanctions can only be imposed for violation of a specific, previously entered court order. Parties and counsel have no absolute entitlement to be "warned" that they disobey court orders at their peril.

*Id.*

**C. Defendant will be Prejudiced by Further Delay.**

Defendant is certain to be prejudiced by further delays. Plaintiff's disregard of the Court's deadlines has caused this case to be at a complete stand-still for months. It has been 150+ days since Defendant appeared in this matter, 90+ days since the March 21, 2013 pretrial conference hearing before the Court, 60+ days since the Plaintiff's deadline to move to dismiss or answer the counterclaims—and Plaintiff has yet to cooperate with Defendant's discovery efforts or to comply with the Court's Scheduling Order. See *Almonte v. Coca-Cola Bottling Co. of New York*, 169 F.R.D. 246, 249-50 (D. Conn. 1996) (citations omitted) ("The bar must realize … that these dates fixed by law, rule, or court order … are not empty formalities. To neglect and ignore a date for action in a court proceeding is in reality a thinly-veiled species of disrespect or contempt for the Court").

Here, Defendant moves for default due to the numerous failures on the part of the Plaintiff—in litigation that it initiated. Plaintiff's failure to comply precludes Defendant from engaging in the

discovery process, deposing Plaintiff, disclosing expert witnesses, and proceeding with any Rule 56 motions. Defendant has had to devote extensive time and resources to obtaining the most basic discovery and the case has been significantly delayed. Critically, Plaintiff's public shaming of Defendant on its website continues unchecked while this matter is pending. If a college or potential employer Googles the Defendant, they'll learn been accused of infringing *Sexual Obsession* and unspecified "civil and criminal acts".

### D. Plaintiff's Conduct is Willful.

Willfulness or bad faith 1) "impl[ies] a deliberate disregard of the lawful orders of the court" (*Cine Forty-Second St. Theatre v. Allied Artists*, 602 F.2d 1062, 1067 (2nd Cir. 1979)); 2) "refer[s] to conduct that is more than merely negligent or careless" (*SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)); and 3) may be found where "the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Id*.

As in here, Plaintiff's failure to answer the counterclaims demonstrates willfulness. *Id*. at 738-39 (unexplained failure to respond to complaint indicates willfulness); *Indymac Bank, F.S.B., v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865, 2007 U.S. Dist. LEXIS 93420, *1 (S.D.N.Y. Dec. 20, 2007) (same); *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 129 (2d Cir. 2012) (finding that a district court is empowered to enter a default against a defendant that has failed to "otherwise defend," and noting that the Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend'"); Fed. R. Civ. P. 55(a) ("[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").

This also includes where, as here, Plaintiff failed to comply with the Court's Scheduling Order. See, e.g., *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123-24 (E.D.N.Y. 2011) ("[W]illful and deliberate disregard for [court] orders … militates in favor of default judgment."); *2W Prod. Corp. v. Y&P Wholesale, Inc.*, No. 07-cv-0423, 2009 U.S. Dist. LEXIS 138, *3 (E.D.N.Y. Jan. 5, 2009) ("Entry of a default for non-compliance with court orders is appropriate where a party's failure to comply is attributable to willfulness, bad faith, or fault.").

As the Second Circuit has recognized, "although entry of a default judgment is an extreme measure, discovery orders are meant to be followed." *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir. 1995), *see also S. New Eng. Tel. Co. v. Global NAPs, Inc.*, 251 F.R.D. 82, 90 (D.

Conn. 2008) ("A district court may sanction a party who fails to comply with a discovery order of that court, including rendering a default judgment against the noncompliant party."); *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988) ("A party who flouts [discovery orders] does so at his peril."). Although rare, is not impossible for a lawyer's failures to warrant an "extreme measure." *Harris v. U.S.*, 367 F.3d 74, 81 (2d Cir. 2004).

The question remains whether the willfulness of Plaintiff's counsel, Prenda Law, is automatically imputed to the Plaintiff. Generally, the conduct of an attorney is imputed to the client because in our system of representative litigation, "each party is deemed bound by the acts of his lawyer-agent." *McNulty*, 137 F.3d at 739. However, an attorney's willfulness should not necessarily be imputed to his client. The Second Circuit has held that an attorney's willfulness may be imputed to the client 'where [the party] makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit,' id. at 740, or where the record is 'bereft of any indication of client diligence.' *U.S. v. Cirami*, 535 F.2d 736, 741 (2d Cir. 1976).

This is not the case here, as Plaintiff and its counsel are one in the same. There is no need to impute counsel's knowledge to the Plaintiff, as it has actual knowledge of its acts and their repercussions.

### E.  Lesser Sanctions will have No Effect on the Plaintiff.

More than Plaintiff's disregard of the Court's March 21, 2013 Scheduling Order, Plaintiff's conduct as a whole provides evidence of the fact that no sanction other than dismissal with prejudice is adequate.[12] *Murray v. Mitsubishi Motors of North America, Inc.*, 462 Fed. Appx. 88 (2d Cir. 2012) (affirming District of Connecticut's dismissal as a sanction where the plaintiff failed to comply with court orders on discovery and deadlines). See also Order Issuing Sanctions, attached as Ex. A to Dkt. #. 25 (summarizing conduct of Plaintiff and its counsel, Prenda Law, in a related matter).

By repeatedly failing to comply with their discovery obligations, Plaintiff has demonstrated willful disobedience or bad faith. At a minimum, Plaintiff and its counsel were grossly negligent. *Cine*, 602 F.2d at 1068 ("Where gross professional negligence has been found—that is, where

---

[12] Even if Plaintiff's claims were dismissed without prejudice, Plaintiff has dismissed an action on February 2, 2012 in federal court based upon and including the same claims as set forth in the current suit. Under the two dismissal rule, dismissal in this action will be considered adjudication on merits. *Loubier v. Modern Acoustics*, 178 F.R.D. 17 (D. Conn. 1998).

counsel clearly should have understood his duty to the court—the full range of sanctions may be marshaled."). No lesser sanction than default judgment will suffice.

### F. Meritorious Defense

Next, the Court must consider whether Plaintiff has a meritorious defense. "A defense is meritorious if it is good at law so as to give the fact-finder some determination to make." *American Alliance Ins. Co. v. Eagle Ins. Co. Ltd.*, 92 F.3d 57, 61 (2d Cir. 1996) (quotations omitted). While a defendant need not establish his defense conclusively, he must "present evidence of facts that, if proven at trial, would constitute a complete defense." *McNulty*, 137 F.3d at 740 (citations omitted) (internal quotation marks omitted); *Enron*, 10 F.3d at 98.

By failing to answer or otherwise defend against the counterclaims, Plaintiff has proffered neither a meritorious defense nor an explanation for its shortcomings.

### IV. CONCLUSION

Plaintiff's refusal to provide discovery or litigate the action has caused delay, increased Defendant's litigation costs, and prejudiced Defendant in his ability to defend himself or move forward with his counterclaims. Plaintiff's noncompliance with his obligations warrants the sanction of dismissal with prejudice, and with other sanctions against Plaintiff as may be deemed appropriate by this Court.

Dated: June 27, 2013               Respectfully,

                                                s/ Jason Sweet
                                                Jason E. Sweet (BBO# 668596)
                                                Email: jsweet@boothsweet.com
                                                BOOTH SWEET LLP
                                                32R Essex Street
                                                Cambridge, MA 02139
                                                Tel.: (617) 250-8602
                                                Fax: (617) 250-8883

                                                *Counsel for Elliot Olivas*

## CERTIFICATE OF SERVICE

    I hereby certify that on June 27, 2013, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

                                        s/ Jason Sweet
                                        Jason E. Sweet