## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ———————————————— ) | |
| AF HOLDINGS, LLC, ) | |
| ) | |
|      Plaintiff/Counter-Defendant, ) | |
| v. ) | Civil Action No. 3:12-cv-01401-JBA |
| ) | |
| ELLIOT OLIVAS, ) | |
| ) | OCTOBER 25, 2013 |
|      Defendant/Counter-Plaintiff. ) | |
| ———————————————— ) | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR DEFAULT JUDGMENT PURSUANT TO FED.R.CIV.P. 55(b) AND AS A SANCTION UNDER FED.R.CIV.P. 37(b) & 41(b)

Pursuant to Rules 55, 37 and 41, of the Federal Rules of Civil Procedure, Defendant Elliot Olivas ("Defendant") seeks entry of a default judgment on his counterclaims against AF Holdings, LLC. ("Plaintiff") AF Holdings, LLC has been found in related matters to be an alias of its counsel, Prenda Law, Inc., its principals and its paralegal, Mark Lutz (collectively, "Prenda").

> [John] Steele, [Paul] Hansmeier, and [Paul] Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed … AF Holdings … (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.

ECF No. 25. See also, *AF Holdings LLC v. Joe Navasca*, No. 12-cv-02396, ECF Nos. 116 and 120 (N.D. Cal. 2013).

### I. RELEVANT FACTS AND PROCEDURAL HISTORY

**A.  Skirting the Law.**

Plaintiff's counsel, Prenda Law, Inc.,[1] is a law firm whose principals, John Steele, Paul Duffy and Paul Hansmeier, have developed a lucrative practice monetizing copyright infringement allegations of pornographic films.

> Prenda's methods exhibit a dark understanding of copyright law and the Internet, as detailed in hundreds of court documents and by the few defendants brave enough to fight back. Typically, Prenda starts by filing preliminary lawsuits against John Does identified only by their IP address, the number assigned to every computer with an Internet connection. Then it asks judges to compel Internet service providers (ISPs)

---

[1] Prenda Law, Inc. a/k/a Steele Law a/k/a Steele Hansmeier PLLC a/k/a Anti-Piracy Law Group a/k/a Paul Duffy Law Group a/k/a Alpha Law a/k/a Class Justice a/k/a Class Action Justice Institute.

> such as Comcast and AT&T to surrender the names of those customers. Next, Prenda says it will sue those people unless they pay to settle the claims. When it does name someone in a suit, Prenda usually posts his name—defendants are almost always men —on its website, along with a link to the lawsuit. If a spouse or potential employer Googles the defendant, they'll learn he's been accused of stealing salacious movies such as *Sexual Obsession*.

Claire Suddath, *Prenda Law, the Porn Copyright Trolls*, Bloomberg Businessweek (May 30, 2013).[2]

## 1. A Stolen Identity Makes for a Straw Plaintiff.

Plaintiff alleges that it was assigned the copyright to *Sexual Obsession* pursuant to an assignment agreement. ECF No. 1 ¶ 19. The assignment agreement is dated effective June 12, 2011. ECF No. 1-2 pg. 1. It bears a signature for Raymond Rogers, on behalf of assignor Heartbreaker Productions; and a signature for Alan Cooper, on behalf of assignee AF Holdings. ECF No. 1-2 pg. 3. Yet, the only Alan Cooper to ever come forward disclaimed any association with Plaintiff.

> At the center of this issue is the identity of a person named Alan Cooper and the validity of the underlying copyright assignments. If it is true that Alan Cooper's identity was misappropriated and the underlying copyright assignments were improperly executed using his identity, then Plaintiff faces a few problems.
>
> First, with an invalid assignment, Plaintiff has no standing in these cases. Second, by bringing these cases, Plaintiff's conduct can be considered vexatious, as these cases were filed for a facially improper purpose. And third, the Court will not idle while Plaintiff defrauds this institution.

*Ingenuity 13 LLC v. John Doe*, No. 12-cv-08333-ODW, ECF No. 48 (C.D. Cal. Feb. 27, 2013). See also, *AF Holdings LLC v. John Doe*, No. 12-cv-01449-JNE, ECF No. 33 (D. Minn. June 20, 2013); *AF Holdings LLC v. Joe Navasca*, No. 12-cv-02396, ECF No. 76 (N.D. Cal. April 23, 2013); *AF Holdings LLC v. Harris*, No. 12-cv-02144-GMS, ECF No. 51 (D. Az. May 17, 2013).

At the show-cause hearing before Judge Wright, John Steele, Paul Hansmeier, Paul Duffy and Mark Lutz all invoked their Fifth Amendment privilege against self-incrimination and refused to answer any questions relating to Alan Cooper or AF Holdings. ECF No. 25, pg. 3. See also, *Navasca*, ECF No. 116 pgs. 10-12; *Navasca*, ECF No. 120 pgs. 5-12.

> The Principals stole the identity of Alan Cooper (of 2l70 Highway 47 North, Isle, MN 56342). The Principals fraudulently signed the copyright assignment for ["Sexual Obsession"] using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings. Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele. There is no other person named Alan Cooper related to AF Holdings.

---

[2] Available at: http://www.businessweek.com/articles/2013-05-30/prenda-law-the-porn-copyright-trolls.

ECF No. 25. See also, *Navasca*, ECF Nos. 116 and 120.

### a. Evidence of Identity Theft.

Most recently, Steele stated:

"If you, or anybody else, can ever find any evidence to support these crazy
conspiracy theories—that I own Prenda Law, or I have an ownership interest in these
companies—please send it to me. I can bet my bottom dollar that none of that
[evidence] ever existed. It's a pretty bold claim to make. If there's anything out there,
let's see it."[3]

Defendant notes evidence is like the sword—those who appeal to it, shall perish by it.

i.  In November 2010 John Steele registered and paid for several domains using the alias "Alan
    Cooper." The address given as Alan Cooper's residence—4532 E. Villa Theresa Dr., Phoenix,
    AZ—and the phone number, were that of Jayme Steele, sister of John Steele. Records kept by
    Go Daddy further show John Steele alone controlled the account. See, *Exhibit A*.

ii. Paul Hansmeier, using his Alpha Law address, and John Steele, using Prenda's Florida
    address, registered and paid for several domains including two associated with Prenda Law:
    prendalawfirm.com, and wefightpiracy.org. Records kept by Go Daddy further show John
    Steele and Paul Hansmeier shared control of the accounts. See, *Exhibit B*.

iii. John Steele, again using Prenda's Florida address registered and paid for several domains
     associated with Prenda Law: prendalaw,com; 6881forensics.com; and perealawfirm.com.
     Records kept by Go Daddy further show John Steele alone controlled the account. See,
     *Exhibit C*.

iv. On August 28, 2013, Brett Gibbs, a former Prenda employee, testified at an evidentiary
    hearing in *AF Holdings, LLC v. Navasca*. Navasca's attorney played voice recordings of two
    phone calls to GoDaddy's support lines during which the caller claimed to be Mark Lutz on
    one call and Alan Cooper on the other. Gibbs testified that the caller's voice was in fact
    Steele's. *Navasca*, ECF. No. 116, pg. 8. His testimony was buttressed by the fact that the

---

[3] Joe Mullin, *"Look, you may hate me": 90 minutes with John Steele, porn troll,* Ars Technica (May 10, 2013).

caller asked GoDaddy to send a new password to the email address johnlsteele@gmail.com.[4] That Steele would misappropriate other people's identities on recorded telephone calls makes his oft-repeated denial that he (or someone acting at his direction) forged the name of Alan Cooper on copyright assignments even less credible.

## 2. Opposing Counsel's Undisclosed Interest in and Control of the Litigation.

Plaintiff uses the Media Copyright Group, LLC ("MCG")[5] to "monitor [] and document[] Internet-based piracy of our clients' copyrighted creative works." Peter Hansmeier, MCG's declarant in this matter, is also the brother of Prenda Law's Paul Hansmeier.[6] John Steele has publicly stated "he and a partner [presumptively, Paul Hansmeier] spent about $250,000 to develop software that tracks illegal BitTorrent sharing from an office in Minneapolis."[7] If we are to take John Steele at his word, then Plaintiff also owns and operates the company responsible for identifying infringements.[8]

> "Based on the papers filed and the evidence presented during the March 11, 2013 hearing, the Court concludes there is at least specific jurisdiction over [John Steele, Paul Hansmeier, Paul Duffy] because of their pecuniary interest and active, albeit clandestine participation in these cases."

---

[4] Plaintiff's misappropriation of Alan Cooper's identity began even earlier. In the amended counterclaim in *Paul Duffy v. Paul Godfread and Alan Cooper*, No. 13-cv-01569, ECF No. 36, pg. 7 (N.D. Ill.), Defendants' attorney explains: "On November 6, 2010, at 10:01 a.m. Steele created a GoDaddy account and was assigned Shopper ID 39706942. ECF No. 16-3. Steele initially used his own name and the business address for Prenda Law, Inc. on the account. A mere 15 minutes later, Mr. Steele changed the customer name from "John Steele" to "Alan Cooper" and replaced the Steele Hansmeier address with 4532 East Villa Theresa Drive ("the Villa Theresa Address"). This address was previously shared by John Steele's sister, Jayme Steele and her boyfriend Anthony Saltmarsh. *Id.* Anthony Saltmarsh would later find himself, without his knowledge or consent, the namesake of the 'undefined beneficiary trust' which owns AF Holdings."

[5] MCG also operates as 6881 Forensics, a Minnesota corporation, but no such company is registered in Minnesota. Compare the Declaration of Peter Hansmeier filed in *AF Holdings LLC v. Does 1-1,140*, No. 11-cv-01274, ECF No. 3-1 (D.D.C. 2011) with that filed in *AF Holdings LLC v. John Doe*, No. 12-cv-02393-CRB, ECF No. 7-1 (N.D. Cal. 2012). MCG dissolved on December 22, 2011. Most recently, 6881 has claimed to be a Nevis corporation. *Ingenuity 13*, ECF No. 218, pg. 2.

[6] Paul Hansmeier has testified that neither he nor Steele have any interest in, or association with, MCG/6881 Forensics. Yet in *MCGIP, LLC v. Does 1-316*, Hansmeier declared "I am a Manager of Media Copyright Group, LLC." *MCGIP, LLC v. Does 1-316*, No. 10-cv-06677, ECF No. 6-1 (N.D. Ill. October 15, 2010). Furthermore, both Steele and Hansmeier have maintained email addresses under the 6881forensics.com domain and have used such addresses to communicate regarding Prenda Law infringement cases. The domain name for 6881forensics.com is registered using the GoDaddy accounts of Steele.

[7] Steve Schmadeke, *Chicago lawyer leads fight against porn piracy*, Chicago Tribune (November 15, 2010). Available at: http://articles.chicagotribune.com/2010-11-15/news/ct-met-porn-attorney-20101115_1_face-lawsuitanti-piracy-campaign-copyright-violators.

[8] At no point that counsel is aware of, has this interest in or control over the litigation been disclosed to a court.

*Ingenuity 13, LLC v. John Doe*, No. 12-cv-8333-ODW, ECF No. 86 (C.D. Cal. 2013). See also, *AF Holdings, LLC v. Does 1-20*, No. 11-cv-00491, ECF No. 9 (W.D. Ky. Jan. 29, 2012) (court status report wherein contact information given for Paul Duffy, John Steele, and Paul Hansmeier identifies them as working at Prenda Law).

   a. **Financial Records Show that, in 2012, Plaintiff Distributed over 80% of Settlement Proceeds to the Principals.**

   Steele and Hansmeier have repeatedly claimed that they have no ownership interest in Prenda or AF Holdings and that all settlement proceeds are held in trust accounts for use in future litigation. For example, in a bar complaint, Steele stated "I have never had an ownership interest in Prenda Law Inc"; "I have never had an ownership interest in AF Holdings LLC." *Ingenuity 13*, ECF No. 218-1, pg. 83. Likewise, in his deposition, Hansmeier testified that he had "no ownership interest [in AF Holdings] whatsoever" and that proceeds from settlements went into an attorney's trust account and were withdrawn only to pay expenses of litigation.[9] *Ingenuity 13*, ECF No. 69-1, pgs. 9-13.

   The truthfulness of these and similar statements is refuted by two documents which Prenda Law sent to the Dropbox account on Gibbs' computer in early 2013: "*Prenda Law Profit and Loss Detail, January through December 2012*" and "*Prenda Law Balance Sheet Detail*." See, *Exhibits D and E*. The receipt and disbursements shown in these spreadsheets directly contradict the oft-repeated statements of Steele and Hansmeier that they have no financial interest in Prenda or its litigation.

   According to the *Prenda Law Profit and Loss Detail*, in 2012 alone, Prenda made "Payments to Old Owners"[10]—Hansmeier, Steele, Under the Bridge Consulting[11] and other associated entities— equal to almost 70% of Prenda's total revenue. Hansmeier received $645,821.29 ($185,321.28 directly and $460,500.00 through Under the Bridge). Steele received $660,915.94 ($200,415.94 directly and $460,500.00 through Under the Bridge). This does not include tens of thousands of dollars in additional payments to or on behalf of Steele and Hansmeier for travel and entertainment, meals, credit card charges, and miscellaneous reimbursements, or payments to Steel's wife, Kerry

---

[9] Prenda Law dissolved on July 26, 2013, yet there has been no indication as to where the settlements held in trust for AF Holdings have gone.

[10] The term "Payments to Old Owners" implies that Steele, Hansmeier, and Under The Bridge Consulting were, at one time, owners of Prenda Law. At 70% of revenue, the payments seem unreasonably large to be from an arms-length sale of Steele Hansmeier PLLC to Duffy, especially if Steele and Hansmeier were not playing any role in managing Prenda.

[11] A month before Gibbs left Prenda Law, Hansmeier told Gibbs in a telephone conversation that Hansmeier and Steele each owned 50% of a side-business called Under the Bridge Consulting. *Ingenuity 13*, ECF No. 240- 2 ¶ 18.

Eckenrode Steele.[12] It also does not include payments totaling $37,069.56 to Duffy or Duffy Law Group, also classified as "Payments to Old Owners."

What is most important to note, is neither the *Profit and Loss Detail* nor the *Balance Sheet Detail* show any payments to AF Holdings or other plaintiffs "represented" by Prenda. This only adds credence that AF Holdings is not an independent entity, but rather an alter ego of Prenda and its Principals.

*Exhibit D* shows that Prenda received income from "Pirates" of $1,931,977.09 in 2012, and made "Payments to Old Owners" of $1,343,806.78 or 69.6% of its total receipts. Considering other payments to or for the Principals, the total distributed to them exceeded 80% of receipts, even though these distributions left Prenda with a 2012 loss of $487,791.20. These figures do not include payments to the Principals from other Prenda accounts, or settlements that may have bypassed Prenda completely.

Many entries in The *Prenda Law Profit and Loss Detail, January through December 2012* refer to transfers to and from other Prenda bank accounts. Without reviewing these accounts, it is not possible to say if they were also used to make payments to Steele and Hansmeier, further increasing their income from Prenda.[13] For example, in an email presumptively meant for Steele but erroneously sent to the undersigned, Duffy states:

> "I received 2 disks from Fifth Third bank, titled 'Wholesale Lockbox Imaging.' Please let me know [if] you would like me to forward them."

This could be in reference to the ledger entries marked "53 Operating." *Exhibit F.*

### 3. A Manufactured Cause of Action.

If that were not enough, evidence indicating that Plaintiff not only fabricated the alias "AF Holdings," but the cause of action as well, was filed in related matters.

---

[12] When convenient, Kerry Steele has also served as notary for Plaintiff's affidavits. *AF Holdings LLC v. John Doe*, No. 11-cv-24473-JAL Document 21(S.D. Fla. April 16, 2012) (Wherein Mark Lutz, AF Holdings purported owner, identifies himself as a paralegal with Prenda Law.

[13] See also, Kashmir Hill**,** *How Porn Copyright Lawyer John Steele Has Made A 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates'*, Forbes, October 15, 2012. ("Doing the math, I suggest Steele has made $15 million settling these suits. … Maybe a little less. We don't track the amount we've recovered. More than a few million," [John Steele] says, declining to offer exact numbers."). Available at: http://www.forbes.com/sites/ kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steelejustifieshis-pursuit-of-sometimes-innocent-porn-pirates.

A user identified as "sharkmp4" distributed Plaintiff's films, including *Sexual Obsession*, via BitTorrent from several IP addresses. *First Time Videos v. Oppold*, No. 12-cv-01493-CEH-KRS, ECF No. 37-11 at ¶¶ 21-26 (M.D. Fla. 2013) (Declaration of Devlan Neville). These same IP address were used to log into John Steele's GoDaddy account, highlighting how someone at Prenda has full access and control over Plaintiff's works. Neville's Declaration draws several important conclusions, all of which further implicate Plaintiff in attempts to maximize the number of individuals whom they could pursue for copyright infringement:

> "[I]t appears that there is sufficient evidence to conclude that [AF Holdings] is sharing its own works via sharkmp4 and identifying such swarms to 6881 Forensics upon creation."

> "It appears from all the evidence that John Steele (or someone under his control or with access to his GoDaddy account records with authorization to make changes to domain names) is the most probable candidate for the identity of Pirate Bay user sharkmp4."

> "Because all three entities [AF Holdings, 6881 Forensics and Prenda Law] appear under the same control, it is my belief that the purpose of sharing the file by sharkmp4 appears to have been in an effort to induce infringement for the purposes of monetization of copyrights of commercially low value."

*Id.* at pgs. 22, 29, 31.

The efforts of Plaintiff to entice copyright infringement of films so that they could extort settlements from downloaders were further confirmed in an AF Holdings case in Georgia. In that case, Comcast was asked to identify the subscriber who owned the static IP address 75.72.88.156, the address used by sharkmp4 to seed certain films produced by AF Holdings. On August 6, Comcast's Legal Response Center identified the subscriber[14] as "Steele Hansmeier PLLC" of Minneapolis, MN. *AF Holdings, LLC v. Patel*, No. 12-cv-00262-WCO, ECF No. 61-16 (N.D. Georgia).

The Neville declaration and the Comcast letter provide compelling evidence that Plaintiff designed and operated a lucrative honeypot scheme and had no legal basis for their many copyright-infringement lawsuits.[15]

---

[14] A static IP address is a "permanent" address that remains associated with a single computer over an extended period of time. It is most often associated with businesses. This differs from a dynamic IP address, which is assigned to home consumers *ad hoc* at the start of each session, normally changing from one session to the next.

[15] Even if Defendant had infringed Plaintiff's work, an "implied license" would shield him from liability because the Plaintiff has implicitly consented to the distribution of its copyrighted work. *AP v. Meltwater U.S. Holdings, Inc.*, 106 U.S.P.Q.2D (BNA) 1509 (S.D.N.Y. 2013); see also, *MacLean Assoc., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 Fed. 769, 778-79 (3d Cir. 1991).

**B. Factual & Procedural Background of the Instant Suit.**

On June 13, 2011, Plaintiff filed suit against 1,140 Does, identified only by their IP address, in the District Court for the District of Columbia, wherein it falsely claimed jurisdiction was proper because,

> "each Defendant may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District."

*AF Holdings v. Does 1-1,140*, No. 11-cv-01274-RBW, ECF No. 1 ¶ 5 (D.D.C. June 13, 2011) ("D.C. action"). At the time it filed its complaint in D.C., Plaintiff knew the court there did not have jurisdiction over the subscriber of the IP address at issue. In fact, Plaintiff has repeatedly demonstrated it is able to determine the proper jurisdiction based solely on the IP addresses it collects.

> "Plaintiff used geo-location technology to trace the IP address of John Doe to a point of origin within the State of []. Geo-location is a method for ascertaining the likely geographic region associated with a given IP address at a given date and time."

*AF Holdings v. Davis*, No. 12-cv-22149-JEM, ECF No. 11 ¶ 6 (S.D. Fla. Oct. 29, 2012).[16] In part, Plaintiff's goal was to confront the subscriber, Janet Olivas—the Defendant's mother, with the financial and logistical burdens of defending in a remote foreign jurisdiction to coerce settlement.

Plaintiff voluntarily dismissed all 1,140 individuals on February 2, 2012.[17]

The D.C. action was one of roughly 200 mass Doe lawsuits filed by Plaintiff in various federal courts. In each, Plaintiff alleged infringement of the copyright in a pornographic video entitled *Sexual Obsession* against a combined total of 3,092 individuals.[18]

Under pressure from federal courts to follow through on their threats of litigation, Plaintiff instituted the current action on October 1, 2012 premised upon the same facts as the D.C. action and alleging copyright infringement, contributory infringement and civil conspiracy against the

---

[16] See also, *AF Holdings v. Jacobs*, No. 12-cv-04240, ECF No. 14 ¶ 6 (N.D. Ill. Nov. 12, 2012); *AF Holdings v. Hatfield*, No. 12-cv-02049-PJH, ECF No. 14 ¶ 10 (N.D. Cal. June 14, 2012); *AF Holdings v. Does 1-97*, No. 11-cv-3067, 2011 U.S. Dist. LEXIS 126225 (N.D. Cal. 2011) (finding no conspiracy because Plaintiff failed to show any of the Doe defendants exchanged any piece of the seed file with one another).

[17] Once pressed by the D.C. court to identify those Doe Defendants it had jurisdiction over, Plaintiff chose instead to dismiss the action in its entirety. Of the 68 individuals Plaintiff has named, *none* are residents of D.C.

[18] *Agence France Presse v. Morel*, No. 10-cv-02730, 2013 U.S. Dist. LEXIS 73401, *6-9 (S.D.N.Y. May 21, 2013) (addressing the question whether an infringer (or group of joint infringers) could be held liable for multiple statutory damages awards based on the infringement of a single copyrighted work if that party was jointly liable with a number of other infringers who were not, themselves, jointly liable with one another.); *McClatchey v. Associated Press*, No. 05-cv-145, 2007 U.S. Dist. LEXIS 40416, *9 (W.D. Pa. June 4, 2007).

Defendant. Defendant was named despite Plaintiff's prior admission that at this stage of the litigation Plaintiff does not know if Defendant is the same individual as the infringer. Order, *id.* (D.D.C. Sept. 8, 2011); see also Order, *id.* (D.D.C. Jan. 30, 2012).[19] Prior to that, in communications to Defendant's family, Plaintiff instead identified Janet Olivas as the infringer.

Similarly, the identity of the true rights holder of *Sexual Obsession* is at question. The Complaint states in pertinent part:

> Plaintiff's investigators detected Defendant's illegal download on April 12, 2011 at 12:46:14 AM UTC. However, this is a simply a snapshot observation of when the IP address was *observed* in the BitTorrent swarm; the conduct itself took place before and after this date and time.[20]

ECF No. 1 ¶ 23. The date is worth noting because the assignment agreement became effective June 12, 2011. ECF No. 1-2 pg. 1. Meaning, two months prior to being assigned the rights, AF Holdings was monitoring alleged infringements. Furthermore, Prenda initiated an action on behalf of Heartbreaker Productions for the alleged infringement of *Sexual Obsession* on April 28, 2011, yet Defendant's IP address was not included though it was observed infringing more than two weeks prior. *Heartbreaker Prod. v. Does 1-71*, No. 11-cv-02860 (N.D. Ill. 2011). More importantly, Prenda was still actively litigating the matter on behalf of Heartbreaker more than two weeks after the assignment took place.

Plaintiff completed service on the Defendant on January 4, 2013. The Defendant filed and served his Answer and Counterclaims upon the Plaintiff on January 25, 2013.

On March 11, 2013, in a related matter ("California action") involving Plaintiff and its counsel, a hearing was held on an Order to Show Cause. *Ingenuity 13, LLC v. John Doe*, No. 12-cv-8333-ODW, ECF No. 48 (N.D. Cal. 2013). In the immediate days thereafter, Plaintiff initiated voluntary dismissal of numerous copyright infringement actions it had initiated in federal courts throughout the country. See, e.g., *AF Holdings v. Navasca*, No. 12-cv-02396, ECF No. 76 (N.D. Cal.

---

[19] See also, *Hatfield*, at ECF Nos. 1 & 14 n.1 (Apr. 24, 2012 & June 14, 2012, respectively); *Botson*, at ECF No. 1 n. 1 (N.D. Cal. Apr. 24, 2012).

[20] See, *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 331 (4th Cir. 2007) ("Because a statutory damages award covers 'all infringements involved in the action … for which' infringers are liable … it is appropriate to treat the earliest date of infringement by any participant in a line of related copyright violations as the date of commencement.") (quoting 17 U.S.C. § 504(c)(1); first ellipsis in original); *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998) ("Every court to consider this question has come to the same conclusion; namely, that infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs.") (citing cases).

2013); *AF Holdings LLC v. John Doe*, No. 12-cv-01449-JNE, ECF No. 33, fn. 3 (D. Minn. June 20, 2013). On March 14, 2013, Plaintiff's counsel offered to dismiss its claims with prejudice, but only on the condition Defendant also dismiss his counterclaims and consent to seal the matter. Defendant declined the offer.

On March 20, 2013, a Pre-Filing Conference was held before this Court. During the conference, Plaintiff represented it would be filing a motion to dismiss Defendant's counterclaims and was given a deadline to file such by April 4, 2013. No motion was ever filed nor has Plaintiff otherwise answered the counterclaims against it.

On April 3, 2013, Defendant's counsel sent Plaintiff via certified mail and e-mail a summary of the initial disclosures he would be seeking under Rule 26(a)(1). Plaintiff did not respond other than to inform Defendant that the matter was forwarded to Paul Duffy of Prenda Law, Inc.

On May 6, 2013, in the California action, Plaintiff and its counsel were sanctioned, in part, for the creation of a fictitious plaintiff—namely, AF Holdings. Defendant filed a copy of the Order with this Court (ECF No. 25).

On May 8, 2013, Defendant contacted Plaintiff to inquire whether it would still be pursuing its claims. Plaintiff's counsel said that it would be voluntarily dismissing its claims with prejudice and withdrawing from the case. Plaintiff's counsel withdrew effective August 30, 2013, but no motion dismissing Plaintiff's claims was ever filed.

On May 30, 2013, Defendant delivered its 26(f) Proposed Joint Pretrial Discovery Schedule to the Plaintiff. Again, Plaintiff did not respond other than to inform Defendant that the request was forwarded to Paul Duffy of Prenda Law, Inc. Defendant subsequently filed a 26(f) report on June 10, 2013 indicating that he had attempted to confer with the Plaintiff but was unable to do so. ECF No. 27. After a month of inactivity on Plaintiff's part, Defendant moved for Entry of Default on July 26, 2013. (granted August 30, 2013.)

In short, Plaintiff has failed to consult with Defendant on the 26(f) report within the allotted time frame; has failed to communicate with Defendant to schedule discovery dates; has failed to dismiss it claims with prejudice as promised and generally has failed to respond to or communicate with Defendant to facilitate the progression of the case.

## II. LEGAL STANDARD

### A.  Standard for Default Judgment Under Rule 37.

Rule 37 of the Federal Rules of Civil Procedure "provides generally for sanctions against parties or persons unjustifiably resisting discovery." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2281 (2d ed. 1994). It provides in pertinent part:

> "If a party … fails to obey an order to provide or permit discovery, including an order under Rule 26(f) … the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: … An order striking out pleadings or parts thereof, … or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

Fed. R. Civ. P. 37(b)(2)(C).

In deciding whether to enter a default judgment pursuant to Rule 37, courts look for guidance to cases decided under Rule 41(b). *See, e.g., Almonte v. Coca-Cola Bottling Co. of New York*, 169 F.R.D. 246, 249-50 (D. Conn. 1996) ("[T]he factors for dismissal under Rule 41(b) are helpful in considering a dismissal under Rule 37.").

Thus, a court's discretion whether or not to grant a default judgment motion under Rule 37 is cabined by several factors. These include "1) any history of noncompliance; 2) prejudice to the moving party caused by the noncompliant party; 3) the extent of warning or notice given to the noncompliant party about the possibility of sanctions; and 4) relative fault of the party as opposed to the party's attorney." *See, e.g., Shannon v. Gen. Elect. Co.*, 186 F.3d 186, 193 (2d Cir. 1999); *Sequeria v. Ford Motor Co.*, No. 04-cv-883, 2005 U.S. Dist. LEXIS 12555, *2 (D. Conn. June 23, 2005). Additionally, "[t]he sanction of dismissal should not be imposed under Rule 37 unless the failure to comply with a pretrial production order is due to 'willfulness, bad faith, or any fault' of the deponent." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (quoting *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986)); *Simmons v. Abruzzo*, 49 F.3d 83, 88 (2nd Cir. 1995); *Bobal v. Rensselaer Polytechnic Institute*; 916 F.2d 759, 764 (2nd Cir. 1990) cert. denied 499 U.S. 943 (1991). Courts in the Second Circuit have also considered whether lesser sanctions would be effective. *American Cash Card v. AT&T*, 184 F.R.D. 521, 524 (S.D.N.Y. 1999) aff'd 2000 U.S. App. LEXIS 6318 (2d Cir. Apr. 6, 2000).

**B.  Rule 41(b) Dismissal Standard.**

Under the rule,

If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

In considering a dismissal for failure to comply with a court order under Rule 41, the Second Circuit has set forth five factors that courts should consider:

1) the duration of the plaintiff's failures; 2) whether plaintiff has received notice that further delays would result in dismissal; 3) whether the defendant is likely to be prejudiced by further delay; 4) whether the district court judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard; and 5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*Lucas v. Miles*, 84 F.3d 532, 535 (2nd Cir. 1996) (citations omitted).

**C.  Standard for Default Judgment Under Rule 55.**

Rule 55(a) is "the basic procedure to be followed when there is a default in the course of litigation." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). Under Rule 55(a), "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Rule 55(b)(2) allows a party to apply to the Court for entry of a judgment by default. Fed. R. Civ. P. 55(b)(2); *TYR Sport, Inc. v. TYR Natural Spring Water, Inc.,* No. 12-cv-761, 2013 U.S. Dist. LEXIS 81574 (D. Conn. June 5, 2013) (citing Fed. R. Civ. P. 55(b)). More specifically, in order to grant a motion for default judgment, the plaintiff must satisfy the following requirements: "1) show that the defendant was properly served with a summons and complaint; 2) obtain the entry of default; and 3) provide an affidavit setting forth the salient facts including, if the defendant is a person, showing that he or she is not an infant or incompetent, or a member of the United States Military Service." *Id.* (citing Fed. R.Civ. P. 55(b)(2)). (other citation omitted).

"When a default judgment is entered, the defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as to claims relating to

damages." *Coated Fabrics Co. v. Mirle Corp. et al*, No. 06-cv-5415, 2008 U.S. Dist. LEXIS 3470, *4 (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In determining whether to enter a default judgment, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See, *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (citations omitted). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] … delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993) (citations omitted).

In considering a motion for default judgment, the Court is guided by the same three factors that apply to a motion to set aside entry of a default judgment. See, *Buttnugget Publishing v. Radio Lake Placid, Inc.*, 807 F. Supp. 2d 100, 106 (N.D.N.Y. 2011); see also *Enron Oil Corp.*, 10 F.3d at 95; *Rodriguez v. Almighty Cleaning, Inc.,* 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011) (citations omitted). Specifically, the court considers "1) 'whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Rodriguez*, 784 F. Supp. 2d at 123 (quotation and other citations omitted); see also, *Mason Tenders District Council Welfare Fund v. M&M Contracting & Consulting*, 193 F.R.D. 112, 114-15 (S.D.N.Y. 2000) (citation omitted).

### III. ARGUMENT

The record before the Court establishes chronic failure on the part of the Plaintiff to cooperate with discovery, to obey court orders directing responses or otherwise participate in litigation they initiated. Although the typical Rule 55 case is one in which a default has entered because a defendant failed to timely answer, the Court of Appeals for the Second Circuit has also acknowledged a district court's authority to enter a default against a defendant that has failed to "otherwise defend" by inter alia, failing to proceed with discovery. *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 130 (2d Cir. 2011).

There are two basic limitations upon a district court's discretion in imposing sanctions pursuant to Rule 37(b)(2). The rule expressly requires that the sanctions must be "just"; and the

sanction must relate to the particular claim to which the discovery order was addressed. *Insurance Corp. of Ireland v. Campagnie des Bauxites*, 456 U.S. 694, 707 (1982); *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991). There is no question that the latter requirement has been met. As to the former, the determination of whether a sanction is "just" must be evaluated in light of the record as a whole. *Campagnie des Bauxites*, 456 U.S. at 707-08; *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979); *John B. Hull v. Waterbury Petroleum Products, Inc.,* 845 F.2d 1172, 1176-77 (D.Conn. 1988); *Jones v. Niagara Frontier Transp. Auth.,* 836 F.2d 731, 735 (2d Cir. 1987).

In deciding whether to dismiss a complaint pursuant to Rule 37, courts look for guidance to cases decided under Rule 41(b). *See, e.g., Almonte v. Coca-Cola Bottling Co. of New York*, 169 F.R.D. 246, 249-50 (D. Conn. 1996) ("[T]he factors for dismissal under Rule 41(b) are helpful in considering a dismissal under Rule 37."). Indeed, Plaintiff's inaction in this case also implicates Rule 41, which provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute the action or comply with any order of the court. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962).  This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases.

The propriety of a dismissal under either Rule 37(b) (for failure to cooperate in discovery) and/or Rule 41(b) (for failure to prosecute) is informed by five relevant factors:

> 1) the duration of the plaintiff's failures; 2) whether plaintiff has received notice that further delays would result in dismissal; 3) whether the defendant is likely to be prejudiced by further delay; 4) whether the district court judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard; and 5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*See, Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193 (2d Cir. 1999); *Sequeria v. Ford Motor Co.*, No. 04-cv-883, 2005 U.S. Dist. LEXIS 12555, *2 (D. Conn. June 23, 2005)*.

Consideration of these factors under the facts of this case compels the conclusion that Plaintiff's claims should be dismissed with prejudice:

## A.  History of the Plaintiff's Noncompliance.

Plaintiff's failure to prosecute its claims began on March 20, 2013. In a pre-filing conference held before this Court, Plaintiff represented it would be filing a motion to dismiss Defendant's counterclaims. The Court ordered Plaintiff's motion be filed by April 4, 2013. ECF No. 23. More

than six months later, no motion or answer has been filed. It is well settled that Rule 41(b) "authorizes a district court to dismiss a complaint for failure to comply with a court order, treating the noncompliance as a failure to prosecute." *Shabtai v. Levande*, 38 Fed. Appx. 684, 686 (2d Cir. 2002).

Plaintiff's failure to respond to discovery began on April 3, 2013, when Defendant's counsel sent Plaintiff via certified mail and e-mail a summary of the initial disclosures he would be seeking under Rule 26(a)(1). Plaintiff did not respond other than to inform Defendant that the request was forwarded to Paul Duffy of Prenda Law, Inc. On May 30, 2013, Defendant delivered its 26(f) Proposed Joint Pretrial Discovery Schedule to the Plaintiff. Again, Plaintiff did not respond.[21] On June 4, 2013, Defendant contacted Plaintiff to inquire about his proposed 26(f) report. Again, Defendant was told his requests were forwarded to Paul Duffy. *Siems v. City of Minneapolis*, 560 F. 3d 824 (8th Cir. 2009) (Dismissal of plaintiff's claims with prejudice under Rule 41(b) was justified given failure by plaintiff's counsel to comply with district court's orders to prepare 26(f) report; counsel's violation of court's orders was willful, and lesser sanctions such as exclusion of evidence would have been futile.).

In short, Plaintiff has a history of noncompliance in this case. Plaintiff has repeatedly flouted it obligations, and it is clear that it will continue to do so. In the circumstances here, the preference for resolving cases on the merits is outweighed by the need for general deterrence and docket control.

**B. Plaintiff has Actively Avoided Warnings of Dismissal.**

Plaintiff has avoided "warnings" of dismissal by 1) failing to engage Defendant's counsel in any discussion of its discovery obligations; and 2) a persistent pattern of intentional delay in pursuing its own claims and defending against the counterclaims.

Although formal warnings often precede the imposition of serious sanctions, this Court has never considered warnings an absolute condition precedent. *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).

> We decline to hobble the necessary discretion of district courts to control discovery by imposing a further requirement of formal and specific warnings before imposing Rule 37(b)(2) sanctions, bearing in mind that, as we hold *supra,* such sanctions can only be imposed for violation of a specific, previously entered court order. Parties and

---

[21] "If a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f), the court may, after giving an opportunity to be heard, require that party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(f).

counsel have no absolute entitlement to be "warned" that they disobey court orders at their peril.

*Id.*

**C.  Defendant will be Prejudiced by Further Delay.**

Defendant is certain to be prejudiced by further delays. Plaintiff's disregard of the Court's deadlines has caused this case to be at a complete stand-still for months. It has been nine months since Defendant appeared in this matter, seven months since the March 21, 2013 pretrial conference hearing before the Court, six months since the Plaintiff's deadline to move to dismiss or answer the counterclaims—and Plaintiff has yet to cooperate with Defendant's discovery efforts, to comply with the Court's Scheduling Order, to oppose Defendant's motion for entry of default or otherwise participate in the litigation they initiated. See, *Almonte v. Coca-Cola Bottling Co. of New York*, 169 F.R.D. 246, 249-50 (D. Conn. 1996) (citations omitted) ("The bar must realize … that these dates fixed by law, rule, or court order … are not empty formalities. To neglect and ignore a date for action in a court proceeding is in reality a thinly-veiled species of disrespect or contempt for the Court").

Here, Defendant moved for default due to the numerous failures on the part of the Plaintiff—in litigation that it initiated. Plaintiff's failure to comply precludes Defendant from engaging in the discovery process, deposing Plaintiff, disclosing expert witnesses, and proceeding with any Rule 56 motions. Defendant has had to devote extensive time and resources to obtaining the most basic discovery and the case has been significantly delayed. More to the point, Plaintiff's claims and public outing on its website hang over the Defendant. If a college or potential employer Googles the Defendant, they'll learn he's been accused of infringing *Sexual Obsession* and unspecified "civil and criminal acts."

**D.  Plaintiff's Conduct is Willful.**

Willfulness or bad faith 1) "impl[ies] a deliberate disregard of the lawful orders of the court" (*Cine Forty-Second St. Theatre v. Allied Artists*, 602 F.2d 1062, 1067 (2nd Cir. 1979)); 2) "refer[s] to conduct that is more than merely negligent or careless" (*SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)); and 3) may be found where "the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Id*.

As in here, Plaintiff's failure to answer the counterclaims demonstrates willfulness. *Id*. at 738-39 (unexplained failure to respond to complaint indicates willfulness); *Indymac Bank, F.S.B., v.*

*Nat'l Settlement Agency, Inc.*, No. 07-cv-6865, 2007 U.S. Dist. LEXIS 93420, *1 (S.D.N.Y. Dec. 20, 2007) (same); *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 129 (2d Cir. 2012) (finding that a district court is empowered to enter a default against a defendant that has failed to "otherwise defend," and noting that the Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend'"); Fed. R. Civ. P. 55(a) ("[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").

This also includes where, as here, Plaintiff failed to comply with the Court's Scheduling Order. See, e.g., *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123-24 (E.D.N.Y. 2011) ("[W]illful and deliberate disregard for [court] orders … militates in favor of default judgment."); *2W Prod. Corp. v. Y&P Wholesale, Inc.*, No. 07-cv-0423, 2009 U.S. Dist. LEXIS 138, *3 (E.D.N.Y. Jan. 5, 2009) ("Entry of a default for non-compliance with court orders is appropriate where a party's failure to comply is attributable to willfulness, bad faith, or fault.").

As the Second Circuit has recognized, "although entry of a default judgment is an extreme measure, discovery orders are meant to be followed." *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir. 1995), See also, *S. New Eng. Tel. Co. v. Global NAPs, Inc.*, 251 F.R.D. 82, 90 (D. Conn. 2008) ("A district court may sanction a party who fails to comply with a discovery order of that court, including rendering a default judgment against the noncompliant party."); *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988) ("A party who flouts [discovery orders] does so at his peril."). Although rare, is not impossible for a lawyer's failures to warrant an "extreme measure." *Harris v. U.S.*, 367 F.3d 74, 81 (2d Cir. 2004).

The question remains whether the willfulness of Plaintiff's counsel, Prenda Law, is automatically imputed to the Plaintiff. Generally, the conduct of an attorney is imputed to the client because in our system of representative litigation, "each party is deemed bound by the acts of his lawyer-agent." *McNulty*, 137 F.3d at 739. However, an attorney's willfulness should not necessarily be imputed to his client. The Second Circuit has held that an attorney's willfulness may be imputed to the client 'where [the party] makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit,' id. at 740, or where the record is 'bereft of any indication of client diligence.' *U.S. v. Cirami*, 535 F.2d 736, 741 (2d Cir. 1976).

But that is not the case here, as AF Holdings and its counsel are one in the same. There is no need to impute counsel's knowledge to the AF Holdings, as it has actual knowledge of its acts and their repercussions.

**E.  Lesser Sanctions will have No Effect on the Plaintiff.**

More than Plaintiff's disregard of the Court's March 21, 2013 Scheduling Order, Plaintiff's conduct as a whole provides evidence of the fact that no sanction other than dismissal with prejudice[22] and an award of monetary damages[23] to the Defendant is adequate. *Murray v. Mitsubishi Motors of North America, Inc.*, 462 Fed. Appx. 88 (2d Cir. 2012) (affirming District of Connecticut's dismissal as a sanction where the plaintiff failed to comply with court orders on discovery and deadlines). See also, ECF No. 25 (summarizing conduct of Plaintiff and its counsel, Prenda Law, in a related matter).

By repeatedly failing to comply with their discovery obligations or otherwise defend themselves, Plaintiff has demonstrated willful disobedience or bad faith. At a minimum, Plaintiff and its counsel were grossly negligent. *Cine* , 602 F.2d at 1068 ("Where gross professional negligence has been found—that is, where counsel clearly should have understood his duty to the court—the full range of sanctions may be marshaled."). No lesser sanction than default judgment will suffice.

**F.  Plaintiff Offers No Meritorious Defense.**

Lastly, the Court must consider whether Plaintiff has a meritorious defense. "A defense is meritorious if it is good at law so as to give the fact-finder some determination to make." *American Alliance Ins. Co. v. Eagle Ins. Co. Ltd.*, 92 F.3d 57, 61 (2d Cir. 1996) (quotations omitted). While a defendant need not establish his defense conclusively, he must "present evidence of facts that, if

---

[22] Even if Plaintiff's claims were dismissed without prejudice, Plaintiff has dismissed an action on February 2, 2012 in federal court based upon and including the same claims as set forth in the current suit. Under the two dismissal rule, dismissal in this action will be considered adjudication on merits. *Loubier v. Modern Acoustics*, 178 F.R.D. 17 (D. Conn. 1998).

[23] In all, Prenda has been sanctioned $63,367.02 for colluding with the named defendant to use his identity to bring suit and stipulate to co-conspirator discovery in *Guava v. Merkel*, No. 27-cv-12-20976 (4th Dist., Hennepin Cty., MN Aug. 30, 2013) (the Order also barred the filing any more lawsuits in Minnesota state court without posting a $10,000 bond and getting approval from the Minnesota Secretary of State.); $81,319.72 in sanctions in *Ingenuity13 v. Doe*, No. 12-cv-08333-ODW, ECF No. 130 (C.D. Cal. May 6, 2013); $9,425 in *AF Holdings LLC v. Trinh*, No. 12-cv-2393, ECF No. 45 (N.D. Cal. Feb. 25, 2013); $22,531 in *AF Holdings LLC v. Navasca*, No. 12-cv-02396-EMC, ECF No. 100 (N.D. Cal. July 22, 2013) (wherein Judge Chen is contemplating additional sanctions); and $64,180.80 in *AF Chowdhury v. Sandipan Chowdhury* No. 12-cv-12105-JLT (D. Mass. 10/22/13). Together, the grand total of Prenda-related fines—which Prenda has refused to pay—is currently $240,823.54.

proven at trial, would constitute a complete defense." *McNulty*, 137 F.3d at 740 (citations omitted) (internal quotation marks omitted); *Enron*, 10 F.3d at 98.

By failing to answer or otherwise defend against the counterclaims, Plaintiff has proffered neither a meritorious defense nor an explanation for its shortcomings.

## IV. CONCLUSION

Prenda Law represents an entire in-house copyright trolling monopoly—not designed to promote works for distribution and sale, but to allege infringement and reap profits from the threat of litigation. *AF Holdings v. Does 1-135*, No. 11-cv-0336-LHK, ECF No. 43-1 pgs. 4-6 (N.D. Cal. Feb. 23, 2012).

Plaintiff's refusal to provide discovery or litigate the action has caused delay, increased Defendant's litigation costs, and prejudiced Defendant in his ability to defend himself or move forward with his counterclaims. Plaintiff's noncompliance with his obligations warrants the sanction of dismissal with prejudice, and with other sanctions against Plaintiff as may be deemed appropriate by this Court.

Dated: October 25, 2013                               Respectfully,

                                                      s/ Jason Sweet
                                                      Jason E. Sweet (BBO# 668596)
                                                      Email: jsweet@boothsweet.com
                                                      BOOTH SWEET LLP
                                                      32R Essex Street
                                                      Cambridge, MA 02139
                                                      Tel.: (617) 250-8602
                                                      Fax: (617) 250-8883

                                                      *Counsel for Elliot Olivas*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2013, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

                                                      s/ Jason Sweet
                                                      Jason E. Sweet