**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| AF HOLDINGS, LLC, )<br>)<br>Plaintiff/Counter-Defendant, )<br>v. )<br>)<br>ELLIOT OLIVAS, )<br>)<br>Defendant/Counter-Plaintiff. )<br>) | Civil Action No. 3:12-cv-01401-JBA<br><br>DECEMBER 3, 2013 |

**COUNTERPLAINTIFF ELLIOT OLIVAS' RESPONSE IN OPPOSITION TO
JOHN STEELE'S MOTION TO SET ASIDE DEFAULT**

Counterplaintiff Elliot Olivas ("Olivas") respectfully submits this response in opposition to the memorandum[1] (ECF No. 39) filed by an alias[2] of Plaintiff AF Holdings, LLC ("Plaintiff" or "AFH"), namely attorney John Steele ("Steele"). Steele seeks to set aside the Court's Order (ECF No. 34; "Order") granting Olivas' motion for default (ECF No. 38; "Olivas Motion"). Steele offers no valid procedural grounds and presents no cognizable error that would warrant setting the Order aside. The Order should be left undisturbed or affirmed, for the reasons stated in the Order, the Olivas Motion, and those further stated herein.

**I. RELEVANT FACTS AND PROCEDURAL HISTORY**

AFH initiated this action on October 1, 2012, filing a complaint alleging copyright infringement and civil conspiracy. ECF No. 1. Olivas answered, denying any liability, and raising counterclaims of defamation, abuse of process, copyright misuse, and seeking a declaratory judgment of non-infringement. ECF No. 10 pp. 10-20. Olivas' counterclaims alleged, *inter alia*, "Plaintiff is represented by Prenda Law, Inc. (f/k/a Steele Hansmeier PLLC)." *Id.* p. 11. "[E]vidence of fraud between Plaintiff and its counsel"; "Plaintiff may not even exist"; "Plaintiff's counsel may truly be

---

[1] Though the memorandum at issue is captioned as being "in support of [a] motion to dismiss," no such motion was ever filed. Indeed, the memo as filed is a pared down version of what Steele filed in *Chowdhury,* down to the cites to First Circuit law at the expense of the Second Circuit. *See, AF Holdings v. Chowdhury*, No. 12-cv-12105-JLT, ECF No. 37 (D. Mass 2012).

[2] Attorneys Steele, Paul Hansmeier ("Hansmeier"), and Paul Duffy ("Duffy") and paralegal Mark Lutz ("Lutz") (collectively, the "Prenda attorneys") of the law firm Prenda Law ("Prenda") have all been held to be aliases of Plaintiff AFH. *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-08333-ODW-JC ("*Ingenuity 13*"), ECF No. 130 (C.D. Cal. May 6, 2013); *AF Holdings v. John Doe*, No. 12-cv-01445, ECF No. 67 (D. Minn. Nov. 6, 2013); *AF Holdings LLC v. Navasca*, No. 12-cv-02396-EMC, ECF Nos. 116 & 120 (N.D. Cal. 2013).

the real parties in interest in this case"; and "Nor is this the first time Plaintiff's counsel has been accused of using a dummy corporation to file suit." *Id.* p. 12.

While this action was pending, the Prenda attorneys were sanctioned in a case whose findings of fact about them include that they created and operated shell companies (including AFH) solely to sue people and shield themselves from liability, and stole the identity of Steele's caretaker, forging a copyright assignment in his name to create a non-existent corporate officer for AFH:

1. Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.

2. AF Holdings and Ingenuity 13 have no assets other than several copyrights to pornographic movies. There are no official owners or officers for these two offshore entities, but the Principals are the de facto owners and officers.

3. The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law, which was also owned and controlled by the Principals.

4. [S]ettlement funds [from copyright infringement lawsuits] resided in the Principals' accounts and not in accounts belonging to AF Holdings or Ingenuity 13.

8. The Principals maintained full control over the entire copyright-litigation operation. The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

9. The Principals stole the identity of Alan Cooper … [They] fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings.

11. Plaintiffs[3] have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies.

Order Issuing Sanctions, *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-08333-ODW-JC ("*Ingenuity 13*"), ECF No. 130 pp. 3-5 (C.D. Cal. May 6, 2013) ("*Ingenuity 13* Order"). On May 8, 2013, Olivas requested judicial notice of the *Ingenuity 13* Order. ECF No. 25; ECF No. 25-1.

---

[3] The *Ingenuity 13* court used the term "Plaintiffs" to cover the nominal plaintiffs, including AFH, as well as "related entities, individuals, and attorneys that collaborated in the underlying scheme." *Ingenuity 13* Order p. 1 n.1.

On February 14, 2013, AFH moved to strike the counterclaims in part and to dismiss them entirely. ECF Nos. 14 & 15. The next day, the Court denied, without prejudice to renew, Plaintiff's motion to dismiss for failure to comply with the Court's pre-filing conference requirement. ECF No. 16. Also that month, Plaintiff moved for a pre-filling conference. ECF No. 16. Daniel Ruggiero ("Ruggiero"), who was then counsel of record for AFH, attended the March 20, 2013 hearing on the pending motion to strike and represented that Plaintiff intended to renew its motion to dismiss. ECF No. 24. The Court gave Plaintiff until April 19, 2013 to file said motion to dismiss. ECF No. 25. Plaintiff neither renewed its motion to dismiss nor answered the counterclaims.

When AFH failed to timely answer the counterclaims, Olivas requested entry of default on July 26, 2013 (ECF No. 30), serving notice on Ruggiero through ECF (as he had with all prior filings). *See also*, *Exhibit A* ("I have made them aware of everything. They also get all of the pleadings etc automatically and I can vouch for you on that.") (Email from Atty. Ruggiero); ECF No. 31 ("With regards to this case, Prenda/AF Holdings, receives copies of all court filings automatically through the ECF system. They have always known the existence of the pending motions and status of the cases."). Steele and the other Prenda attorneys, through their firm Prenda, had retained Ruggiero to work of counsel to Prenda in this action and others. *See*, *Exhibit B* ("I was originally retained by Prenda to represent AF Holdings, LLC") (Ruggiero Affidavit).

On August 13, 2013, Olivas' attorney sent an email to Duffy, stating that Olivas had moved for default for failure to answer the counterclaims. *See*, *Exhibit C*. Duffy, in another matter, had declared himself "national counsel" for AFH. *See*, *AF Holdings v. Harris*, No. 12-cv-02144, ECF No. 12-1 (D. Ariz. Nov. 14, 2012) ("I, Paul A. Duffy, declare as follows: I am national counsel for Plaintiff AF Holdings, L.L.C."). Duffy responded with an email claiming that the account was inactive. *See*, *Exhibit D*. That same evening, Ruggiero contacted the undersigned stating "What email address do you have that actually works?" *See*, *Exhibit E*. August 13, 2013, Duffy sent an email to Ruggiero with the subject line "Af," stating, "Please call me before our client sues you for malpractice." *See*, *Exhibits F & B*. The next day, August 14, 2013, Ruggiero moved for leave to withdraw as counsel for AFH, citing the *Ingenuity 13* Order and a host of ethical concerns: "It is impossible for the undersigned to file pleadings on behalf of the Defendant where there is no reasonable basis to conclude that anything that Plaintiff tells counsel is truthful." ECF No. 31. Ruggiero also stated, "It is my understanding that Mr. Lutz is the owner of Plaintiff, but to be honest,

3

I have no idea what to believe." *Id.* p. 2. That same day, Duffy emailed Olivas' counsel that "neither I nor any firm I have been associated with is counsel in the matters you mention," but then goes on to state service could be made by mail to his business address. *See, Exhibit G.*

The Court served Plaintiff notice of Ruggierio's withdrawal on August 30, 2013. ECF No. 33. AFH chose not to substitute counsel and proceeded *pro se*. That same day, this Court granted Defendant's motion for default. ECF No. 34. Ruggiero's withdrawal was granted on October 23, 2013. ECF No. 37.

On October 25 13, 2013, Olivas moved for default on his counterclaims, noting that "Plaintiff AF Holdings, LLC was found to be an alias of its counsel, Prenda Law, Inc., its principals, attorneys John L. Steele, Paul A. Duffy and Paul R. Hansmeier, and its paralegal, Mark Lutz" ECF No. 38. The supporting memorandum of law emphasized that default judgment was sought jointly and severally against the "Plaintiff," defined as Prenda and the Prenda attorneys. ECF No. 38-2 ("AF Holdings, LLC has been found in related matters to be an alias of its counsel, Prenda Law, Inc., its principals and its paralegal, Mark Lutz").

Olivas served the motion for default judgment and its supporting memorandum of law, exhibits and affidavit on the Prenda attorneys by certified mail. *See*, *Exhibit H* (Affidavit of Jason Sweet). Of the Prenda attorneys, only Steele has filed an opposition to the motion for default judgment.[4] Steele moved to set aside the default on November 12, 2013. ECF No. 39.

## II. LEGAL STANDARD

Steele's motion to set aside the entry of default fails not only to articulate or meet the proper standard, but to show that the removal of the entry of default would not be an empty exercise.

The standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b). *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)). "A motion under Rule 55(c) to set aside an entry of default is addressed to the sound discretion of the district judge." *State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 F.App'x 453, 455 (2d Cir. 2011) (quoting *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir. 1984)). "Because the trial judge is the person most familiar with the circumstances of the case

---

[4] Both Hansmeier and Duffy have demonstrated awareness of the pending default in pleadings filed in *Lightspeed v. Smith*, No. 12-cv-00889, ECF No. 86 p. 6 n.2 (S.D. Ill. 2012) and *AF Holdings v. Chowdhury*, No. 12-cv-12105, ECF Nos. 39 p. 10 & 41 p. 10 (D. Mass. 2012), but have taken no action to oppose.

and is in the best position to evaluate the good faith and credibility of the parties, a reviewing court will defer to his decision unless it is clearly wrong." *State Farm,* 409 F. App'x at 455 (citations omitted); *Enron Oil Corp. v. Masonori Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). The entry of default "constitute[s] a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Fed. R. Civ. P. 55(c) provides that "for good cause shown" the Court may set aside an entry of default made pursuant to Fed. R. Civ. P. 55(a). *Speaks v. Donato*, 214 F.R.D. 69, 73 (D. Conn. 2003). Although the rule does not define "good cause," the Second Circuit has "advised district courts to consider three factors in deciding a Rule 55(c) motion: (1) whether the default was willful; (2) whether the moving party has presented a meritorious defense; and (3) whether setting aside the default would prejudice the party for whom default was awarded." *State Farm,* 409 F. App'x at 455 (citation omitted). *See also, Pecarsky v. Galaiworld.com Ltd.,* 249 F.3d 167, 171 (2d Cir. 2001).

These factors guide the court in the exercise of its discretion but are not intended as a mechanical formula or per se rule. *Saunders v. Morton*, 269 F.R.D. 387, 405 (D. Vt. June 28, 2010); *KPS & Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003) (determination is case specific and must be made in practical, commonsense manner, without rigid adherence to or undue reliance on mechanical formula); *Zawadski De Bueno v. Bueno Castro*, 822 F.2d 416, 419 (3d Cir. 1987) (weighing the equities on motion to vacate default judgment does not lend itself to rigid formula or per se rule).

The defaulting party, who is the one seeking relief, bears the burden of showing that the factors favor setting aside the default or default judgment. *Brown v. Gabbidon*, No. 06-cv-8148, 2007 U.S. Dist. LEXIS 35134, *7 (S.D.N.Y. May 15, 2007); *KPS & Assocs.*, 318 F.3d at 14 (1st Cir. 2003) (burden of demonstrating good cause for removal of default rests with defaulting party); *Franchise Holdings, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-926 (9th Cir. 2004) (defaulting party bears burden of showing that factors favor setting aside default or default judgment).

In this case, default entered pursuant to Rule 55(a) on August 30, 2013; therefore, the factual allegations of the complaint, except those pertaining to damages, should be taken as true. *In re Martin-Trigona*, 763 F.2d 503, 505 n.2 (2d Cir. 1985); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Atlantic Recording Corp. v. Brennan*, 534 F.Supp.2d 278, 280 (D. Conn. 2008) (internal quotations & citations omitted).

### III. ARGUMENT

**A. Equitable Factors the Court Should Consider.**

The three factors discussed above have been often cited, but are not exclusive and are not intended as a precise formula. Courts should consider any matters that bear on the equities of the situation. The underlying consideration is whether good cause for relief from the default exists, and the various factors merely aid in that determination. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2d Cir. 1993) (in considering whether to set aside entry of default, district court failed to consider other important circumstances, such as defaulting party's status as attorneys; history of dilatoriness; effectiveness of sanctions; or meritoriousness of claim or defense).

As an initial matter, Steele's motion is untimely. He effectively abandoned the case and failed to oppose the request for default—appearing only afterwards to contest the results. This dilatory approach to the lawsuit does not warrant setting aside the default in any respect. *Dow Chern. Pac. v. Rascator Mar. S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) (motion to set aside default must be made within reasonable time, and was not timely when defaulting party knew of entry of default at least seven months before motion). Here, Olivas requested entry of default on July 26, 2013 (ECF No. 30), serving notice on Steele's local counsel through ECF—more than three months prior to moving for default on his counterclaims. ECF No. 38.

Secondly, Rule 43 provides that when a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions. *See*, Fed. R. Civ. P. 43. The moving party usually has the burden of showing that good cause for setting aside the default exists. Generally, a motion for relief from default will rely on facts outside the record to support the claim that the default was excusable, that a meritorious defense exists, and possibly other matters. Therefore, such a motion should be accompanied by affidavits or declarations stating these facts—neither of which Steele provides. Failure to provide the necessary facts in support of the motion may result in denial. *See, e.g., SEC v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) (neglect in failing to answer was not excusable when record contained no affidavit offering explanation for conduct).

Nor can Steele show that any potential defense he may raise would "give the trial court reason to believe that vacating the judgment will not be an empty exercise." *United States v. Morales*, No. 03-cv-4676, 2008 U.S. Dist. LEXIS 95724, *8 (S.D.N.Y. Nov. 7, 2008) (quoting *Teamster Union*

*v. Superline Transp. Co.,* 953 F.2d 17, 20 (1st Cir. 1992); *Concord Capital Mgmt., LLC v. Brecka*, No. 11-cv-5545, 2013 U.S. Dist. LEXIS 27188, *30 (S.D.N.Y. Feb. 27, 2013). Therefore and for the reasons given below, Steele fails to show that the extraordinary relief available under Rule 55(c) should be granted.

The default is not void. It was properly noticed, served on each of the Prenda attorneys—including Steele, designating them as the parties against whom Olivas' counterclaims lay. His claim to be caught unaware by the judgment, or not subject to it, are not credible.

**B.   Steele Presents No Meritorious Defense.**

When the defaulting party lacks a meritorious defense to the claims, relief from default or default judgment is pointless. Consequently, the absence of a defense is a sufficient reason to deny relief. *New York v. Green,* 420 F.3d 99, 109 (2d Cir. 2005) (absence of meritorious defense is sufficient to support district court's denial of Fed. R. Civ. P. 60(b) motion to set aside default judgment); *Wagstaff-El v. Carlton Press Co.,* 913 F.2d 56, 57 (2d Cir. 1990) (court properly set aside default judgment when plaintiff's claims were completely without basis).

A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. *Broadcast Music Inc. v. Greece Land Co.*, No. 11-cv-588A, 2011 U.S. Dist. LEXIS 147746, *8 (W.D.N.Y. Dec. 22, 2011); *Sony Corp. v. Elm State Elec., LLC.*, 800 F2d 3l7, 320-321 (2d Cir. 1986) (although general denials normally are sufficient to plead defense when answering complaint, moving party on motion to reopen default must support its general denials with some underlying facts). The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the specific facts alleged, if proven at trial, would constitute a complete defense. *Enron Oil Corp.*, 10 F.3d at 98 (internal citations omitted); *McNulty,* 137 F.3d at 740 (to establish a meritorious defense, "the defendant need not establish his defense conclusively, but he must present evidence of facts that, 'if proven at trial, would constitute a complete defense'") (internal citations omitted); *Mathon*, 875 F.Supp. at 993 ("A meritorious defense is established by Rule 55 standards by setting forth denials and defenses in an answer.") (citing *Meehan*, 652 F.2d at 277)).

   **1.   Plaintiff and Prenda are Aliases of Steele and as such Service was not Required.**

A person is not, of course, bound by a judgment as to which he did not have a full and fair opportunity to litigate the underlying claim. *See, e.g., Allen v. McCurry,* 449 U.S. 90, 95 (1980);

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329 (1971); *Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940). That principle does not apply, however, in the case of non-parties who "assume control over litigation in which they have a direct financial or proprietary interest." *Montana v. United States*, 440 U.S. 147, 154 (1979).

No due process concerns exist here. Informed in part by the *Ingenuity 13* Order, other federal courts have taken a closer look at cases brought by the Prenda attorneys and have adopted the *Ingenuity 13* Order's findings of an "alter ego relationship." A recent ruling not only incorporates *Ingenuity 13* Order's factual findings but makes additional findings of its own. *AF Holdings LLC v. Navasca*, No. 12-cv-02396-EMC, ECF No. 116 pp. 5-9 (N.D. Cal. 2013) (Attached as *Exhibit I*). In pertinent part, they include:

1. … For all material purposes here, Prenda Law, Inc. is a mere continuation of Steele Hansmeier. … Brett Gibbs testified that Hansmeier and Steele continue to perform the same roles at Prenda that they had performed at Steele Hansmeier, and that business continued to operate in the same manner.

2. Gibbs testified that Steele Hansmeier and Prenda Law originally represented actual producers of adult films in copyright infringement cases. In 2012, Steele told Gibbs that he wanted to become a company that would solely enforce copyright claims for its own intellectual property holdings. Steele told Gibbs that AF and Ingenuity 13 would be owned by "Livewire" and would file their own copyright infringement cases. Gibbs testified that, as time went on, he was instructed to file more cases on behalf of AF and Ingenuity 13 than any other producer of adult films which Steele and Hansmeier had previously represented. Gibbs further testified that it was "common practice" for AF to file lawsuits and obtain summonses, while it was rare for the other producers he represented.

3. Gibbs was "Of Counsel" for Prenda Law, Inc., and represented AF in this action until February 26, 2013, when Duffy substituted in as counsel. *See* Doc. No. 64. Gibbs testified that Steele and Hansmeier directed his litigation activities in cases filed by AF, including this one. *See also* Doc. No. 94 (Gibbs Decl.) at ¶ 3. … Gibbs testified that he conferred weekly with Steele and Hansmeier to discuss active AF cases. Navasca introduced evidence of hundreds of phone calls between Gibbs, Steele and Hansmeier starting in December 2011 and ending in March 2013, supporting this testimony (Defendant's Exs. A & B). Gibbs confirmed that the phone numbers appearing in the exhibits were his and the phone numbers of Steele and Hansmeier. Gibbs also highlighted several phone calls with Hansmeier on November 30, 2012, which coincided with the date of the Case Management Conference held in this matter (*see* Doc. No. 21), and confirmed that he spoke with Hansmeier about the case. …

7. Navasca introduced evidence of two audio recordings, which were played during the hearing. The first was a recording produced by GoDaddy.com, which registered the domain name for dangerousxxx.com. *See* Defendant's Ex. D. The caller identifies himself in the recording as "Alan Cooper" and asks the customer service representative for help in resetting the password to his account; he eventually asks the customer service representative to send the password reset information to

8

> johnlsteele@gmail.com, an address on the account.[5] Gibbs testified that the voice of the caller is in fact that of Steele, whom he knows personally and whose voice he recognizes. Gibbs testified he had used that email address from his Prenda Law firm account to contact Steele. In the second recording, the caller identifies himself as "Mark Lutz," but once again, Gibbs testified that the caller was in fact Steele. Defendant's Ex. E. …
>
> 8. Based on Alan Cooper's testimony, which the undersigned admitted into evidence, and on the evidence that Steele impersonated Cooper in the GoDaddy recording, the undersigned finds that Steele impersonated Cooper to further the copyright litigation scheme. …

*Id*. See also, *Id*., ECF No. 120 p. 5 (adopting the magistrate judge's findings and noting "collateral estoppel bar[s] the Plaintiff and its aliases from relitigating … findings on these issues.") (Attached as *Exhibit J*). See also, *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*, 295 F.Supp.2d 366, 380 (S.D.N.Y. 2003) (finding that if a defendant is adjudged to be the alter ego of another from a prior proceeding, then the defendant becomes a party to that prior proceeding).

A default, therefore, may be entered and enforced against AFH, and its alter egos and aliases —including Steele. *Id.*; *Transamerica Corp. v. Moniker Online Servs., LLC*, No. 09-cv-60973, 2010 U.S. Dist. LEXIS 48016, *18 (S.D. Fla. April 7, 2010). Once a default is entered, the Court may apply it not only to the party named in the caption but to its aliases. *Gucci Am., Inc. v. Myreplicahandbag.com*, No. 07-cv-2438, 2008 U.S. Dist. LEXIS 49480, *17 (S.D.N.Y. Jan. 25, 2008) (making joint and several liability applicable to defaulting defendants' alias at inquest following default judgment); *Legal Additions LLC v. Kowalski*, No. 08-cv-2754, 2011 U.S. Dist. LEXIS 67342, *7-9 (N.D. Cal. June 23, 2011) (judgments may be amended to add a non-party alter ego or where otherwise amending to insert the real name of the judgment debtor would not raise due process concerns); *Estate of Witty v. Primus Telecoms Grp., Inc.*, No. 02-cv-1933, 2006 U.S. Dist. LEXIS 47898, *8 (D.N.J. 2006) (allowing amendment of the complaint after default judgment to add aliases of the defaulting party to the caption).

Indeed, the Supreme Court notes that

> [o]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own … is as much bound … as he would be if he had been a party to the record.

---

[5] "Furthermore, the physical address for the customer was 4532 E Villa Theresa Dr. – an address that is linked to Mr. Steele's sister and "Anthony Saltmarsh." Mr. Steele and Mr. Hansmeier did not provide any evidence explaining these circumstances." *Exhibit J* pp. 9, 10-15 (internal citations omitted).

*Montana v. United States*, 440 U.S. 147 (1979) ("although not a party, the United States plainly had a sufficient 'laboring oar' in the conduct of the state-court litigation to actuate principles of estoppel"); *Cement & Concrete Workers District Council Welfare Fund v. Lollo,* 35 F.3d 29 (2d Cir. 1994) (citing with approval cases holding corporate officers personally liable where they have committed fraud or acted in concert to breach a fiduciary obligation or where the director was the corporation's alter ego); *Textile Workers Pension Fund v. Oltremare*, 764 F.Supp. 287 (S.D.N.Y. 1989) (holding controlling persons liable for unpaid contributions if evidence established that corporate form should be disregarded); *Ferrara v. Oakfield Leasing, Inc.*, 904 F. Supp. 2d 249 (E.D.N.Y. 2012) (award of damages against defendants and alter-egos, jointly and severally); *McGuiness v. Marvin Hammerman, Inc.,* No. 91-cv-4061, 1994 U.S. Dist. LEXIS 5718 (S.D.N.Y. May 4, 1994) (denying individual defendants' motion for summary judgment on ground that plaintiffs had alleged a disregard of the corporate form).

Olivas' filings repeatedly pointed out that Plaintiff AFH is an alias or alter ego of the Prenda attorneys and their law firm, Prenda. *See, e.g.,* ECF Nos. 25 & 25-1 (*Ingenuity 13* Order, filed May 8, 2013); ECF No. 28-3 (motion for judgment under 55(b), filed June 27, 2013); ECF Nos. 31 & 31-2 (motion to withdraw as counsel, filed August 14, 2013). They "owned and controlled" their law firm Prenda. *Ingenuity 13* Order p. 4. Through their law firm Prenda, they initiated this action on behalf of the Plaintiff they created, for which they are also "the de facto owners and officers." *Id.* Through Prenda, they retained Ruggiero to serve of counsel to Prenda. *See*, *Exhibit B* ¶¶ 2,7 (Ruggiero Affidavit). Steele, being one of Prenda's "Principals", therefore had imputed notice of all Olivas' filings implicating them in Plaintiff's misdeeds, through and including Olivas' request for entry of default. *Id.*; ECF No. 21; *N.Y. Univ. v. First Fin. Ins. Co.*, 322 F.3d 750 n.2 (2d Cir. 2003) (holding a principal is held responsible for the knowledge acquired by its agent even if the information is never communicated to it).

The truthfulness of these and similar statements is further supported by two documents which Prenda sent to their former counsel, Brett Gibbs in early 2013: "*Prenda Law Profit and Loss Detail*, January through December 2012" and "Prenda Law Balance Sheet Detail." *See*, *Exhibits K and L* respectively. The receipt and disbursements shown in these spreadsheets directly contradict the oft-repeated statements of the Prenda attorneys that they have no financial interest in its litigation.

According to the *Prenda Law Profit and Loss Detail*, in 2012 alone, Prenda made payments to Hansmeier, Steele, Under the Bridge Consulting[6] and other associated entities—equal to almost 70% of Prenda's total revenue. Hansmeier received $645,821.29 ($185,321.28 directly and $460,500.00 through Under the Bridge). Steele received $660,915.94 ($200,415.94 directly and $460,500.00 through Under the Bridge). This does not include tens of thousands of dollars in additional payments to or on behalf of Steele and Hansmeier for travel and entertainment, meals, credit card charges, and miscellaneous reimbursements, or payments to Steele's wife, Kerry Eckenrode Steele.[7] It also does not include payments totaling $37,069.56 to Duffy or Duffy Law Group, also classified as "Payments to Old Owners." *See also, Lightspeed v. Smith*, No. 12-cv-00889, ECF No. 100 p. 6 (S.D. Ill. 2012) (Attached as *Exhibit O*) (despite their protestations to the contrary, Paul Hansmeier, John Steele, and Paul Duffy "are closely associated and acted in concert" to file the lawsuit in question).

What is most important to note, is neither the *Profit and Loss Detail* nor the *Balance Sheet Detail* show any payments to AFH. This only adds superfluous credence that AFH is not an independent entity, but rather an alter ego of the Prenda attorneys.

> "The Court further concludes that, once all of the ill-gotten gains are fully disgorged from AF Holdings, it would not be a wise use of the Court's limited resources to *sua sponte* attempt to fully untangle the relationship between Hansmeier, Steele, Duffy, Dugas, Lutz, and Prenda Law, on the one hand—and the Plaintiff, AF Holdings, LLC., on the other. Such investigation can more effectively be conducted by federal and state law enforcement at the direction of the United States Attorney, the Minnesota Attorney General, and the Boards of Professional Responsibility in the jurisdictions where the attorneys involved in this apparent scheme are licensed to practice law."

*AF Holdings v. John Doe*, No. 12-cv-01445, ECF No. 67 p. 9 (D. Minn. Nov. 6, 2013) (Attached as *Exhibit O*).

### 2. Steele had Ample Notice of the Pending Default.

This is not a situation in which there could be any due process constraints on the exercise of jurisdiction. First, a plaintiff who commences an action in a state that would not otherwise be able to

---

[6] A month before Gibbs left Prenda Law, Hansmeier told Gibbs in a telephone conversation that Hansmeier and Steele each owned 50% of a side-business called Under the Bridge Consulting. *Ingenuity 13*, ECF No. 240-2 ¶ 18 (Attached as *Exhibit M*). *See also*, Gibbs motion testifying to his experiences with Prenda, attached as *Exhibit N*.

[7] When convenient, Kerry Steele has also served as notary for Plaintiff's affidavits. *See, AF Holdings LLC v. John Doe*, No. 11-cv-24473-JAL, ECF No. 21 (S.D. Fla. April 16, 2012) (wherein Mark Lutz, AFH's purported owner, identifies himself as Prenda Law's paralegal).

obtain jurisdiction over the plaintiff's person consents to jurisdiction there for any counterclaim. *Eric M. Berman, P.C. v. City of New York*, 895 F.Supp.2d 453, 487 (E.D.N.Y. 2012); *AMPA Ltd. v. Kentfield Capital LLC*, No. 00-cv-0508, 2001 U.S. Dist. LEXIS 2027, *8 (S.D.N.Y. Feb. 27, 2001) (citing *Adam v. Saenger*, 303 U.S. 59, 67-68 (1938) (forum has judicial jurisdiction over plaintiff on original claim as well as on counterclaim)).

More so, in the instant case, AFH, Prenda and the Prenda attorneys are alter-egos, and the pleadings reflect this assertion. Of course, Steele and the other Prenda attorneys knew well that they were the true parties in interest; they had created their sham plaintiff "to shield [themselves] from potential liability" using the stolen identity of Steele's caretaker. *Ingenuity 13* Order p. 4. Courts may exercise jurisdiction over an individual or corporation in privity or that is the alter ego of an individual or corporation over which the court has jurisdiction. The general rule adopted by this Circuit is that "a corporate entity may be disregarded in the interests of public convenience, fairness and equity." *New York v. Exxon Corp.*, 112 B.R. 540, 553 (S.D.N.Y. 1990) (citation omitted). In this situation the two are considered the same person, and the jurisdictional contacts of one are attributed to the other for purposes of the due process analysis.[8] *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) ("It is also well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process."); *Marine Midland Bank, N.A. v. MilIer*, 664 F.2d 899, 902 (2d Cir. 1981) (fiduciary shield doctrine may not be applied when individual acted for personal gain, or when corporation is mere shell for its owner). It is therefore anomalous to vacate the motion for default judgment on the basis of improper service.

> "Any sort of participation by the defendant (or the defendant's alter ego) in the action is constitutionally sufficient as a jurisdictional basis."

J. Moore & J. Lucas, *Moore's Federal Practice* ¶108.53[3], p. 108-97 (3rd ed. 2012).

---

[8] See also, *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586-588 (5th Cir. 2010) (alter egos are considered same person and contacts of one are attributed to other); *Stuart v. Spademan*, 772 F.2d 1185, 1197-1198 (5th Cir. 1985) (fiduciary shield doctrine not applied when corporation is facade or alter ego of defendant); *Perry v. Delaney*, 5 F.Supp.2d 617, 621 (C.D. Ill. 1998) (fiduciary shield doctrine is discretionary in nature and should not be applied when (1) defendant is alter ego of corporation, (2) defendant owns most of corporation's stock, (3) defendant's discretionary actions cause harm in forum state, or (4) defendant acted to serve own personal interests); *YKK USA, Inc. v. Baron*, 976 F.Supp. 743, 747-748 (N.D. Ill. 1997) (fiduciary shield doctrine did not apply because corporation was merely alter ego of individual defendant); *Torchmark Corp. v. Rice*, 945 F.Supp. 172, 176 (E.D. Ark. 1996) (when corporation is merely alter ego of individual, jurisdiction of individual of individual may be predicated on jurisdiction over corporation).

Secondly, there is no dispute that AFH was on notice or properly served with the motion for default in this matter. *See*, *Exhibit A*; ECF No. 22. The standard for notice which complies with the due process clause is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Reasonably calculated" means likelihood, not certainty. *Mullane,* 339 U.S. at 317-319). A timely notice by certified mail to a party's last known address is sufficient to satisfy due process. *Id. See also, Exhibit H*.

Steele and the other Prenda attorneys, as AFH's alter-egos, were on notice of all aspects of litigation they initiated. They held ultimate and complete control over the litigation strategy the non-existent Plaintiff pursued. *See*, *Exhibits B and M*. As an alter-ego of AFH, Steele had an economic stake in the outcome of the trial and was, of course, in a position to know about everything that occurred. Given, moreover, the non-existence of AFH, the Prenda attorneys had good reason to anticipate that they might be held personally accountable for AFH's defaults. Hence, he had every reason to consider his own interests when devising AFH's defense.

Olivas' counsel went even further than required to ensure Steele and the other Prenda attorneys had full notice, emailing Duffy regarding the entry of default. *See*, *Exhibit C.* Duffy denied being involved, but when he received the default request, he promptly emailed Ruggiero to say, "Please call me before our client [i.e., AFH] sues you for malpractice." *See*, *Exhibit F; Exhibit B* ¶ 13. That helped precipitate Ruggiero's withdrawal, but Prenda did not substitute counsel, an unjustified failure that by itself makes the Prenda attorneys' current objections untimely.

Olivas' counsel sent his motion for default and supporting memorandum by certified mail to each of the Prenda attorneys. *See*, *Exhibit H*. The motion left no doubt that judgment would be against AFH and its aliases, including Steele. The motion sought default judgment against AFH, whom it noted "has been found to be an alias of Prenda Law, Inc. and its principals—John Steele, Paul Duffy and Paul Hansmeier." ECF No. 28 p. 1 n.1. The memorandum emphasized that judgment would be against the "Plaintiff," defining "Plaintiff" to include Steele. ECF No. 29 p. 1 n.1 ("AF Holdings has been found to be an alias of Prenda Law, Inc. and its principals—John Steele, Paul Duffy and Paul Hansmeier—collectively referred to herein as 'Plaintiff'"). *See also, id.* p. 3 ("Plaintiff … [i]n reality … is an alias of Prenda Law.") & p. 7 ("WHEREFORE, Defendant

13

respectfully requests that this Court enter a Default Judgment against Plaintiff and its known aliases …").

In the *Lightspeed* matter which Steele mentions in his motion, Judge Murphy dispelled Steele's oft-repeated contention he wasn't properly served. *See, Exhibit P* pp. 5-6, 8. Judge Murphy wrote that "Hansmeier and Steele both received all the process they were due." He goes on to note that notices were sent to several addresses on Steele's constantly rotating list of e-mail addresses, including docket@wefightpiracy.com, an address used by both Duffy and Steele. They both had "adequate notice" of the motion and the deadline for response, but they "chose to disregard it."

> "Aside from being from the same firm, there is other evidence suggesting these three men worked in concert with one another. First, Duffy, Steele, and Hansmeier used each other's CM/ECF login information, and/or filed documents on behalf of one another. For example, both Steele and Hansmeier used Duffy's CM/ECF login information to enter their appearances, or Duffy attempted to do so for them (See Doc. 11, 15); Hansmeier also used Steele's CM/ECF login information to file his motion to continue, or Steele filed it on Hansmeier's behalf (Doc. 73). Second, the similarities in documents filed by Duffy, Steele, and Hansmeier indicate an ongoing relationship. For example, in the instant motions to vacate/reconsider, the three men use identical formatting from the caption, to the font, and the signature block, and the substance is largely the same … "

*Id.* pp. 6-7. On these facts alone, the Court should reject the Prenda attorneys' assertion that their due process rights were violated by their being held responsible for the judgment against AFH.

**C. Olivas will be Prejudiced if the Default is Vacated.**

Prejudice to the opposing party should be considered and balanced with the other factors when deciding whether to grant relief from default. Prejudice is not significant unless it is something greater than would be experienced by the ordinary litigant in being required to litigate on the merits. Delay may be grounds for denying relief if it is shown that the delay will result in loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion. *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) ("delay alone is not a sufficient basis for establishing prejudice"); *see also, Swarna v. Al-Awadi*, 622 F.3d 123, 143 (2d Cir. 2010) (to establish prejudice, plaintiff must show that delay will result in loss of evidence or provide greater opportunity for fraud and collusion); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507-508 (2d Cir. 1991) (vacating default eight years after action was commenced would cause irreparable prejudice).

Setting aside the default judgment would seriously prejudice Olivas. Olivas and his counsel have spent considerable time, effort, and expense moving the litigation forward to the point of

default. Only now, after a year of litigation, refusing to participate in discovery and with a default entered, does Steele seek to make an appearance in the litigation. Vacating the default will only enable Steele "greater opportunity for fraud and collusion" on the Court and Olivas, an innocent defendant caught up in Steele, *et al*'s unsavory shenanigans.

> "Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies."

*Ingenuity 13* Order, pp. 3-5.

### D. Steele's Default was Willful.

Generally, in this Circuit, willfulness does not include careless or negligent errors even when the negligence is gross. *Am. Alliance Ins. Co.,* 92 F.3d at 61 (finding that the defendant's failure to file an answer due to a filing mistake by a staff member for in-house counsel was not willful or deliberate and did not constitute bad faith). Rather, the inquiry into willfulness is characterized by the Second Circuit as a "subjective inquiry." *Atlantic Recording Corp.*, 534 F.Supp.2d at 281. This subjective inquiry "effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not." *Am. Alliance Ins. Co.*, 92 F.3d at 61 (footnote omitted).

Therefore, "willfulness," in the context of a default, refers to conduct that is "more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998); see also *Am. Alliance Ins.,* 92 F.3d at 60-61 (collecting cases and finding that the Second Circuit has required "bad faith, or at least something more than mere negligence, before rejecting a claim of excusable neglect based on an attorney's or a litigant's error"); *Speaks*, 214 F.R.D. at 73 ("In the Second Circuit, willfulness does not include careless or negligent errors."). A default may be willful where a litigant's conduct is "egregious and … not satisfactorily explained." *McNulty*, 137 F.3d at 738. The Second Circuit has recognized that "the degree of negligence in precipitating a default is a relevant factor to be considered, along with the availability of a meritorious defense and the existence of prejudice, in determining whether a default judgment should be vacated and whether failure to do so exceeds allowable discretion." *Am. Alliance Ins. Co.*, 92 F.3d at 61. Although "[g]ross negligence can weigh against the party seeking relief from a default judgment, … it does not necessarily preclude relief." *Id.*; *Wagstaff-El v. Carlton Press Co.,* 913 F.2d 56, 57 (2d Cir. 1990) (crediting the trial court's view of the defendant's conduct as 'so nonchalant as to be willful'").

A court is within its discretion to deny relief when the default involved deliberate conduct, such as here, when a party knows of the proceedings and could respond, but decides not to as part of a deliberate strategy. *New York v. Green,* 420 F.3d 99, 108 (2d Cir. 2005) (no abuse of discretion in denying relief when defendant willfully defaulted and failure to file answer was part of overall plan to delay proceedings). The defaulting party must put forth some reasonable explanation for the default. *McNulty*, 137 F.3d at 739 (neglect in failing to answer was not excusable when record contained no affidavit offering explanation for conduct). Steele offers none.

> "The Court also finds that Duffy, Hansmeier, and Steele exhibited a "serious and studied disregard for the orderly process of justice." … These men have shown a relentless willingness to lie to the Court on paper and in person, despite being on notice that they were facing sanctions in this Court, being sanctioned by other courts, and being referred to state and federal bars, the United States Attorney in at least two districts, one state Attorney General, and the Internal Revenue Service. For example, at the November 13 hearing, Hansmeier skirted the Court's direct questions, Steele made feigned protestations, and both flat-out lied about their association with Prenda Law, Inc. in the face of documentary evidence on the record in this case, and their sworn declarations in other cases."

*See, Exhibit P* p. 10.

Instead, Steele ignored multiple notices about this case and the default without explanation. He is one of the Principals who "owned and controlled" Prenda. *Ingenuity 13* Order p. 4. Through his law firm Prenda, he initiated this action on behalf of the Plaintiff he created, for which they are also "the de facto owners and officers." *Id.* Through Prenda, they retained Ruggiero to serve of counsel to Prenda. *See*, *Exhibit B* ¶¶ 2,7 (Ruggiero Affidavit). They therefore had imputed notice of all Olivas' filings implicating them in Plaintiff's misdeeds, through and including Olivas's request for entry of default. *Id.*; ECF No. 21; *McNulty*, 137 F.3d at 739 (normally, conduct of attorney is imputed to client—the fact the client is the attorney does not defeat this).

Of course, the Prenda attorneys knew well that they were the true parties in interest; they had created their sham plaintiff "to shield [themselves] from potential liability." *Ingenuity 13* Order p. 4. When the default judgment against the Prenda attorneys was on its way, they did not timely oppose it. This Court should not endorse such irresponsible and untimely conduct, especially from attorneys.

**E.   If the Default is Vacated, Olivas Requests Steele, *et al* Post Bond of no less than $190,000.**

In determining whether to exercise its discretion to set aside an entry of default, a district court has inherent power to impose reasonable conditions in order to avoid undue prejudice to the non-defaulting party. A court may use this inherent power to require a party to post security for

16

payment of all or part of an eventual judgment. *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514-516 (2d Cir. 2001) (when there was evidence defendant had transferred assets to relatives, district court did not err in imposing bond of $500,000 to secure against further transfers or in refusing to vacate entry of default when defendant failed to post bond); *see also, Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*, 109 F.R.D. 692, 698 (S.D.N.Y. 1986) (bond of $500,000 to secure any judgment for plaintiff was appropriate to mitigate prejudice to plaintiff from delay).

Another condition a court may impose is the payment of reasonable attorney's fees and costs incurred by the opposing party because of the default. *Corso v. First Frontier Holdings, Inc.*, 205 F.R.D. 420, 421 (S.D.N.Y. 2001) (court ordered defendants to reimburse plaintiff for reasonable amount of attorney's fees expended on motion for default judgment); *Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*, 109 F.R.D. 692, 698 (S.D.N.Y. 1986) (court ordered defendant to pay plaintiff reasonable attorney's fees and costs incurred on plaintiffs motion for default judgment).

Given that Steele currently has outstanding judgments totaling $136,547.80[9] in favor of Olivas' counsel, should the Court vacate the entry of default, Olivas respectfully requests Steele post a bond of no less than $150,000.00.

## V. CONCLUSION

This case does not require us to further delve into these distractions.

Dated: December 3, 2013              Respectfully,

/s/ Jason E. Sweet
Jason E. Sweet (BBO# 668596)
Email: jsweet@boothsweet.com
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8602
Fax: (617) 250-8883

*Pro Hac Vice*
*Counsel for Elliot Olivas*

---

[9] Steele has not appealed the *Lightspeed* Order (*Exhibit P*) and the time to so has passed. Also, the *Chowdhury* court has affirmed its decision in favor of the plaintiff. *See, Exhibit Q*.

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 3, 2013, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

                                                    /s/ Jason E. Sweet

                                                    Jason E. Sweet