UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AF HOLDINGS, LLC,<br>　　　*Plaintiff,*<br>　　　*v.*<br>ELLIOT OLIVAS,<br>　　　*Defendant.* | Civil No. 3:12-cv-01401 (JBA)<br><br>September 24, 2014 |

**RULING DENYING MOTION FOR DEFAULT JUDGMENT**

This case started as an action by Plaintiff AF Holdings against Defendant Elliot Olivas for copyright infringement, contributory infringement, and civil conspiracy arising out of Defendant's alleged file sharing of a pornographic video entitled Sexual Obsession in which Plaintiff claims a copyright interest. (Compl. [Doc. # 1] ¶ 1.) On January 25, 2013, Defendant Olivas filed his Answer to the Complaint and asserted counterclaims against AF Holdings for a declaratory judgment of non-infringement, abuse of process, copyright misuse, and defamation, based on allegations of Plaintiff's fraudulent activity and abusive litigation. (Countercl. [Doc. # 10] ¶¶ 22, 24–31, 37, 52–57.) On March 20, 2013, a pre-filing conference was held, during which Plaintiff AF Holdings represented that it intended to file a motion to dismiss Defendant's counterclaims. The Court issued a Scheduling Order [Doc. # 23] setting a deadline of April 19, 2013 for the filing of Plaintiff's motion.

When Plaintiff failed to file either an answer or a motion to dismiss Defendant's counterclaims as directed, Mr. Olivas as Counterclaim Plaintiff moved [Doc. # 30] for entry of default on the counterclaims against AF Holdings, which the Clerk entered [Doc. # 34] on August 30, 2013. He now moves [Doc. # 38] for default judgment on his

counterclaims against AF Holdings and further requests that the Court find AF Holdings, LLC, and non-parties Prenda Law, John L. Steele, Paul A. Duffy, Paul R. Hansmeier, and Mark Lutz jointly and severally liable for his damages, attorneys' fees, and costs. Mr. Olivas also seeks discovery of AF Holdings's assets and its control and a hearing to determine damages. John L. Steele moves [Doc. # 39] "to dismiss" Mr. Olivas's motion as to him personally. None of the other individuals or entities have filed responses. For the reasons that follow, Defendant's motion for default judgment is denied and Mr. Steele's motion is also denied.

## I.     Background

Mr. Olivas argues that default judgment is justified under three Federal Rules of Civil Procedure: Rule 55(b), Rule 37(b); and Rule 41(b). (Mot. for Default J. [Doc. # 38] at 1.) He claims that Plaintiff AF Holdings had ample notice of his counterclaims, he would be greatly prejudiced if default entry were vacated, Plaintiff's default was willful, and Plaintiff has no meritorious defense. (Mem. of Law in Support of Mot. for Default J. [Doc. # 38] ("Olivas Mem.") at 15–19; Resp. in Opp'n [Doc. # 40] at 6–16.) Mr. Olivas also offers two binders of documentation and caselaw purporting to support his allegation that AF Holdings is the alter ego of Prenda Law, John Steele, Paul Duffy, Paul Hansmeier, and Mark Lutz. (*See generally* Olivas Mem.; Resp. in Opp'n.)

Mr. Olivas's evidence of the claimed alter ego relationships is varied and diffuse, but briefly, he asserts that: Mr. Steele misappropriated the name and identity of his former groundskeeper to use him as a straw plaintiff, (Olivas Mem. at 2–4); Mr. Steele and Mr. Hansmeier were responsible for creating domain names used by Prenda Law (*id.* at 3); Prenda Law distributed over 80% of the proceeds from its copyright infringement

lawsuit settlements to Mr. Steele, Mr. Hansmeier, and Mr. Duffy, and distributed no proceeds to AF Holdings or any other purported client (*id.* at 5–6); AF Holdings's copyrighted films were distributed on BitTorrent by the user of an IP address owned by Steele Hansmeier PLLC (*id.* at 7); and several other courts have concluded that AF Holdings was "an alias of its counsel, Prenda Law, Inc., its principals [Mr. Steele, Mr. Hansmeier, Mr. Duffy] and its paralegal, Mark Lutz" (*id.* at 1).

Mr. Steele, a non-party, interprets Mr. Olivas's motion as a motion for default judgment as to him personally, and he moves that the Court "dismiss" Defendant/Counterclaim Plaintiff's motion for default judgment.[1] (John Steele's Mem. of Law in Support of Mot. to Dismiss Def.'s Mot. [Doc. # 39] ("Steele Mem.") at 1.)  Mr. Steele argues that the Court lacks personal jurisdiction over him because he never received service of process and he lacks minimum contacts with Connecticut such that the exercise of this Court's jurisdiction would offend traditional notions of fair play and substantial justice.  (*Id.* at 2–4.)  He additionally asserts that Mr. Olvias's counterclaims fail to state a claim against him personally.  (*Id.* at 5–6.)

## II.    Legal Standard

Federal Rule of Civil Procedure 55[2] "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).  The entry of a default under Rule 55(a) is an admission of the well-

---

[1] Mr. Steele's pleading "Motion to Dismiss Defendant's Motion for Default Judgment," is in an improper form for opposition to a motion.  Hence it will be denied, but its substance will be considered as opposition grounds.

[2] The Court need not reach Defendants' grounds based on Rules 37(b) and 41(b).

pleaded factual allegations in the complaint except claims for damages. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Taking the factual allegations and all reasonable inferences as true, the court determines whether such alleged facts show liability on the cause of action claimed. Entry of a default judgment under Rule 55(b) establishes a defaulting party's liability, and a final judgment that terminates the litigation is entered, awarding the movant relief to which the court decides it is entitled as permitted by Rule 54(c). No motion to set aside default or any response to Mr. Olivas's counterclaim has been filed by AF Holdings.

"In considering a motion for default judgment, the Court is guided by the same three factors that apply to a motion to set aside entry of a default judgment." *Buttnugget Publ'g v. Radio Lake Placid, Inc.*, 807 F. Supp. 2d 100, 106 (N.D.N.Y. 2011) (citing *Enron Oil Corp v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993)); *Rodriguez v. Almighty Cleaning, Inc.,* 784 F. Supp.2d 114, 123 (E.D.N.Y. 2011)); *see also* 10 Moore's Fed. Practice 3d § 55.31[2] ("When faced with the decision concerning whether to render a default judgment in the first place, a court logically should consider whether factors are present that would later oblige the court to set that default judgment aside."). These factors are: (1) whether the default was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious defense is presented. *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010); *Enron Oil Corp.*, 10 F.3d at 96. Additionally, the Court must "'consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.'" *Johnson & Johnson v. Azam Int'l Trading*, No. 07-CV-4302 (SLT) (SMG), 2013 WL 4048295 at *8 (E.D.N.Y. Aug. 9, 2013) (quoting *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y.2010)).

III.    **Discussion**

A.  **Default Judgment as to AF Holdings**

Mr. Olivas maintains that default judgment on his counterclaims is appropriate because Plaintiff effectively abandoned this case without explanation after the March 20, 2013 pre-filing conference.[3]  Notwithstanding AF Holdings's representation to the Court that it intended to file a motion to dismiss, it has to date, failed to respond to Mr. Olivas's counterclaims.  Plaintiff's abandonment of its suit and defense to counterclaims without justification demonstrates that its default was willful.  Mr. Olivas claims that further delay may "provide greater opportunity for fraud and collusion."  *See New York v. Green,* 420 F.3d 99, 108 (2d Cir. 2005).  Finally, as Plaintiff has not submitted *any* defense to Defendant's counterclaims, it has failed to present a meritorious defense.

However, even where the equities favor entry of default judgment, a defendant "is not entitled to a default judgment as a matter of right."  *Buttnugget Publ'g,* 807 F. Supp. 2d at 106.  Local Rule 7(a)[4] and Federal Rule of Civil Procedure 55(b) require that before granting default judgment, the Court review Defendant's counterclaims to ensure that they allege sufficient facts which if accepted as true constitute a valid legal claim.

1.  **First Counterclaim: Declaratory Judgment of Non-Infringement**

Defendant/Counterclaim Plaintiff argues that he is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that he has not infringed AF Holdings's copyright.

_____

[3] By separate Order [Doc. # 42], the Court dismissed AF Holdings's complaint for its failure to plead, comply with Court scheduling orders, or prosecute its action.

[4] Local Rule 7(a) directs that "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."  D. Conn. L. Civ. R. 7(a).

(Countercl. ¶ 22.)   A party seeking a declaratory judgment of non-infringement must demonstrate that there is "a case of actual controversy within [the court's] jurisdiction." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)).  A "case of actual controversy" exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 127 (internal quotation marks omitted); *see Kristensons-Petroleum, Inc. v. Sealock Tanker Co.*, 304 F. Supp. 2d 584, 589 (S.D.N.Y. 2004) ("An actual case or controversy is one that is 'real and substantial . . . admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" (quoting *F.X. Maltz, Ltd. v. Morgenthau*, 556 F.2d 123, 125 (2d Cir. 1977)).  A "declaratory judgment is only appropriate to guide parties concerning their rights in an *existing* dispute." *In re Schantz*, 221 B.R. 653, 661 (N.D.N.Y. 1998) (emphasis original).

Where, as here, there is no existing dispute because the claims against the party seeking a declaratory judgment have been dismissed as abandoned, the immediacy requirement cannot be met and declaratory judgment is not appropriate.  Given that AF Holdings has taken no action in this suit for 18 months, and given the Court's sua sponte Order dismissing AF Holdings's claims against Mr. Olivas, the Court cannot conclude that there remains an actual controversy of sufficient immediacy to warrant declaratory judgment.  Defendant's request for declaratory judgment of non-infringement by default judgment is therefore denied.

**2. Second Counterclaim: Abuse of Process**

Mr. Olivas next asserts that Plaintiff is liable for abuse of process. Under Connecticut law, "[a]n action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." *Mozzochi v. Beck*, 204 Conn. 490, 494 (1987) (internal quotation marks omitted). The Connecticut Supreme Court has explained:

> Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed. . . . Comment b to § 682 explains that the addition of "primarily" is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.

*Alexandru v. Dowd*, 79 Conn. App. 434, 441–42 (Conn. App. Ct. 2003) (quoting *Mozzochi*, 204 Conn. at 494). As distinct from claims of vexatious litigation or malicious prosecution, a claim of abuse of process requires conduct "occurring after the issuance of process." *Passaro-Henry v. Allstate Ins. Co.*, No. 3:10-CV-450 (JCH), 2010 WL 5174405, at *3 (D. Conn. Dec. 15, 2010) (citing *Doctor's Associates, Inc. v. Weible*, 92 F.3d 108, 114 (2d Cir. 1996)); *see id.*, at *4 ("The distinction between malicious prosecution or vexatious suit and abuse of process, as tort actions, is that in the former the wrongful act is the commencement of an action without legal justification, and in the latter it is in the subsequent proceedings, not in the issue of process, but in its abuse." (quoting *Schaeffer v. O.K. Tool Co.*, 148 A. 330, 333 (Conn. 1930))).

Mr. Olivas, however, makes no factual allegations about any conduct occurring after commencement of this lawsuit.  Rather, he appears to claim that the very act of filing the lawsuit constituted abuse of process.  (*See* Countercl. ¶ 24 ("Plaintiff made knowing misrepresentations in its summons filed against Defendant."); *id* ¶ 33(f) ("Plaintiff assert [sic] its claims in order to influence the conduct of the Defendant in ways that are not related to the merits of its claims."); *id.* ¶ 25 ("In filing its complaint, Plaintiff sought to use and did use lawfully issued process for an ulterior or illegitimate purpose."); *id.* ¶ 33(g) ("Plaintiff used the completed service to publicly shame the Defendant on its counsel's website."); *id.* ¶ 33(h) ("Plaintiff intends the current action to hang as a sword over Defendant's head, to extort unwarranted payments to settle claims not supportable as a matter of law.")).  Such a claim, is as a matter of law, insufficient to establish abuse of process.  Default judgment on Mr. Olivas's abuse of process counterclaim is denied.

### 3.   Third Counterclaim: Copyright Misuse

Mr. Olivas's next counterclaim asserts that "Plaintiff engaged in abuse and/or improper conduct in exploiting or enforcing its purported copyright assignment beyond any legitimate rights it may have." (Countercl. ¶ 37.)  Specifically, Defendant claims that that the copyright upon which Plaintiff relies is assigned to "AF Films" not "AF Holdings;" that in any case, the assignment was executed after Defendant's alleged infringement took place; and finally, that Plaintiff's threatening Defendant with statutory damages in excess of those permitted by law constitutes copyright misuse.  (*Id.* ¶¶ 39, 43, 46.)  Defendant requests damages and "declaratory relief that Plaintiff's copyright assignment is invalid and barring Plaintiff from advancing any claims or claims for

statutory remedies unless and until it obtains a corrected and proper assignment." (*Id.* ¶¶ 48, 49.)

Because the Second Circuit has expressly "decline[d] to create an independent cause of action for copyright misuse," *Lava Records, LLC v. Amurao*, 354 F. App'x 461, 463 (2d Cir. 2009) (internal quotation marks omitted); *see also John Wiley & Sons, Inc. v. Shumacher*, No. 09 CIV. 2108 (CM), 2010 WL 103886, at *3 (S.D.N.Y. Jan. 4, 2010) ("As a threshold matter, the Second Circuit has made clear that copyright misuse is a defense to an infringement claim *not* an independent cause of action for damages." (internal quotation marks omitted) (emphasis original)), default judgment on Mr. Olivas's copyright misuse claim is not appropriate and is denied.

### 4. Fourth Counterclaim: Defamation

In his last counterclaim, Mr. Olivas accuses Plaintiff of defamation. To establish a prima facie case of defamation in Connecticut, the accusing party must demonstrate that:

> (1) the [other party] published a defamatory statement; (2) the defamatory statement identified the [accusing party] to a third person; (3) the defamatory statement was published to a third person; and (4) the [accusing party's] reputation suffered injury as a result of the statement.

*Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217 (2004). "A defamatory statement is defined as a [false statement] that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* (internal quotation marks omitted).

Mr. Olivas accuses Plaintiff, in essence, of making three defamatory statements: a statement on Plaintiff's counsel's website that Mr. Olivas had illegally downloaded pornography; a statement on Plaintiff's counsel's website that Defendant wanted to go to

trial over the matter; and a statement on Plaintiff's counsel's website that Defendant had been accused of criminal acts against AF Holdings. (Countercl. ¶¶ 55–57.)

a. **The Complaint**

Mr. Olivas "denies any liability for, or knowledge of, the allegations against him in the complaint." (*Id.* ¶ 51.) In addition, he asserts that because "Plaintiff and its counsel are aware an IP address does not identify the computer being used or its user[,] [i]t was either reckless or negligent to publicly accuse [Mr. Olivas], based only on the IP address, of being an illegal downloader of pornography." (*Id.* ¶¶ 54–55.) Mr. Olivas further alleges that "[b]y hyperlinking his name elsewhere on its counsel's website, Plaintiff ensures that the complaint is one of the top search engine results for his name." (*Id.* ¶ 60.) As a result, Mr. Olivas contends, he is suffering "financial and reputational damage." (*Id.* ¶ 61.)

Mr. Olivas's allegations are sufficient to support a claim that AF Holdings's complaint was defamatory. However, because the statements in the complaint were privileged, AF Holdings cannot be held liable for them.

"It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." *Alexandru*, 79 Conn. App. at 438 (internal quotation marks omitted). "The privilege applies also to statements made in pleadings or other documents prepared in connection with a court proceeding." *Id.* The "pivotal factor" in determining whether the privilege applies "is frequently to whom the matter is published. . . . The privilege may be lost by unnecessary or unreasonable publication to one for whom the occasion is not privileged." *McManus v. Sweeney*, 78 Conn. App. 327, 335–36

(Conn. App. Ct. 2003) (citing *Kelley v. Bonney*, 221 Conn. 549, 575 (1992)).  For this reason, the Connecticut Supreme Court has held that "[p]ublication to the media of material that the media was independently entitled to view . . . cannot provide a basis for a claim of defamation." *Kelley*, 221 Conn. at 576.

*Kelley* is controlling here. Plaintiff published the defamatory allegations in its complaint on its counsel's website, available to be viewed by anyone.  Since legal complaints, once filed, are available to the public, the publication of Plaintiff's complaint on its counsel's website, like the publication of a complaint to the media, is protected by the judicial proceedings privilege.  AF Holdings therefore cannot be held liable for defamation for publishing its complaint on its website.

### b.   Other Allegedly Defamatory Statements

In addition to the complaint, Mr. Olivas contends that two statements published to AF Holdings's counsel's website were defamatory and knowingly false: "Stating that Defendant 'wished to go to trial over the matter'" and "Stating that the Defendant is accused of 'various civil *and criminal* acts against our client.'"  (*Id.* ¶¶ 56–57) (emphasis original.)  The first statement—that Mr. Olivas wished to go to trial over the matter—is not, as a matter of law, defamatory because it does not by its nature harm the reputation of, lower public esteem of, or deter association with Mr. Olivas.  While publicly accusing an individual of illegally downloading pornography or committing criminal acts may tend to harm that person's reputation, stating that the individual wishes to defend against a lawsuit's charges does not.

The second statement—that Mr. Olivas was accused of criminal acts—satisfies the requirements for defamation, but Mr. Olivas's counterclaim fails to put forth facts

sufficient to support holding AF Holdings liable for the statement.  Although "[a] client may be vicariously liable for defamatory statements made by his attorney if such statements were apparently authorized by the client," *Arigno v. Murzin*, CV960474102S, 2001 WL 1265404, at *9 (Conn. Super. Ct. Oct. 2, 2001), there is no apparent authorization by AF Holdings shown here.  Defendant's counterclaim fails to attribute the statement regarding criminal acts to anyone (*see* Countercl. ¶ 57) and asserts no facts that would support a finding of apparent authority, thus precluding the Court from holding AF Holdings vicariously liable for its counsel's defamatory statement.  Because AF Holdings cannot be held liable for any of the three allegedly defamatory statements, Mr. Olivas's motion for default judgment on his defamation counterclaim is denied.

### B.  Liability of Alleged Alter Egos Mr. Steele, Mr. Hansmeier, Mr. Duffy, Mr. Lutz, and Prenda Law

In addition to requesting default judgment against AF Holdings, Defendant/Counterclaim Plaintiff asks the Court to find that AF Holdings was an alter ego of Mr. Steele, Mr. Hansmeier, Mr. Duffy, Mr. Lutz, and Prenda Law, such that they should be held jointly and severally liable.  Although Mr. Olivas submitted some evidence supporting this claim, his brief does not address the Court's subject matter jurisdiction over non-parties, and the Court declines to consider this request.

The doctrine of enforcement jurisdiction gives federal courts "jurisdiction in [post-judgment] proceedings for the exercise of [their] inherent power to enforce [their] judgments."  *Peacock v. Thomas*, 516 U.S. 349, 356 (1996).  However, that jurisdiction does not "extend[] beyond attempts to execute, or to guarantee eventual executability of, a federal judgment."  *Id.*  In *Peacock v. Thomas*, the Supreme Court addressed the

question of whether a federal court with federal question jurisdiction over a case (there, under ERISA) also had jurisdiction over a veil piercing claim brought during post-judgment proceedings. *Id.* Reasoning that a veil piercing claim was a "new theor[y] of liability," "founded . . . upon different facts than the ERISA case," the Supreme Court concluded that the lower court could only exercise jurisdiction over the veil piercing claim if it could find an independent jurisdictional hook to do so. *Id.* at 359. The Court did not explicitly address the applicability of its holding to alter ego claims.

This silence created a split among the circuits regarding whether post-judgment proceedings on alter ego claims constitute "proceedings to collect an existing judgment," in which case ancillary jurisdiction would exist, or proceedings "that raise an independent controversy with a new party in an effort to shift liability," such that ancillary jurisdiction would not exist. *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001); *see also Labarbera v. United Crane & Rigging Servs., Inc.*, No. 08-CV-3274 (DLI) (ALC), 2011 WL 1303146, at *10 (E.D.N.Y. Mar. 2, 2011) (collecting cases).

Courts that have held that ancillary jurisdiction does cover claims of alter ego liability, including most prominently the Seventh Circuit, have reasoned that veil piercing claims seek vicarious liability while alter ego claims seek direct liability (since alter egos are legally considered the same entity). *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000). As other courts have pointed out, however, *Elite Erectors* appears to be at odds with the Supreme Court's analysis in *Peacock. See Ellis v. All Steel Const., Inc.*, 389 F.3d 1031, 1035 (10th Cir. 2004) ("*Elite Erectors* appears to conflict with *Peacock* itself, insofar as the Supreme Court indicated that its holding, though specifically addressed to a veil-piercing claim, was

broad enough to address the conflicting practices of several circuits, including ours in *Sandlin,* that had involved *alter-ego* claims."); *Labarbera*, 2011 WL 1303146, *10 (same).

It also appears to conflict with the Second Circuit's reading of *Peacock*.  Although the Second Circuit has not addressed this issue directly, its discussion of *Peacock* in *Epperson* implies disagreement with the Seventh Circuit.  *Epperson*, 242 F.3d at 106 (describing "claims of alter ego liability and veil-piercing" as "rais[ing] an independent controversy with a new party in an effort to shift liability").  Other district courts in the Second Circuit have reached similar conclusions.  *See Labarbera*, 2011 WL 1303146, at *11 ("By grouping alter ego and veil piercing claims together, it appears that the Second Circuit agrees that courts do not have jurisdiction over alter ego claims seeking to shift liability."); *Knox v. Orascom Telecom Holding S.A.E.*, 477 F. Supp. 2d 642, 647 (S.D.N.Y. 2007) ("[O]nce the Court is required to engage in a veil-piercing or alter ego analysis . . . an independent basis for jurisdiction is required.").  Mr. Olivas asserts no independent jurisdictional basis for his alter ego claims in this litigation.

## IV.    Conclusion

Accordingly, Defendant's Motion [Doc. # 38] for Default Judgment is DENIED, and Mr. Steele's Motion [Doc. # 39] to Dismiss Defendant's Motion for Default Judgment is also DENIED, s*ee supra* note 1.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24th day of September, 2014.

14