## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| AF HOLDINGS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ELLIOT OLIVAS, )<br>)<br>Defendant. ) | Civil Action No. 3:12-cv-01401 (JBA) |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS REQUEST FOR A SPECIAL FINDING AGAINST PLAINTIFF PURSUANT TO CONN. GEN. STAT. § 52-226a

Defendant Elliot Olivas ("Olivas"), in support of his request for a special finding pursuant to Connecticut General Statutes § 52-226a that Plaintiff AF Holdings, LLC's ("Plaintiff") action, or any of its counts, was without merit and was not brought in good faith, states as follows.

### FACTUAL BACKGROUND

Plaintiff alleges infringement of a pornographic video entitled "Sexual Obsession" in which Plaintiff claims to have a copyright interest. Doc. 43. Before this action, Plaintiff raised its copyright claims in another district: *AF Holdings, LLC v. Does 1-1,140*, No. 11-cv-01274-RBW (D.D.C. filed July 13, 2011). Countercl. [Doc. 10] ¶¶ 6-7, 26.[1] Through discovery in that action Plaintiff obtained the name of Olivas' mother (the subscriber to Olivas' household Internet account) and initially accused Olivas' mother of copyright infringement, seeking settlement from her. *See* Countercl. ¶¶ 27, 33(b)-(c); Doc. 21 p. 4. Plaintiff dismissed its prior suit and filed this action against Olivas on October 1, 2012. Countercl. ¶¶ 8-9, 28; Compl. [Doc. 1].

Plaintiff sued Olivas on four counts of copyright infringement: reproduction in violation of 17 U.S.C. § 106(1); distribution in violation of 17 U.S.C. § 106(3); contributory infringement; and civil conspiracy "with other unnamed individuals to reproduce and distribute the Plaintiff's Video." Compl. ¶ 54. Before serving Olivas, Plaintiff contacted Olivas' family, again urging settlement. Countercl. ¶ 29. Olivas maintained his innocence at all times. *See id*. ¶¶ 18, 51.

On January 25, 2013 Olivas answered the complaint and asserted four counterclaims. Countercl. Plaintiff moved to strike the counterclaims in part; Olivas filed an opposition, and the

---

[1] Plaintiff admitted the truth of the facts alleged in Olivas' counterclaims upon entry of default. Doc. 43 pp. 3-4 (*citing Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

Court denied the motion. Doc. 14, 21, 32. Plaintiff also filed a motion to dismiss the counterclaims on February 14, 2013, which the Court denied the next day without prejudice for failure to comply with the Court's pre-filing conference requirement. Doc. 15, 16. In Plaintiff's February 15, 2013 motion for a pre-filing conference, and at the March 20, 2013 pre-filing conference itself, Plaintiff declared that it intended to again file a motion to dismiss the counterclaims. Doc. 17, 24; see also Doc. 43 p. 1. On March 21, 2013, the Court issued a scheduling order setting an April 19, 2013 deadline for any such motion. Doc. 23.

On May 6, 2013, Plaintiff and its counsel John Steele, Paul Hansmeier, and Paul Duffy, among others, were sanctioned in an order addressing certain of Plaintiff's other copyright cases. Doc. 25-1 (Order Issuing Sanctions, *Ingenuity 13, LLC v. John Doe*, No. 12-cv-08333 (C.D. Cal. May 6, 2013) ("*Ingenuity 13*")). The *Ingenuity 13* court found that Plaintiff is a mere shell company with no official owners or officers, created by Steele, Hansmeier, and Duffy (its *de facto* owners and officers) solely to litigate copyright-infringement lawsuits. *Id.* pp. 3-4. Pertinent to Olivas' counterclaims, the court further found that Steele, Hansmeier, and Duffy "stole the identity of Alan Cooper" and fraudulently signed a copyright assignment agreement  "using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings." *Id.* p. 5. *See* Doc. 32 p. 8 ("it is clear that Alan Cooper's role in AF Holdings, Inc. is relevant to Defendant's non-infringement counterclaim because Alan Cooper is purported to be signatory for AF Holdings LLC on the Copyright Assignment Agreement conveying Plaintiff's asserted property interest"). Olivas submitted the *Ingenuity 13* order for judicial notice. Doc. 25.

Plaintiff did not participate in meeting the pre-trial discovery requirements of Local Rule 26(f), declining Olivas' requests to discuss initial disclosures and the joint pre-trial schedule. *See* Doc. 27 p. 1; *see also* Doc. 27-1, 27-2, 28 ¶¶ 7-8. Plaintiff's only response to Olivas' discovery requests was that the matter had been forwarded to Duffy. Doc. 28 ¶ 9; *see also* Doc. 40-2 ¶ 8.

On June 17, 2013, the Court set a November 1, 2013 deadline for discovery. Plaintiff never sought discovery from Olivas, and has made no filings or appearances in this action since.[2]

---

[2] Plaintiff has continued to litigate its other cases long since cutting off communications with this Court. In the *Ingenuity 13* appeal, Plaintiff and others (including Steele, Hansmeier, and Duffy) jointly filed their opening brief on November 18, 2013, and their joint reply brief on April 28, 2014. *Ingenuity 13, LLC v. John Doe*, No. 13-55859 et al. (9th Cir. filed Nov. 18, 2013); *id.* (9th Cir. filed Apr. 28, 2014). On April 14, 2014, Duffy appeared at oral argument for Plaintiff in an appeal of another of its cases, *AF Holdings, LLC v. Does 1-1,058*, No. 12-7135 (D.C. Cir. 2014).

Plaintiff failed to respond to the counterclaims, despite its declared intent to move to dismiss. Olivas moved for entry of default on his counterclaims on July 26, 2013. Doc. 30.

On August 13, 2013, Plaintiff's local counsel Dan Ruggiero informed Olivas that Plaintiff "gave me the ok to dismiss" its affirmative claims unilaterally. Doc. 40-5; *see also* Doc. 31 ¶ 5 (Ruggiero "specifically requested and received permission to dismiss Plaintiff's claims..."). The same day, Plaintiff's "national counsel" Duffy threatened Ruggiero on behalf of Plaintiff: "Please call me before our client sues you for malpractice." Doc. 40 p. 3, 40-6. The next day, August 14, 2013, Ruggiero moved to withdraw as local counsel without substitution. Doc. 31. He declared: "It is impossible for the undersigned to file pleadings on behalf of [Plaintiff] where there is no reasonable basis to conclude that anything that Plaintiff tells counsel is truthful." *Id.* p. 4.

On August 30, 2013, the Court gave Plaintiff notice that it intended to grant the motion to withdraw, and that dismissal could be entered if Plaintiff did not engage replacement counsel. Doc. 33.  Also that day, the Clerk entered default on Olivas' counterclaims. Doc. 34. On October 23, 2013, the Court granted Ruggiero's motion to withdraw. Doc. 37. Plaintiff did not move to voluntarily dismiss its claims as Ruggiero suggested, and did not substitute counsel for Ruggiero.

On October 25, 2013, Olivas moved for default judgment on his counterclaims, and requested that Plaintiff be held jointly and severally liable with Steele, Hansmeier, Duffy, Prenda Law, and Mark Lutz. Doc. 38. On November 12, 2013, Steele, without entering an appearance, filed a self-styled "motion to dismiss" Olivas' motion. Doc. 39. Olivas filed an opposition. Doc. 40. The Court denied Olivas' motion for default judgment on September 24, 2014. Doc. 43.

On September 23, 2014, the Court dismissed Plaintiff's Complaint *sua sponte* for failure to prosecute. Doc. 42. As the court noted, "Plaintiff has taken no steps to prosecute its action in any way for 18 months." *Id.* Olivas withdrew his counterclaims by notice on January 30, 2015. Doc. 44. The Clerk entered judgment "that the Plaintiff's complaint is dismissed" on February 13, 2015. Doc. 45.

## LEGAL AUTHORITY

"It is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)).

Connecticut General Statutes § 52-226a ("Section 52-226a") specifically authorizes a request for a finding of facts by the trial court after judgment is entered. It provides in full,

In any civil action tried to a jury, after the return of a verdict and before judgment has been rendered thereon, or in any civil action tried to the court, not more than fourteen days after judgment has been rendered, the prevailing party may file a written motion requesting the court to make a special finding to be incorporated in the judgment or made a part of the record, as the case may be, that the action or a defense to the action was without merit and not brought or asserted in good faith. Any such finding by the court shall be admissible in any subsequent action brought pursuant to section 52-568.

A special finding under Section 52-226a is admissible as evidence on a subsequent claim brought pursuant to Section 52-568 (the Connecticut vexatious litigation statute), though it is not a prerequisite to such a claim. *Just Breakfast & Things!!! v. Vidiaki, LLC*, No. CV105014092, 2013 Conn. Super. LEXIS 228, *19-20 (Jan. 31, 2013) (collecting cases).

"A special finding under General Statutes § 52-226a can be made only when two elements, have been shown: (1) 'the action was without merit' and (2) 'the action ... was not brought or asserted in good faith.'" *Shea v. Chase Manhattan Bank*, No. CV 960149647, 2000 Conn. Super. LEXIS 1546, *9-10 (June 15, 2000). The moving party must provide "sufficient evidence" that the action was not brought or asserted in good faith. *Id.*; *accord Rogan v. Rungee*,  No. CV085008476, 2012 Conn. Super. LEXIS 1223, *3 (May 9, 2012); *Ostapowicz v. J.M. Equip. & Transp., Inc.*, No. HHDCV066000866S, 2010 Conn. Super. LEXIS 2513, *16 (Oct. 4, 2010).

The movant's burden of proof on a claim under Section 52-226a should be that of "proof by a fair preponderance of the evidence." *See Clinipad Corp. v. Aplicare, Inc.*, No. 235252, 1991 Conn. Super. LEXIS 1094, *5 (May 21, 1991) ("Actions of malicious prosecution or vexatious litigation ... require no heightened burden of proof ..."); *Meadows Condo. Ass'n v. Redman*, No. MMXCV075001823S, 2009 Conn. Super. LEXIS 2062, *2 (July 30, 2009) (applying "the standard applicable to civil matters," preponderance of the evidence, to vexatious litigation claim). *Cf. Beverly v. State*, 44 Conn. App. 641, 648-49, 691 A.2d 1093 (1997) (affirming denial of special finding "'absent both clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes'" (*quoting Fattibene v. Kealey*, 18 Conn. App. 344, 360-61, 558 A.2d 677 (1989)); *Acker v. Farrah*, No. CV 930704603S, 1998 Conn. Super. LEXIS 2166 (July 30, 1988) (granting Section 52-226a special finding upon "clear evidence") (*citing Fattibene*).

A moving defendant may be granted a special finding under Section 52-226a "if *any* of the charges was pursued without probable cause." *O'Shea v. Dean*, No. CV 90-0305624, 1995 Conn.

Super. LEXIS 2959, *7 (Oct. 20, 1995) (emphasis in original) (comparing standard of scrutiny under Sections 52-226a and 52-568). On a request for a special finding, "the choice of remedy is determined by the exercise of a trial court's discretion." *Shea v. Chase Manhattan Bank*, No. CV 960149647, 2000 Conn. Super. LEXIS 1546, *9 (June 15, 2000).

In the context of a vexatious litigation claim, whether under the Connecticut vexatious litigation statute or common law, the claimant need not "prove that no competent and reasonable attorney familiar with the facts would have brought the underlying action, or, conversely, that all reasonable and competent attorneys would agree that the claim was totally without merit." *Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 102 (2007); *see also id.* at 103 (no requirement "to prove that 100 out of 100 attorneys would have agreed that the underlying claim was without merit").

## ARGUMENT

A special finding under General Statutes § 52-226a requires a timely request by "the prevailing party" and a showing that "the action was without merit" and that it was "not brought or asserted in good faith." *Id.* Olivas is the prevailing party, this request is timely, and both substantive elements are supported by sufficient evidence on the record, so the Court should enter a special finding that the action was without merit and not brought or asserted in good faith.

**I.     Olivas Is The Prevailing Party on Each of Plaintiff's Claims.**

**A.     Olivas Obtained a Favorable Termination of Plaintiff's Claims under Connecticut Law.**

The Court has fully terminated Plaintiff's claims in Olivas' favor. Under Section 52-226a, a prevailing party is one "'in whose favor a judgment is rendered, regardless of the amount of damages awarded ...'" *Preferred Elec., LLC v. Town of Suffield*, No. HHDCV096005497S, 2014 Conn. Super. LEXIS 1023, *21 (Apr. 23, 2014) (*quoting Wallerstein v. Stew Leonard's Diary*, 258 Conn. 299, 303, 780 A.2d 926 (2001)) (internal quotations omitted).

The Connecticut Supreme Court has "never required a plaintiff in a vexatious suit action to prove a favorable termination either by pointing to an adjudication on the merits in his favor or by showing affirmatively that the circumstances of the termination indicated his innocence or nonliability, so long as the proceeding has terminated without consideration." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 251, 597 A.2d 807 (1991). *See also Russo v. City of Hartford*, 184 F. Supp. 2d 169, 185-86 (D. Conn. 2002) ("so long as the prior action terminated without any

adjudication against, or settlement requiring consideration from, the vexatious-litigation plaintiff, the Connecticut Supreme Court deems the termination prong satisfied") (citing *DeLaurentis* with approval); *Roberts v. Babkiewicz*, 582 F.3d 418, 420-21 (2d Cir. 2009) ("Connecticut law adopts a liberal understanding of a favorable termination for the purposes of a malicious termination claim.") (citing *DeLaurentis* and *Russo* among others). "The requirement of termination may be satisfied by showing that the suit in question was abandoned or dismissed. A final determination on the merits is unnecessary and the mere discontinuance of a civil suit in any way satisfies the requirement." *D.A.N. Joint Venture II v. Tunxis Mgmt. Co.*, No. CV 97 0567959, 1998 Conn. Super. LEXIS 3619, *12 (Dec. 8, 1998) (internal citations omitted). Even the "voluntary dismissal" of a lawsuit in federal court is sufficient "favorable termination" to give rise to a vexatious litigation cause of action. *Id.*; *accord Olympia Sales, Inc. v. Robers Enters., Inc.*, No. CV054017724, 2006 Conn. Super. LEXIS 1353, *3-6 (May 2, 2006); *Ogrera v. Tarzia*, No. FSTCV116010464S, 2012 Conn. Super. LEXIS 437, *15-21 (Feb. 10, 2012).

Accordingly, Olivas has prevailed over Plaintiff for purposes of Connecticut state law.

**B.      Olivas Prevailed over Plaintiff's Claims under Federal Law.**

**1.      Under federal law, a "prevailing party" is one who receives relief from the court on the merits of a claim that materially alters the legal relationship between the parties.**

A prevailing party under federal law is one who obtains a favorable, judicially sanctioned, material alteration of the legal relationship of the parties. "A party who 'secure[s] a judgment on the merits or a court-ordered consent decree' is a 'prevailing party'; but a 'voluntary change in the [other party's] conduct' is not enough." *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 163 (2d Cir. 2014) (*quoting Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 600 (2001)). In this Circuit, "a prevailing party is one who has 'succeeded on any significant issue in [the] litigation, regardless of the magnitude of the relief obtained, if he received actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Macleod v. P&G Disability Benefit Plan*, 460 F. Supp. 2d 340, 350 (D. Conn. 2006) (*quoting LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998)). *Buckhannon* specifically requires that a prevailing party obtain this material alteration from a "judicially sanctioned change in the legal relationship of the parties." 532 U.S. at 605.

A dismissal with prejudice, whether voluntary under Rule 41(a)(2) or involuntary under Rule 41(b), confers prevailing party status under the Copyright Act. *See Ninox Television Ltd. v. Fox Entm't Group, Inc.*, No. 04 CIV. 7891, 2006 U.S. Dist. LEXIS 38868 (S.D.N.Y. June 13, 2006) (stipulated dismissal with prejudice); *Pearson Educ., Inc. v. Lin*, 08 Civ. 6152, 2013 U.S. Dist. LEXIS 182648 (S.D.N.Y. Dec. 27, 2013) (Rule 41(b) dismissal with prejudice requested by plaintiff); *Gardendance, Inc. v. Woodstock Copperworks, Ltd.*, No. 04-CV-00010, 2006 U.S. Dist. LEXIS 7713, *5 (M.D.N.C. Feb. 8, 2006) ("As this court ordered dismissal with prejudice as a sanction, the court changed the legal relationship between Defendant and Plaintiff because Plaintiff cannot bring these claims against Defendant again."); *Riviera Distributors v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) ("dismissal under Rule 41(a)(2), with prejudice, after a plaintiff gives up makes the defendant the prevailing party"); *Tavory v. NTP, Inc.*, 297 Fed. App'x 986, 989-90 (Fed. Cir. Oct. 28, 2008) (defendant prevails when dismissal by court materially alters relationship of the parties by precluding plaintiff from reasserting the same copyright claim).

> As explained by the Court of Appeals, to be a prevailing party after *Buckhannon*, "a plaintiff must not only achieve some material alteration of the legal relationship of the parties, but that change must also judicially sanctioned." *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir. 2003) (citation omitted). A judgment on the merits carries "sufficient judicial imprimatur" to create a prevailing party. *Id.* at 80. A dismissal of an action with prejudice "has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action." *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986).

*Ninox Television*, 2006 U.S. Dist. LEXIS 38868, *4.

**2.    Olivas prevailed over plaintiff by obtaining an adjudication on the merits.**

Olivas prevailed over Plaintiff's claims in all material respects. Olivas' prayer for relief requested that Plaintiff "take nothing by the Complaint and that same be dismissed with prejudice." Doc. 10 p. 18. Olivas has received that relief in full, and therefore prevailed.

Olivas obtained a dismissal order that operates as an adjudication on the merits. "Unless the dismissal order states otherwise, a dismissal under this subsection (b) and any dismissal not under this rule -- except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 -- operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). Even if the dismissal "did not entail a consideration of the substantive issues raised ... Rule 41(b) dictates that all but certain enumerated [involuntary] dismissals will be considered 'on the merits[.]'" *PRC Harris, Inc. v. Boeing, Inc.*, 700 F.2d 894, 896 (2d Cir. 1983). When a plaintiff's suit is dismissed with prejudice

under Rule 41(b) for failure to prosecute, "[a]lthough there has not been an adjudication on the merits in the sense of a weighing of facts, there remains the fact that a dismissal with prejudice is deemed an adjudication on the merits for the purposes of *res judicata*. As such, [defendant] has clearly prevailed in this litigation." *Anthony v. Marion County Gen. Hosp.*, 617 F.2d 1164, 1169-70 (5th Cir. 1980).

The Court's order of dismissal was grounded on Plaintiff's failure to prosecute, not on any of Rule 41(b)'s enumerated exceptions (jurisdiction, venue, and joinder). Such involuntary dismissal operates as an adjudication on the merits. A Rule 41(b) "dismissal is deemed with prejudice." *Storey v. O'Brien*, 482 Fed. App'x 647, 648 (2d Cir. 2012) (failure to prosecute). Because the Court did not state otherwise, the dismissal order was with prejudice under Rule 41, "barring the plaintiff from returning later, to the same court, on the same claim." *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001). *See also id.* ("'with prejudice' is an acceptable form of shorthand for 'an adjudication on the merits'") (quoting 9 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 2373, p. 396 n.4 (1981)). "Dismissals under Rule 41(b) operate as adjudications on the merits." *AF Holdings, LLC v. Trinh*, No. C 12-02393 CRB, 2013 U.S. Dist. LEXIS 25582, *5 (N.D. Cal. Feb. 25, 2013).

*Ipso facto*, Olivas is the prevailing party. "Because a dismissal pursuant to Rule 41(b) 'operates as an adjudication on the merits,' Fed. R. Civ. P. 41(b), [defendants] are prevailing parties." *Morris v. Kesselring*, 514 Fed. App'x 233, 236-37 (3d Cir. 2013).[3]

The Court's dismissal of Plaintiff's entire complaint changed the parties' relationship with the necessary judicial imprimatur. "All the claims arose from the same transaction or occurrence. Plaintiffs are barred by res judicata from relitigating any of them. Because Plaintiffs cannot refile, the judgment has materially altered the parties' legal relationship." *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 166 (2d Cir. 2014) (*citing Buckhannon*, 532 U.S. at 604).

The dismissal changed the parties' relationship for yet another reason. Plaintiff's claims accrued more than three years ago. *See* Compl. ¶ 23 (alleging "Plaintiff's investigators detected Defendant's illegal download on April 12, 2011"). Those claims are now barred not only by the

---

[3] *See also* 10 Moore's Federal Practice § 54.17[3][c][iv], at 54-280 to 54-281 (3d ed. 2002) ("[A] dismissal with prejudice is an adjudication on the merits that changes the legal relationship between the plaintiff and the defendant, extinguishing whatever claim the plaintiff might have had against the defendant. Accordingly, a dismissal with prejudice makes the defendant a prevailing party.") (footnotes and case citations omitted).

Court's order, but also by 17 U.S.C. § 507(b), the Copyright Act's statute of limitations. "Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work." *Petrella v. MGM*, 134 S.Ct. 1962, 1969 (2014) (*citing* 3 M. Nimmer & D. Nimmer, *Copyright* § 12.05[B][1][b], p. 12-150.4 (2013)). Because those claims are now time-barred, Olivas has prevailed under federal law. *See Smith v. Woosley*, 399 F.3d 428, 435 (2d Cir. 2005) ("Rule 41(b) means ... that a federal court's dismissal with prejudice of a time-barred claim means that the claim may not be refiled in the court that dismissed the claim.") (discussing *Semtek*, 531 U.S. at 506); *Kernel Records Oy v. Mosley*, No. 09-21597-CIV, 2013 U.S. Dist. LEXIS 99094, *9-10 (S.D. Fla. July 16, 2013) (copyright defendants prevailed because they "successfully and finally avoided [liability] due to [plaintiff's] failure to register and the applicable statute of limitations").

Plaintiff cannot resurrect its abandoned, dismissed claims against Olivas, or use them to support any more extortionate settlement demands. Accordingly, Olivas is the prevailing party.

## II.    Olivas' Request for a Special Finding Under Section 52-226a Is Timely.

Olivas' request for a special finding is timely because it is filed, "in a civil action tried to the court, not more than fourteen days after judgment has been rendered." Conn. Gen. Stat. § 52-226a. "Section 52-226a expressly contemplates that claims thereunder will be raised by post-verdict motion--hence, of course, at a time when the [action or] defense has already been rejected." *Fisher v. JLG Indus., Inc.*, No. (X02) CV 01 0165100 S, 2001 Conn. Super. LEXIS 2697, *4 (Sept. 18, 2001).

Plaintiff's civil case was tried to the Court, to the extent it was tried at all. The Court's pre-trial dismissal counts as "tried" for purposes of Section 52-226a. *See Loricco v. Pantani*, 67 Conn. App. 681, 687-88 (2002) (declining to review trial court's special finding under Section 52-226a against defendant whose counterclaim was dismissed after she failed to show up for jury selection). The Court ordered Plaintiff's complaint dismissed on September 23, 2014, and judgment against Plaintiff was rendered effective through an entry of judgment on February 13, 2015. Doc. 42, 45. This request is brought within fourteen days after judgment.

## III.    Plaintiff's Claims Against Olivas Were Entirely Without Color.

Plaintiff's claims lacked any merit and were wholly unreasonable, for at least *five* related but independent reasons. They were rooted in fraud and forgery. They failed to show Plaintiff had standing to sue. They alleged infringing acts for which the purported assignment did not convey a

right to sue. They alleged a form of conspiracy that is preempted by copyright law. And they alleged infringement against Olivas without any evidence that he was in any way involved.

"Whether a claim is colorable ... is a matter of whether a reasonable attorney could have concluded that facts supporting the claim *might be established*, not whether such facts *had been established*." *Fattibene v. Kealey*, 18 Conn. App. 344, 361, 558 A.2d 677 (1989) (emphasis in original) (discussing courts' inherent authority to order payment of attorney's fees); *accord Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980). Connecticut courts have adopted that *Fattibene* standard when deciding on a Section 52-226a motion. *See, e.g., Beverly v. State*, 44 Conn. App. 641, 648-49 (1997); *O'Shea v. Dean*, No. CV 90-0305624, 1995 Conn. Super. LEXIS 2959, *2-3 (Oct. 19, 1995); *Spellane v. Zelitch*, No. CV900296440, 1994 Conn. Super. LEXIS 1887, *3 (July 25, 1994) (discussing *Fattibene*'s "analogous ... context, which, like § 52-226a, involved sanctions for misuse of the courts"); *Acker v. Farrah*, No. CV 930704603S, 1998 Conn. Super. LEXIS 2166 (July 30, 1988). The "reasonable attorney" standard is an objective one. *Ostapowicz v. J.M. Equip. & Transp., Inc.*, No. HHDCV066000866S, 2010 Conn. Super. LEXIS 2513, *22 (Oct. 4, 2010). A remote possibility that the claim might be established does not make it colorable; a claim is frivolous if "a lawyer of ordinary competence would have recognized it as so lacking in merit that there was *no substantial possibility* that the court or a jury would accept it." *Id.* *24. A reasonable attorney could not have believed Plaintiff might prevail on the merits, because the allegations in the complaint gave Plaintiff no reasonable prospect of relief.

**A.**   **Plaintiff built its claims on a foundation of identity theft, forgery and fraud.**

**1.**   **Plaintiff's suit, based on a forged assignment document, was without merit.**

It was objectively unreasonable for Plaintiff to file suit on the basis of a forged assignment document. The assignment agreement filed in support of the complaint was signed "Alan Cooper" on behalf of Plaintiff. Doc. 1-2 p. 4. Olivas' counterclaims alleged that Plaintiff had falsely "identified Alan Cooper as its sole principal" but that "it appears that Plaintiff does not have standing to bring claims against the defendant" due to "fraud between Plaintiff and its counsel." Countercl. ¶¶ 12-15. Plaintiff flatly denied it: "this conspiracy theory is completely unfounded." Doc. 14 p. 3. Plaintiff's denial was hollow. As conclusively established in *Ingenuity 13*, Plaintiff's counsel Steele, Hansmeier, and Duffy "stole the identity of Alan Cooper" and "fraudulently signed the copyright assignment for 'Popular Demand' using Alan Cooper's signature without his authorization, holding him out to be an

10

officer of AF Holdings." Doc. 25-1 p. 5.[4] "Although a recipient of a copyright assignment need not sign the document, a forgery is still a forgery. And trying to pass that forged document by the Court smacks of fraud." *Id.* p. 8.

Basing its claims on a forged document, as Plaintiff did in this Court and many others, made its claim to standing fraudulent, frivolous, and objectively unreasonable. As the *Navasca* court held, in another of Plaintiff's cases,

> ... based on the evidence of record, there are serious questions as to whether AF has standing to sue for infringement because of the "Alan Cooper" issue. Notably, in spite of a declaration from an Alan Cooper suggesting that AF or persons or entities affiliated with AF have fraudulently used his identity, AF has made no effort to provide any evidence to counter the declaration. AF could have, but did not, present a declaration from its own Alan Cooper or a declaration from its manager and/or CEO. As the Court stated at the hearing, even if there was a sufficient transfer for purposes of the Copyright Act, which focuses on proper authorization by the copyright transferor, not the transferee, that is a separate issue from (1) whether AF has Article III standing in this Court to assert infringement based on claimed ownership of the copyright at issue and (2) whether AF is a real party in interest with capacity and authority to sue. *See* Fed. R. Civ. P. 17. The "Alan Cooper" issue raises serious questions that remain unanswered.

*AF Holdings LLC v. Navasca*, No. 3:12-cv-02396-EMC, 2013 U.S. Dist. LEXIS 15617, *4-5 (N.D. Cal. Feb. 5, 2013). The *Navasca* court required Plaintiff to post a $50,000 undertaking to proceed with the lawsuit but stayed the ruling to let Plaintiff seek reconsideration, advising that this would require Plaintiff to, "at the very least, provide evidence to establish its standing/capacity to assert a claim for copyright infringement." *Id.* at *11-12. Plaintiff claimed it would move the *Navasca* court to reconsider, but instead it moved to voluntarily dismiss. *Id.*, 2013 U.S. Dist. LEXIS 58250, *7 (N.D. Cal. Apr. 23, 2013). The *Navasca* court found Plaintiff was "seeking to dismiss the case in order to avoid an adverse determination on the merits," and was "likely to face an adverse determination on the merits because of its apparent inability to prove standing to assert its claim of copyright infringement." *Id.* *9-10. The *Navasca* court soon made such an adverse determination, ordering Plaintiff to pay Mr. Navasca's attorney's fees, specifically finding that "AF's case was frivolous and objectively unreasonable in that it never presented any evidence (although it had the

---

[4] Moreover, they had "formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy." *Id.* p. 4. This deception was designed to defraud the courts: "if [Steele, Hansmeier and Duffy had] assigned the copyright to themselves, brought suit in their own names, and disclosed that they had the sole financial interest in the suit, a court would scrutinize their conduct from the outset. But by being less than forthcoming, they defrauded the Court." *Id.* p. 8.

opportunity to do so) to support its claim that it has standing to assert a claim for copyright infringement." Doc. 31-2 p. 2.

Plaintiff's fraud rendered the claim itself "frivolous and objectively unreasonable" as the *Navasca* court held, and vexatious and facially improper, as the *Ingenuity 13* court determined:

> If it is true that Alan Cooper's identity was misappropriated and the underlying copyright assignments were improperly executed using his identity, then Plaintiff faces a few problems. First, with an invalid assignment, Plaintiff has no standing in these cases. Second, by bringing these cases, Plaintiff's conduct can be considered vexatious, as these cases were filed for a facially improper purpose.

Doc. 21-1 p. 9 (Order to Show Cause Re Sanctions for Rule 11 and Local Rule 83-3 Violations, *Ingenuity 13*, ECF No. 48 (C.D. Cal. Feb. 7, 2013)).

**2.      Plaintiff is precluded from denying that its case was without merit.**

Plaintiff could not have prevailed on a case based on its known forgery. Issue preclusion would apply to bar Plaintiff from relitigating the determination by the *Ingenuity 13* and *Navasca* courts that Plaintiff lacks standing to sue over a copyright supposedly conveyed in an assignment ostensibly signed by Alan Cooper.

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *accord New Eng. Health Care Employees Welfare Fund v. ICare Mgmt., LLC*, 886 F. Supp. 2d 82, 88 n. 8 (D. Conn. 2012) (*citing Taylor*, 553 U.S. at 891). "Issue preclusion ... bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (*quoting New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)). "Issue preclusion is based upon a policy that it is not fair to permit a party to relitigate an issue that has already been decided against it." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Federal law supports non-mutual defensive collateral estoppel, that is, "when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979). Trial courts have broad discretion to determine when collateral estoppel applies. *Id.* at 331. "Collateral estoppel effect has been given to prior determinations that a plaintiff is not a valid copyright owner and, thus, lacks standing to sue for infringement." *Poindexter v. Cash Money Records*, No. 13 Civ. 1155, 2014 U.S. Dist. LEXIS 26985, *8 (S.D.N.Y. Mar. 3, 2014) (citations omitted). *See, e.g., Perry v. Estates of*

*Byrd*, No. 1:13-cv-01555 (ALC), 2014 U.S. Dist. LEXIS 91272, *14-15 (S.D.N.Y. July 3, 2014); *Lefkowitz v. John Wiley & Sons, Inc.*, No. 13 Civ. 6414 (KPF), 2014 U.S. Dist. LEXIS 75650, *51 (S.D.N.Y. June 2, 2014); *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. C-12-4601, 2013 U.S. Dist. LEXIS 67887, *19-20 (N.D. Cal. May 13, 2013).

> The "fundamental notion" of the doctrine of collateral estoppel, or issue preclusion, "is that an *issue of law or fact* actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies." *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 718-19 (2d Cir. 1993). Accordingly, collateral estoppel applies when: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was "actually litigated and actually decided," (3) there was "a full and fair opportunity for litigation in the prior proceeding," and (4) the issues previously litigated were "necessary to support a valid and final judgment on the merits." *Gelb v. Gelb Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986).
>
> *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008).

Those four elements are present here, precluding Plaintiff from relitigating the issue, and preventing any possible finding that Plaintiff's claim had merit.

a.     **The same issue—that the Cooper forgery negates Plaintiff's standing—arose and was actually litigated and decided in both *Ingenuity 13* and *Navasca*.**

The same issue, that Plaintiff's claim to standing is negated by the Cooper forgery, arose in both *Ingenuity 13* and *Navasca*. This "Court recognizes that Alan Cooper's relationship with AF Holdings, LLC was previously litigated." Doc. 32 p. 10 n. 10 (taking judicial notice of the *Ingenuity 13* order issuing sanctions for fraud on the court). The Court further recognized that Plaintiff's counterclaims raised allegations (now taken as true, *see* Doc. 43 pp. 3-4) that "concern litigation previously brought by Plaintiff with identical claims which are offered to establish a pattern of litigation abuse." *Id.* p. 7. The recurrence of identical issues supports application of collateral estoppel. *See United Business Communications, Inc. v. Racal-Milgo, Inc.*, 591 F.Supp. 1172, 1183-84 (D. Kan. 1984) (applying collateral estoppel based on plaintiff's misconduct and fraud upon the court in other cases). Moreover, in both *Ingenuity 13* and *Navasca*, the issue was actually litigated and actually decided.

In *Ingenuity 13*, Cooper testified at a March 11, 2013 show-cause hearing that he had no role in Plaintiff or Ingenuity 13 LLC, their litigation, or the forged court filings in which he was held out as acting on their behalf. Reporter's Transcript of Proceedings, *Ingenuity 13*, 21:4-37:15 (Exhibit A hereto). Specifically, Cooper testified that the signature on the assignment for "Sexual Obsession"

that says "Alan Cooper" was not his. *Id.* 28:9-21 & 29:1-2. The same was true of the assignment for "Popular Demand." *Id.* 27:8-28:8. Cooper had never been asked "to become a corporate representative of AF Holdings LLC," *id.* 27:2-4, AF Films LLC, *id.* 28:22-25, or Ingenuity 13 LLC, *id.* 27:5-7. The *Ingenuity* court credited Cooper's testimony and concluded the signatures were falsified: "It is not [still] an open question. We have had the individual testify under oath. Those were not his signatures on the documents." *Id.* 95:2-12. *See* Doc. 25-1 p. 5.

In *Navasca*, on February 19, 2013, Plaintiff's counsel Hansmeier testified as Plaintiff's corporate Rule 30(b)(6) deponent, reporting that Plaintiff's counsel Steele claimed to have actually obtained Cooper's signature and assured that it was not a forgery. Hansmeier deposition transcript 120:23-131:3, *AF Holdings, LLC v. Navasca*, No. 3:12-cv-02396 (N.D. Cal. Feb. 19, 2013) (Exhibit B hereto). Specifically, he testified that Mark Lutz, who had worked for Steele as an employee of Steele Hansmeier PLLC, *id.* 130:12-131:3, was now "the sole manager/employee of AF Holdings," *id.* 127:3-13, and Lutz had "asked attorney John Steele to arrange for a corporate representative to acknowledge the assignment agreement on behalf of AF Holdings. Mr. Steele did so and returned the assignment agreement to AF Holdings bearing the signature of Mr. Alan Cooper." *Id.* 122:5-11. Once Cooper publicly denied his purported role in Plaintiff, *id.* 122:12-21, Plaintiff recognized that it would need to stop distributing agreements "bearing someone's signature if there was a forgery or some sort of fraudulent action involved." *Id.* 123:1-10. So Lutz asked Steele whether the signature was a forgery or authentic, and Steele said it was authentic. *Id.* 123:11-22. The *Navasca* court nonetheless found that Plaintiff had "failed to provide evidence to establish its standing/capacity to assert a claim for copyright infringement" based on the Cooper issue. *AF Holdings LLC v. Navasca*, No. 3:12-cv-02396-EMC, 2013 U.S. Dist. LEXIS 15617, *11-12 (N.D. Cal. Feb. 5, 2013). That finding ultimately led to the *Navasca* court's decision that "AF's case was frivolous and objectively unreasonable in that it never presented any evidence (although it had the opportunity to do so) to support its claim that it has standing to assert a claim for copyright infringement." Doc. 31-2 p. 2.

**b.     Plaintiff had a full and fair opportunity to litigate the issue in both *Ingenuity 13* and *Navasca*.**

Plaintiff had a fair and full opportunity to litigate the issue in both cases. *See* Doc. 40-9 pp. 10-11 (*Navasca* magistrate applying issue preclusion to *Ingenuity 13*; finding "AF ... had a full and fair opportunity to litigate these very issues in *Ingenuity 13*"); Doc. 40-10 p. 12 (*Navasca* court

affirming magistrate's finding, and noting "there is a basis to make the same findings in this case based on the evidence of record in this case").

Plaintiff was one of the plaintiffs in *Ingenuity 13*. Doc. 40-9 p. 10. The *Ingenuity 13* court consolidated two AF Holdings and three Ingenuity 13 cases for purposes of an order to show cause. *Ingenuity 13*, No. 12-cv-08333-ODW, ECF No. 57 (C.D. Cal. Feb. 27, 2013). Cooper's identity and the validity of the copyright assignments bearing an "Alan Cooper" signature filed by both Plaintiff and Ingenuity 13 were at the center of the issue of fraud on the court. Doc. 21-1 p. 9 & nn. 4-5. Plaintiff's counsel identified Lutz as CEO of both Plaintiff and Ingenuity 13. *Ingenuity 13*, ECF No. 58 (C.D. Cal. filed Mar. 1, 2013). The court ordered Lutz to appear at the show cause hearing on their behalf. *Id.*, ECF No. 66 (C.D. Cal. Mar. 5, 2013). Lutz's lawyer showed up without him. Ex. A 6:14-25 & 20:5-14.

Plaintiff was the sole named plaintiff in *Navasca.* The court pointedly gave Plaintiff an opportunity to "provide any evidence to counter the [Cooper] declaration" and "provide evidence to establish its standing." *AF Holdings LLC v. Navasca*, No. 3:12-cv-02396-EMC, 2013 U.S. Dist. LEXIS 15617, *4-5 & *11-12 (N.D. Cal. Feb. 5, 2013). Plaintiff failed to do so. *See* Doc. 31-2 p. 2. "In his motion for attorneys' fees, Navasca offered evidence that the 'Alan Cooper' assignment was forged. AF argued there was no forgery but declined to offer anything but 'sheer speculation' to support its position." Doc. 40-9 p. 4; Doc. 31-2 pp. 2-3.

**c.      The issue previously litigated was necessary to support valid and final judgments in both *Ingenuity 13* and *Navasca.***

The issue of Plaintiff's standing as it relates to Cooper and the forgery was necessary to the valid and final judgments on the merits in both *Ingenuity 13* and *Navasca*. "[C]ollateral estoppel does not require a judgment which ends the litigation … but includes many dispositions which, though not final in that sense, have nevertheless been fully litigated." *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 955 (2d Cir. 1964) (*citing Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961) (internal citation and quotation omitted). The "application of issue preclusion to questions actually litigated and decided in post-judgment proceedings is as appropriate as in any other setting." *Scripps Clinic & Research Foundation v. Baxter Travenol Labs., Inc.*, 729 F. 3d 1473, 1476 n.6 (D. Del. 1990) (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4447, at 406-07 (1981)).

The facts of the misappropriation of Cooper's identity were essential to the *Ingenuity 13* sanctions order. Those facts served as an animating cause of the show-cause proceedings, inspiring the court's vigilance. "It was when the Court realized Plaintiffs engaged their cloak of shell companies and fraud that the Court went to battlestations." Doc. 25-1 p. 2. The issue also inspired the form of sanctions entered: "Sanctions under the Court's inherent authority are particularly appropriate for fraud perpetrated on the court." *Id.* p. 3. The most significant of the "specific instances of fraud" cited in the sanctions order were "the Alan Cooper forgery ... and trying to pass that forged document by the Court." *Id.* p. 8.[5] Those were also the only instances of fraud specifically mentioned in the court's findings of fact. *Id.* p. 5. When the *Navasca* court determined that issue preclusion applies to *Ingenuity 13*'s findings of fact, Plaintiff did not contest that the *Ingenuity 13* order "was a final judgment on the merits."[6] Doc. 40-9 p. 12.

The *Navasca* court's decision to make Plaintiff's voluntary dismissal "with prejudice" was rooted in Plaintiff's failure to provide evidence rebutting Cooper's declaration. *Id.*, 2013 U.S. Dist. LEXIS 58250, *9-10 (N.D. Cal. Apr. 23, 2013). "A voluntary dismissal with prejudice is an adjudication on the merits for purposes of *res judicata*." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995) (*citing Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986)).[7] It was also necessary to the *Navasca* court's valid and final judgment awarding attorney's fees to Mr.

---

[5] The other fraudulent acts cited were Plaintiff "purposely ignor[ing]" an order to stay discovery and its counsel's misrepresentations about the reasonableness of its pre-filing investigations. *Id.* p. 8; *see id.* p. 6 ("the court is not as troubled by their lack of reasonable investigation as by their cover-up").

[6] Plaintiff also conceded the finality of the *Ingenuity 13* order for purposes of 28 U.S.C. § 1291 by joining its appeal. *See* Opening Brief for Appellants at 2, *Ingenuity 13, LLC v. John Doe*, No. 13-55859 et al. (9th Cir. filed Nov. 18, 2013) (calling the order a final order). The *Ingenuity 13* order was sufficiently final for such purposes because it entered sanctions for fraud on the court after the case in chief was dismissed without prejudice. *See De Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 583-84 (7th Cir. 2008). A "final judgment by a district court has preclusive effect even though the judgment is pending on appeal." *Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 160 (7th Cir. 1995). "[C]ollateral estoppel appl[ies] even in the face of a claim that the prior judgment was erroneous as long as that judgment stands." *Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 327 (S.D.N.Y. 2003). *See also* Restatement (Second) of Judgments § 13(g) (1982) ("[T]he wisest course ... is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting a final judgment.").

[7] Though Plaintiff voluntarily dismissed its claims in *Ingenuity 13* and *Navasca*, it did so only after actively participating in adversarial litigation, warranting application of collateral estoppel. *See In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) (affirming application of collateral estoppel to post-answer default judgment; "That after many months of discovery Gottheiner decided his case was no longer worth the effort does not alter the fact that he had his day in court."); *accord In re Gober*, 100 F.3d 1195, 1205-06 (5th Cir. 1996).

Navasca. The court found that the four *Fogerty* factors each strongly supported the award: Plaintiff's frivolousness, objective unreasonableness, and motivation in bringing suit "given its apparent lack of standing," and the need to deter "a business model that is not intended to protect copyrighted work." Doc. 31-2 at 2-5 (*citing Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994)). Only the Cooper/ standing issue pertained to each factor. *Id.*

The standing issue is preclusive and dispositive of any merit in this case. Indeed, the *Navasca* court has already dispelled any suggestion that Plaintiff's claims had any merit. In opposing the motion for attorney's fees (that it ultimately lost), Plaintiff argued that it had "brought meritorious claims against [Mr. Navasca]." Doc. 31-2 p. 5. "For the reasons discussed above, that argument is without merit." *Id.* In other words, not only were Plaintiff's claims without merit; *so was its argument that its claims had some merit*.

**B.    Plaintiff failed to prove that the copyright had been properly assigned.**

A copyright registration is *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. 17 U.S.C. § 410(c). But by itself, "a certificate of registration creates no irrebuttable presumption of copyright validity." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980). Moreover, Plaintiff was not the original author named in the certificate, and "'the assignee of a previously registered statutory copyright has the burden of proving his chain of title since nothing in the registration certificate evidences his right to claim through the original copyright claimant.'" *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.*, No. 87 Civ. 5775, 1989 U.S. Dist. LEXIS 11588, *15 (S.D.N.Y. Oct. 5, 1989) (*quoting* 3 *Nimmer on Copyright* § 12.11[C] at 12–81–12–82 (1989 ed.)); *accord Int'l Media Films, Inc. v. Lucas Entm't, Inc.*, 703 F. Supp. 2d 456, 463 (S.D.N.Y. 2010); *Broad. Music, Inc. v. Rockingham Venture, Inc*., 909 F. Supp. 38, 43 (D.N.H. 1995) ("[W]here the plaintiffs are assignees of previously registered copyrights, the court requires additional evidence beyond the registration statements to find that the plaintiffs are the proprietors.").

The purported assignment was not to Plaintiff but to non-party AF Films, LLC. Doc. 1-2 p. 4; Countercl. ¶¶ 10, 39; Doc. 32 p.2. That rebutted Plaintiff's claim to proprietorship, and Plaintiff failed to introduce additional evidence that it had standing to sue. Plaintiff asserted that "[t]he references to the company 'AF Films, LLC' instead of 'AF Holdings, LLC' is simply the result of a scrivener's error." Doc. 15 p. 4. Plaintiff never submitted an amended assignment, acknowledgment, or affidavit attesting to the error or rectifying it.

17

Instead, to bolster its claims, Plaintiff filed the forgery with the Copyright Office for recordation, seeking to generate a public record in the Copyright Office that AF Films is an "a/k/a" for Plaintiff. Exhibit C hereto. *See also AF Holdings, LLC v. Doe(s)*, Civ. Nos. 12-1445 et al., 2013 U.S. Dist. LEXIS 187458, *10 n. 16 (D. Minn. Nov. 6, 2013) ("Steele testified that he registered the assignments with the copyright office in 2011."), *vacated on other grounds*, 2014 U.S. Dist. LEXIS 43318 (D. Minn. Mar. 27, 2014). But unsurprisingly, it is Copyright Office policy to not record forged assignment documents.

> To be recordable, the document *must bear the actual signature* or signatures of the person or persons who executed it. Alternatively, the document may be recorded if it is a legible photocopy or other full-size facsimile reproduction of the signed document, accompanied by a sworn certification or an official certification that the reproduction is a true copy of the signed document. Any sworn certification accompanying a reproduction *must be signed by at least one of the persons who executed the document*, or by an authorized representative of that person.

U.S. Copyright Office, Compendium II: Copyright Office Practices, Second Edition § 1606.03[8] (citing 17 U.S.C. § 205 and 37 C.F.R. § 201.4(c)(1)). *See also id.* § 1606.07 ("As a rule, the signature should be the actual handwritten signature of an individual person..."); 17 U.S.C. § 205 (a copyright assignment "may be recorded in the Copyright Office if the document filed for recordation bears the actual signature of the person who executed it, or if it is accompanied by a sworn or official certification that it is a true copy of the original, signed document.").

Neither condition of recordation was satisfied by the forged copyright assignment, so it was not properly recordable. The assignment does not bear "the actual ... *signatures* of the ... persons who executed it," *see* Compendium II § 1603, since one of its signatures is a *forgery* of Plaintiff's purported principal Alan Cooper's signature; the document was also not accompanied by a sworn certification from Cooper or any of his authorized representatives. *See* Doc. 25-1 p. 5 ("Alan Cooper is not an officer of AF Holdings and has no affiliation with [AF Holdings LLC, Ingenuity 13 LLC, and related entities, individuals and attorneys] other than his employment as a groundskeeper for Steele."). Plaintiff and its counsel apparently obtained recordation of its unrecordable assignment to help substantiate its claimed right to sue Olivas and others, but in so doing Plaintiff only generated a

---

[8]  The third edition of the Compendium of Copyright Office Practices, published by the Copyright Office in December 2014, available at http://copyright.gov/comp3/docs/compendium.pdf, is to the same effect. *See id.* at §§ 2309.7, 2309.10(A), 2309.10(E). The Second Circuit has relied on prior editions of the Compendium to determine the Copyright Office's interpretation of the Copyright Act. *See, e.g., Shoptalk, Ltd. v. Concorde-New Horizons Corp.*, 168 F.3d 586, 592 (2d Cir. 1999).

longer paper trail of its fraud. "[T]he Copyright Office recorded the purported instrument of transfer," but "[t]here was a keen incentive literally to paper over the gaps in the factual record with a certification that made no mention of those gaps." *Kenbrooke Fabrics, Inc.*, 1989 U.S. Dist. LEXIS 11588, *18. Plaintiff's "'failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the … [transfer of copyright] invalid and thus incapable of supporting an infringement action … or denying enforcement on the ground of unclean hands.'" *Id.* *19 (*quoting Russ Berrie & Co., Inc.v. Jerry Eisner Co., Inc.*, 482 F. Supp. 980, 988 (S.D.N.Y. 1980) (alterations in original)). Plaintiff's "failure to turn square corners with the Copyright Office renders the transfer, if it did occur, unenforceable." *Id. See DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616 (7th Cir. 2013) (affirming attorney's fees award to defendant where plaintiff deliberately lied to Copyright Office). Without a valid copyright assignment, Plaintiff's infringement claims against Olivas were inherently without merit.

**C.      Plaintiff's claims relied on an assignment that conveyed no rights over Olivas.**

The lawsuit would have been objectively unreasonable even if the assignment had been properly signed and assigned, because the assignment gave Plaintiff no grounds for relief from Olivas. The complaint alleged that Olivas' infringing acts commenced on or before April 12, 2011, a full two months before June 12, 2011, when Plaintiff alleged it gained rights under the assignment. Compl. ¶¶ 23, 19; *see also* Doc. 1-2 (assignment listing June 12, 2011 effective date). Even if it were valid, the assignment did not expressly convey to Plaintiff any right to pursue any claims that accrued before the assignment, so Plaintiff had no standing to pursue its claims against Olivas.

Plaintiff did not own the copyright at the time the infringement claim accrued. "A [copyright] cause of action accrues when a plaintiff knows or has a reason to know of the injury upon which the claim is premised." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (*citing Stone v. Williams*, 970 F. 2d 1043, 1048 (2d Cir. 1992)), *cert. denied*, 519 U.S. 1108 (1997). "[C]opyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014); *accord Roley v. New World Pictures, Ltd.*, 19 F. 3d 479, 481 (9th Cir. 1994) ("A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge."). *See Petrella v. MGM*, 134 S. Ct. 1962, 1969 n. 4 (2014) (noting without deciding that nine Courts of Appeals have adopted this discovery rule). Plaintiff's claims against Olivas had accrued by at least April 12, 2011, when

"Plaintiff's investigators detected" the alleged infringement. Compl. ¶ 23. That preceded Plaintiff's claimed ownership interest in the copyright, which was then held by Heartbreaker Films. *See id.* ¶ 19; Doc. 1-1.

Only a copyright owner could pursue the accrued claim. "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of [17 U.S.C. §] 411, to institute an action for any infringement of that particular right committed *while he or she is the owner of it.*" 17 U.S.C. § 501(b) (emphasis added). "[T]he Copyright Law is quite specific in stating that only the 'owner of an exclusive right under a copyright' may bring suit." *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 n.3 (2d Cir. 1982) (*quoting* 17 U.S.C. § 501(b)). "The right to prosecute an accrued cause of action for infringement is ... an incident of copyright ownership." *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007).

"An owner may ... convey his interest in prosecuting accrued causes of action." *Id.* But any such conveyance of an accrued cause of copyright action must be express.

> [A] copyright owner can assign its copyright but, *if the accrued causes of action are not expressly included in the assignment*, the assignee will not be able to prosecute them. ... Rather, *the assignee is only entitled to bring actions for infringements that were committed while it was the copyright owner* and the assignor retains the right to bring actions accruing during its ownership of the right, even if the actions are brought subsequent to the assignment.

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) (citations omitted) (emphasis added).

The assignment agreement purported to assign:

> all right, title and interest worldwide in and to that certain work titled "Sexual Obsession" and associated with copyright registration number PA0001725120 (collectively "the Work") and all proprietary rights therein, including, without limitation, all copyrights, trademarks, design patents, trade secret rights, moral rights, and all contract and licensing rights, and all claims and causes of action of respect to any of the foregoing, whether now known or hereafter to become known.

Doc. 1-2. The agreement expressly purported to assign the copyright, but did not expressly assign along with the copyright any "accrued causes of action" for infringement. No accrued claims were specifically included; indeed, the agreement does not mention the words "accrued" or "infringement." *See id. Cf. ABKCO*, 944 F. 2d at 975, 980 (plaintiff specifically purchased right to sue over infringing compositions and was substituted as plaintiff in ongoing litigation over accrued

copyright claim). As a result, the assignment (if it were valid) did not convey a retrospective right to sue on accrued claims.

By its terms, the assignment agreement is governed by Ninth Circuit and California law. Doc. 1-2 ¶ 5. The Ninth Circuit has followed the Second Circuit's holding in *ABKCO* that, under the 1976 Copyright Act, an assignee has standing to sue over pre-assignment infringements only when "the same entity purchased *both* the copyright *and* accrued claims ... The [*ABKCO*] court reaffirmed the principle of *Eden Toys* that a party that has no ownership interest has no standing to sue." *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 890 (9th Cir. 2007) (emphasis in original) (*citing with approval ABKCO*). Plaintiff had not even acquired its fraudulent ownership interest until two months after the alleged infringement, which it had no standing to redress. *See id.* at 890 n. 1 ("This holding [in *ABKCO*] makes perfect sense ... When one acquires a copyright that has been infringed, one is acquiring a copyright whose value has been impaired. Consequently, to receive maximum value for the impaired copyright, one must also convey the right to recover the value of the impairment by instituting a copyright action.").[9]

The agreement purported to assign "claims and causes of action [related to "Sexual Obsession" and its copyright] ... whether now known or hereafter to become known[.]" Doc. 1-2. That wording leaves the question open: known to whom? If the knowledge requirement could be satisfied by either party, then Plaintiff's prior knowledge about the claim it ultimately brought in this case would have been sufficient on the agreement's June 12, 2011 effective date. But the more natural construction would require the assignor's knowledge as well. Requiring both parties' knowledge would comport with the common definition of "known" as "familiar to all," "generally understood or perceived," or "generally or widely known or recognized."

> Black's Law Dictionary defines "known" as "Familiar; perceived; recognized; understood; especially, when used absolutely, familiar to all; generally understood or perceived. Term may, according to context, refer to both actual and constructive knowledge." Black's Law Dictionary 873 (6th ed. 1990); *see also* Oxford English Dictionary (3d ed. 2010) (Known: "That has become an object of knowledge; that is or has been apprehended mentally; learned; familiar; esp. generally or widely known or recognized, familiar to all, renowned.").

---

[9] The *Silvers* court's ultimate holding was that "an assignee who holds an accrued claim for copyright infringement, but who has no legal or beneficial interest in the copyright itself, [may not] institute an action for infringement[.]" 402 F.3d at 883. The converse, on the facts pertinent in this case, is necessarily true: an assignee who holds an interest in the copyright but not in any accrued claims may not sue for infringement of the accrued claims; only the assignor may.

*Elbit Sys. v. Credit Suisse Group*, 842 F. Supp. 2d 733, 743 (S.D.N.Y. 2012); *see id.* at 742 ("In the absence of ambiguity, the Court will employ the common meaning of 'known.'").

This broader understanding of known as "generally understood" fits both the specific phrasing in the assignment and the legal principle that an assignor is not understood to have assigned accrued claims unless the assignment is knowing and express. For purposes of accrual of copyright claims, the pertinent inquiry is the knowledge of the copyright holder—the party with standing to raise the claims pursuant to 17 U.S.C. § 501(b). *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014) ("an infringement claim does not 'accrue' until the copyright holder discovers, or with due diligence should have discovered, the infringement" (calling this "the so-called 'discovery rule'"); *accord Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994). So any valid conveyance of previously known claims requires knowledge of the claims by the assignor.

Nothing in the record suggests that the assignor *ever* knew or should have discovered any claim related to Olivas before June 12, 2011. Plaintiff's investigators determined who they thought was infringing "Sexual Obsession," but the record does not show that Heartbreaker was aware of the results of the investigation, or conducted its own investigation into potential infringements, before signing the assignment. The agreement does not specify any accrued claims to be assigned. Because there is no evidence that assignor knew of any already-accrued claims subject to the assignment, it was not then conveying any past claims, as far as it knew. Nor does anything in the record suggest that the assignor should later have known of any such claims. Since June 12, 2011, when it purportedly assigned "all right, title and interest" in the copyright, it would have had no incentive to investigate. Accordingly, there is no basis for finding that the assignment in fact assigned any right to sue Olivas.

The alternative interpretation, that only the assignee's knowledge is needed, seems particularly inapplicable to an agreement that the assignee never properly signed. But even if that interpretation were also plausible, the same result would obtain. "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations." *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008); *accord Remillard v. Remillard*, 297 Conn. 345, 355 (2010) ("whether ... a term is ambiguous turns on whether it has varying definitions in common parlance" (*citing Honoluk v. Greenwich*, 293 Conn. 698, 710, 980 A. 2d 880 (2009))). If the agreement's terms are essentially ambiguous about whether it was supposed to

convey already accrued claims along with the copyright itself, it necessarily falls short of *ABKCO*'s "expressly included" requirement.

The requirement that past accrued claims are only conveyed by an assignment if expressly included is consistent with basic principles of contract law. "'A term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument.'" *Eastern Bus Lines, Inc. v. Board of Education*, 7 Conn. App. 581, 587 (1986) (*quoting Texaco, Inc. v. Rogow*, 150 Conn. 401, 408, 190 A.2d 48 (1963)). "California law   precludes" any implication of terms into an agreement that contains an integration clause, that is, "'an express statement that all prior discussions are superseded by (or 'merged' into) the written agreement.'" *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1148 (9th Cir. 2004) (*quoting* California Practice Guide: Civil Trials and Evidence § 8:3087 (2003)). The assignment agreement's "Entire Agreement" clause expressly "supersedes an[y] prior or contemporaneous agreements, written or oral." Doc. 1-2 ¶ 3. The agreement does not expressly or implicitly convey past claims that were unknown to the assignor at the time of assignment.

The assignors should not be understood to have given Plaintiff all pre-assignment causes of action, without expressly stating so in the assignment as required under *ABKCO* and *Silvers*, so Plaintiff did not acquire any accrued causes of action. Plaintiff claimed that its investigators had already detected the infringement alleged in this action; but from Heartbreaker's perspective, the cause of action had not yet accrued, and would not unless and until it became chargeable with knowledge of the specific infringement alleged. Plaintiff was not expressly assigned the accrued causes of action; and to the extent it may have been assigned any not-yet-accrued claims (which, at the time of the assignment, were "hereafter to become known" to Heartbreaker), the assignment did not *expressly* include *accrued* claims about Olivas. So under Second and Ninth Circuit law, it did not include those claims at all.

The complaint compounded this flaw. It did allege that "Plaintiff received the rights to this Video pursuant to an assignment agreement." Compl. ¶ 19. But it failed to specifically allege "that it was the former copyright owner whose copyright had been infringed, or that the former copyright owner had assigned to [Plaintiff] the right to prosecute [accrued] claims for infringement." *Hart v. World Wrestling Entm't, Inc.*, No. 3:10cv0975, 2012 U.S. Dist. LEXIS 43184, *31 (D. Conn. Mar. 28, 2012). "Without that allegation, [Plaintiff] cannot bring claims based on a violation of rights of the

original owner." *Id.* (dismissing copyright claim); *cf. Two Pepper Music v. Rhino Records, Inc.*, No. 98-9242, 173 F.3d 846, 1999 U.S. App. LEXIS 8222, *3 (2d Cir. Apr. 23, 1999) (express assignment of "all existing or potential causes of action and claims including, without limitation, those for infringement" effectively conveyed right to prosecute accrued claims).

Even if Plaintiff had duly alleged that the assignment gave it the right to sue over accrued claims, its unproven allegations would be trumped by Olivas' unanswered counterclaims, which specifically alleged that Plaintiff did not have that right.

> 42. An assignor can transfer the ownership interest in an accrued past copyright infringement, but the assignee only has standing to sue if the interest in the past infringement is *expressly* included in the assignment and the assignee also owns the actual copyrights.
>
> 43. Defendant's alleged infringement (dated April 12, 2011) occurred prior to Plaintiff's assignment (dated June 12, 2011).
>
> 44. Plaintiff's copyright makes no express provision assigning claims for past infringements.

Countercl. ¶¶ 42-44. *See id.* ¶ 33(d) ("Plaintiff's ... copyright infringement ... claim is categorically prohibited by the terms of Plaintiff's copyright assignment"). *Accord* Doc. 10 p. 9 (twenty-third affirmative defense). Those "uncontroverted allegations of the Complaint ... are deemed admitted pursuant to Federal Rule of Civil Procedure 8(b)(6) by virtue of Defendant's failure to respond." *Loop Prod. v. Capital Connections LLC*, 797 F. Supp. 2d 338, 348 (S.D.N.Y. 2011); *accord Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 417 n.4 (S.D.N.Y. 2010), *aff'd*, 694 F.3d 208 (2d Cir. 2012). Therefore Olivas is not required to come forward with additional evidence on that issue. *See Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 684 (S.D.N.Y. 2011); *cf.* Doc. 43 pp. 3-4 (*citing Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

A special finding under Section 52-226a is supported where a party maintains a claim founded on "false information about the ownership [of the subject matter of the suit] ... despite knowledge that [claimants] had failed to perfect in a timely fashion their rights." *Tzvolos v. Wiseman*, No. CV 04 0488839,  2007 Conn. Super. LEXIS 2768, *1-2 (Oct. 19, 2007), *aff'd*, 300 Conn. 247 (Conn. 2011). Plaintiff's knowingly faulty claims warrant such a special finding.

**D.      Plaintiff's civil conspiracy claim did not plead a colorable cause of action.**

"[U]nder Connecticut law, civil conspiracy is not an independent cause of action. ... 'to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort.'"

*Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 113 (D. Conn. 2010) (*quoting Macomber v. Travelers Prop. & Cas. Corp.*, 277 Conn. 617, 636, 894 A.2d 240 (2006)). The only substantive tort Plaintiff alleged was infringement. Plaintiff's claim of a conspiracy to infringe copyright necessarily rested on the forged assignment, and was facially unreasonable for reasons discussed above.

The conspiracy claim was also expressly preempted by the Copyright Act, 17 U.S.C. § 301, as Olivas pleaded. *See* Doc. 10 p. 7 (tenth affirmative defense).

> The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106.

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). Plaintiff's state-law conspiracy claim was completely preempted. *See id.* The particular work at issue, "Sexual Obsession," was under copyright as Plaintiff alleged. In pleading conspiracy, Plaintiff alleged only that the movie had been "reproduced and distributed" by Olivas and others; those are rights specifically protected by copyright law under 17 U.S.C. § 106(1) and (3). "[T]he core of the claim for conspiracy to infringe copyrights is identical to that under the Copyright Act, and the extra element of agreement or combination does not make it otherwise." *Tire Eng'g & Distrib., LLC v. Shangdong Linglong Rubber Co.*, 682 F.3d 292, 312 (4th Cir. 2012). The civil conspiracy claim was preempted "because the nature of the misconduct that conspiracy law seeks to redress is not qualitatively different from the underlying claim." *Gary Friedrich Enters., LLC v. Marvel Enters.*, 713 F. Supp. 2d 215, 229 (S.D.N.Y. 2009) (internal quotation omitted), *adopted*, 713 F. Supp. 2d 215 (S.D.N.Y. 2010), *vacated in part on other grounds*, 716 F.3d 302 (2d Cir. 2013).

Claims of a conspiracy to infringe copyright with other BitTorrent users are routinely denied for failure to state an independent claim. *See, for example, Purzel Video GmbH v. Does 1-84*, No. 13 C 2501, 2013 U.S. Dist. LEXIS 116788, *18 (N.D. Ill. Aug. 16, 2013) ("Because a state-law civil conspiracy claim for copyright infringement is not qualitatively different from a federal copyright infringement claim, it is preempted by the Copyright Act.") (collecting cases); *Purzel Video GmbH v. Does 1-108*, No. 13 C 0792, 2013 U.S. Dist. LEXIS 179378, *20 (N.D. Ill. Dec. 19, 2013) (same).

Plaintiff's counsel have been frequently rebuffed when tacking the preempted conspiracy claim onto a copyright complaint. *See Millennium TGA, Inc. v. Comcast Cable Commc'ns, LLC*, 286

F.R.D. 8, 14 (D.D.C. 2012) ("a state law civil conspiracy claim is preempted by the federal Copyright Act") (collecting cases) (Plaintiff's counsel Steele and Duffy for plaintiff); *Pac. Century Int'l, Ltd. v. John Does 1-37*, 282 F.R.D. 189, 195 (N.D. Ill. 2012) ("the complaints' allegations of civil conspiracy are only unjustified attempts to bolster the obtaining of irrelevant discovery about non-parties") (Plaintiff's counsel Steele and Duffy for plaintiff); *Guava, LLC v. Does 1-5*, No. 12-cv-8000, 2013 U.S. Dist. LEXIS 90346, *3-4 (N.D. Ill. June 27, 2013) (discussing prior litigation in which "the presiding judge ... expressed doubts as to the legal sufficiency of Guava's claims, specifically with respect to the claim of civil conspiracy") (Plaintiff's counsel Duffy/Prenda Law for plaintiff); *Millennium TGA, Inc. v. Does 1-21*, No. 11-2258 SC, 2011 U.S. Dist. LEXIS 53465, *5-6 (N.D. Cal. May 12, 2011) (Plaintiff's former counsel Brett Gibbs for plaintiff). It was objectively unreasonable for Plaintiff to plead the claim and expect a different result here. *See generally Baker v. Urban Outfitters*, 431 F. Supp. 2d 351 (S.D.N.Y. 2006) (unreasonable and vexatious to plead misappropriation claim precluded by Copyright Act), *aff'd*, 249 Fed. App'x 845 (2d Cir. 2007)).

A special finding under Section 52-226a is proper "if *any* of the charges was pursued without probable cause." *O'Shea v. Dean*, No. CV 90-0305624, 1995 Conn. Super. LEXIS 2959, *7 (Oct. 20, 1995). That finding is proper here, because no reasonable attorney would have brought or pursued either the unfounded copyright claims or the preempted conspiracy claim.

**E.     Plaintiff's claims against Olivas, without supporting evidence, were without merit.**

Plaintiff's claims were not just invalid as a matter of law. They were also based on insufficient facts to support suing Olivas. Where "the plaintiff brought the action without knowledge of any facts which, if proven, would have created liability in the defendant," the claim is without merit. *Holden v. McIntosh*, 1994 Conn. Super. LEXIS 2815, *6 (Oct. 31, 1994).

In *Holden*, the plaintiff sued after tripping over a driveway apron that abutted defendants' land. *Id*. *1. The *Holden* court entered a directed verdict for the defendants, and found the case without merit on their motion for a special finding under Section 52-226a. *Id. *6.

> *Notwithstanding the allegation in the Complaint* that the defendant landowners had created the sidewalk apron, the only evidence introduced at trial was that the City of Hartford had constructed the apron and had later removed it. There was no evidence presented that the landowners had done anything to create, change or maintain the apron. Moreover, *it appeared that the plaintiff never had any such evidence, even when she filed the complaint* which alleged that the landowners had created the apron.

*Id.* *2-3 (emphasis added). Alleging that a party has been harmed without evidence that the other party caused the harm is "totally without merit" for purposes of Section 52-226a. *Acker v. Farrah*, No. CV 930704603S, 1998 Conn. Super. LEXIS 2166, *2-3 (July 30, 1988) (finding defense was without merit and not brought or asserted in good faith; "There was not one scintilla of evidence" for defendants' special defenses and counterclaims); *Heinonen v. McCarthy*, No. CV 11 5009005 S, 2012 Conn. Super. LEXIS 2145, *14 (Aug. 21, 2012) (determining action was brought without merit; "The court has not seen any evidence, or even a reference to possible evidentiary support for this assumption" by plaintiff that defendants were liable).

The closest Plaintiff came to presenting evidence identifying an infringer was to allege that, in "a snapshot observation," its investigators detected the IP address 174.62.189.44 in a BitTorrent swarm where "Sexual Obsession" could be shared. Compl. ¶¶ 3, 22-24. But "[d]ue to the risk of 'false positives,' an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual is guilty of infringement." *AF Holdings LLC v. Rogers*, No. 12-cv-1519, 2013 U.S. Dist. LEXIS 11929, *6 (S.D. Cal. Jan. 29, 2013). Notwithstanding the allegation in the complaint, Plaintiff never had, or suggested that it had, any evidence that Olivas was personally responsible for, involved with, or aware of, any of the acts alleged. Olivas counterclaimed for a declaratory judgment of non-infringement. Countercl. ¶¶ 16-22. As Olivas alleged, "Defendant has not infringed Plaintiff's alleged copyright in 'Sexual Obsession.' Plaintiff cannot knowingly claim otherwise." *Id.* ¶ 18. "Plaintiff's allegation that a given IP address was used for infringing acts is not sufficient to support a claim of infringement against the Defendant." *Id.* ¶ 21. *See id.* ¶ 33(e) ("Plaintiff knows it has no basis for naming the Defendant as the infringer, yet continues to assert the claims against him."); ¶¶ 51, 53-55.

Those facts alleged in Olivas' counterclaims, which must be taken as true based on Plaintiff's default, are dispositive, requiring a finding that Plaintiff's claims were without merit. Even before its default, Plaintiff could find no way to take issue with those factual allegations. Olivas' counterclaim for a declaratory judgment was grounded in his actual innocence and Plaintiff's inability to properly identify alleged infringers. Countercl. ¶¶ 18-21. Plaintiff's motion to dismiss skirted those issues entirely. Its entire argument against declaratory judgment was based on its contention that it had "established a prima facie case for copyright infringement." Doc. 15 p. 2. That was false as a matter of law: "A prima facie case of copyright infringement consists of proof that the plaintiff owns a valid

copyright *and the defendant has engaged in unauthorized copying.*" *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985) (emphasis added). Plaintiff failed to establish the first element of its case, ownership, *see* Section III.B. *supra*, and tellingly, Plaintiff did not even address (much less establish) the second element: that Olivas infringed. Plaintiff's claims against Olivas had no basis and no merit.

## IV.    Plaintiff's Action Was Not Brought Or Asserted In Good Faith.

Plaintiff's action was not brought or asserted in good faith under Connecticut law.

"No appellate court has ruled on what constitutes 'not brought or asserted in good faith'" under Section 52-226a. *Shea v. Chase Manhattan Bank*, No. CV 96 0149647, 2000 Conn. Super. LEXIS 1546, *10-11 (June 15, 2000). "'However, in common usage, it (good faith) has a well defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and generally speaking means being faithful to one's duty or obligation." *Id.* at *11 (internal quotations and citations omitted). The Connecticut Supreme Court has adopted that definition of "good faith" in the analogous context of a malicious prosecution claim. *Bhatia v. Debek*, 287 Conn. 397, 412 (2008) (*citing Kendzierski v. Goodson*, 21 Conn. App. 424, 574 A. 2d 249 (1990)).

"The term 'good faith' is a term which is used by the courts in many different contexts and situations. In each of those, the precise definition given to the term may vary as well as under the particular facts and circumstances of this case." *Heinonen v. McCarthy*, No. CV 11 5009005 S, 2012 Conn. Super. LEXIS 2145, *14 (Aug. 21, 2012) (interpreting "good faith" in context of request for special finding under § 52-226a).

"In a vexatious suit action, the defendant is said to have acted with 'malice' if he acted primarily for an improper purpose; that is, 'for a purpose other than that of securing the proper adjudication of the claim on which [the proceedings] are based'; 3 Restatement (Second), Torts § 676; such as the desire to 'occasion expense' to the other party." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 256 n. 16, 597 A.2d 807 (1991) (*citing Whipple v. Fuller*, 11 Conn. 582, 586 (1836)). "[M]alice may be inferred from lack of probable cause." *Id.* (*citing Vandersluis v. Weil*, 176 Conn. 353, 356, 407 A.2d 982 (1978)).

Plaintiff's claims were insufficiently investigated, and the entire suit fit the pattern of Plaintiff and its counsel's hit-and-run *in terrorem* litigation, filed not to seek proper adjudication on the merits but to cash in on groundless settlements.

**A.      Plaintiff's inadequate investigation before suing Olivas showed a lack of good faith.**

Plaintiff's factual grounds for naming Olivas a defendant were so circumstantial as to manifest bad faith. "Plaintiff knows it has no basis for naming the Defendant as the infringer, yet continues to assert the claims against him." Countercl. ¶ 33(e); *see* Doc. 43 pp. 3-4 (well-pleaded allegations against defaulted party taken as true). Plaintiff alleged that, in "a snapshot observation," it detected the IP address 174.62.189.44 in a BitTorrent swarm where "Sexual Obsession" could be shared. Compl. ¶¶ 3, 22-24. The Internet subscriber associated with that IP address was Olivas' *mother*, Janet Olivas. *See* Doc. 21 p. 4. Plaintiff initially accused Ms. Olivas of infringing. Countercl. ¶ 27. Plaintiff's decision to sue Olivas instead was based on a lack of reasonable investigation, and a circumstantial case that was knowingly false. *See id.* ¶¶ 18-21.

The *Ingenuity 13* court identified two distinct flaws with Plaintiff's shoddy investigatory techniques. First, an IP address' brief presence in a swarm does not show it was used to infringe.

> To allege copyright infringement based on an IP snapshot is akin to alleging theft based on a single surveillance camera shot: a photo of a child reaching for candy from a display does not automatically mean he stole it. No Court would allow a lawsuit to be filed based on that amount of evidence.

Doc. 21-1 p. 4. *See also id.* p. 5 ("A reasonable investigation should include evidence showing that Defendants downloaded the entire copyrighted work—or at least a usable portion of a copyrighted work. Plaintiff has none of this—no evidence that Defendants completed their download, and no evidence that what they downloaded is a substantially similar copy of the copyrighted work.").

The second flaw, which the *Ingenuity 13* court found "more troublesome," is how Plaintiff decided who to identify as the infringing defendant "when all it had was an IP address, the name of the Bittorrent client used, the alleged time of download, and an unresponsive subscriber." *Id.* p. 5. Assessing Plaintiff's "deductive process," the *Ingenuity 13* court concluded: "if the subscriber is 75 years old or female, then Plaintiff looks to see if there is a pubescent male in the house; and if so, he is named as the defendant. Plaintiff's 'factual analysis' cannot be characterized as anything more than a hunch." *Id.* p. 6. As the court found, "Plaintiff's deduction falls short of the reasonableness standard required by Rule 11," and "Plaintiff's current investigation ... involves nothing more than blindly

picking a male resident from a subscriber's home." *Id.* pp. 6-7. As the *Navasca* court also noted, "AF's decision to name Mr. Navasca as the infringer was not based on an adequate factual investigation. In a prior order, this Court criticized AF's decision to name Mr. Navasca as the alleged infringer simply because he best fit the demographic that is attracted to its content." Doc. 31-2 p. 3.

It was unreasonable to sue Olivas "based on a single snapshot of Internet activity" and "a statistical guess." Doc. 25-1 p. 10. "A case maintained solely on the basis of mere speculation is one that is maintained in bad faith, and where such a claim 'is pursued through time consuming litigation, or never is investigated minimally to determine its merits, a finding of bad faith is all but mandatory.'" *Tautic v. Patillo*, 41 Conn. Supp. 169, 173, 561 A.2d 988 (1988) (*quoting Harris v. Marsh*, 679 F. Supp. 1204, 1378 (E.D.N.C. 1987)). "[T]he filing of a complaint in our procedure [does not] serve merely as notice of an intent to investigate the cause of an injury ..." *Dreier v. Upjohn Co.*, 196 Conn. 242, 247 (1985).

Plaintiff introduced no evidence against Olivas himself. Its wholly unsubstantiated allegations were "made for no proper purpose, but for the purpose of being oppressive." *Clinipad Corp. v. Aplicare, Inc.*, No. 235252, 1991 Conn. Super. LEXIS 1094, *6-7 (May 21, 1991) (action was brought in bad faith, under Section 52-226a and the Connecticut Uniform Trade Secrets Act, when plaintiff introduced no evidence on its trade secrets claims against several defendants) (applying *Fattibene* standard for bad faith).

**B.      Plaintiff's failure to seek discovery to support its claim showed lack of good faith.**

Plaintiff not only came to court without a colorable claim; it made no attempt to seek discovery in hopes of move the case out of the realm of pure speculation and conjecture. This idle abuse of the mechanics of court procedure manifests bad faith.

Plaintiff filed suit on October 1, 2012. Compl. Plaintiff completed service on January 4, 2013. Countercl. ¶ 30. Olivas answered the complaint on January 25, 2013, denying Plaintiff's factual allegations, and raising counterclaims. Plaintiff never requested any disclosures or discovery from Olivas to support its claims. Plaintiff never provided its required Rule 26(f) initial disclosures and failed to comply with Olivas' requests for discovery. *See* Doc. 27, 27-1, 27-2. Plaintiff's only response to Olivas' discovery requests was that the matter had been forwarded to Paul Duffy of Prenda Law. Doc. 28 ¶ 9; 28-1 ¶ 10.

Plaintiff never offered any evidence that Olivas (rather than someone else in his household, a guest, or a total stranger) was personally involved in the infringing acts alleged. Plaintiff initially accused Olivas' mother of the infringing acts, but shifted focus for undisclosed reasons, more likely demographic than probative. *See* Doc. 21-1 pp. 5-7. This unfounded process was Plaintiff's routine. *See* Doc 40-9 p.3 (in *Navasca*, Plaintiff initially sent settlement demand letters to Mr. Navasca's father, then sent one to Mr. Navasca and named him a defendant).

Plaintiff had no certitude as to the merits of its claims against any member of the Olivas family. Though aware of this lack, Plaintiff sued Olivas, then not only failed to present any evidence that Olivas was liable for infringement as alleged; it also declined to seek any evidence. Plaintiff's action turned out to be more improper than the fishing expedition it at first seemed to be. Plaintiff never even cast its reel.

As in *Navasca*, "AF's case was frivolous and objectively unreasonable in that it never presented any evidence (although it had the opportunity to do so) to support its claim ... " Doc. 31-2 p. 2. The *Navasca* court found frivolousness in relation to the issue of Plaintiff's standing. *Id.* It was just as frivolous to proceed against Olivas without evidence of personal liability.

**C.    Plaintiff's claims were improperly motivated.**

Plaintiff and its counsel brought and maintained this action for purposes other than to obtain just adjudication of Plaintiff's claims. The goal was manifestly not to genuinely litigate on the illusory merits of its claims. "An obvious definition of a frivolous lawsuit is a case in which the plaintiff does not expect initially to prevail at trial." Peter Huang, *Lawsuit Abandonment Options in Possibly Frivolous Litigation Games*, 23 Rev. Litig. 47, 59 (Winter 2004).

**1.    Extensive evidence on the record shows Plaintiff's improper motive in this suit.**

Plaintiff's improper motive is evident in its conduct of this litigation. Plaintiff's failure to genuinely attempt to pursue its claims and its abandonment of suit when faced with a genuine adversary demonstrates its lack of good faith in the process of litigation.

*First*, Plaintiff had *no* interest in "Sexual Obsession" on April 12, 2011, two months before the purported assignment. Nevertheless, its agents were hard at work tracking alleged infringing acts at that time, including the acts falsely ascribed to Olivas. A plaintiff who employs such an "elaborate scheme to place himself in a position to sue the Defendants" shows improper motivation. *Video-Cinema Films, Inc. v. CNN, Inc.*, No. 98 Civ. 7128 (BSJ), 2003 U.S. Dist. LEXIS 4887, *13-14

(S.D.N.Y. Mar. 31, 2003) (finding improper motivation in plaintiff who tracked alleged infringements of a copyrighted work months before obtaining assignment, "trying to find as many potential targets of litigation as possible in the event that Plaintiff was able to buy the copyright to the film").

*Second*, the forgery in that assignment is antithetical to good faith. The Second Circuit has approved an award of attorney's fees to a copyright defendant based on the plaintiff's bad faith related to a forged document. *Viva Video, Inc. v. Cabrera*, 9 Fed. App'x 77 (2d Cir. 2001). In *Viva Video*, the plaintiff submitted its president's affidavit without notifying the court that his signature had been signed not by the president, but by one of its attorneys in the president's name, and plaintiff's counsel notarized the affidavit as if the president had in fact signed it himself. *Id.* at 78; *see id.* at 80 (agreeing that the misconduct warranted an award of fees "related to costs or expenses incurred as a direct result of bad faith conduct"). Plaintiff's forgery likewise showed bad faith. It did not bespeak "honesty of purpose" or "freedom from intention to defraud." *Shea*, 2000 Conn. Super. LEXIS 1546, *11. Plaintiff has not, in this action, *denied* the forgery and related fraudulent acts, or its role in them; it has only tried to avoid their effect.

*Third*, Despite alleging that Olivas was part of a vast conspiracy, Plaintiff sought no discovery from him. In another specious Prenda Law case, the Minnesota Court of Appeals found that evidence of a similar disinterest in discovery "supports the finding that appellants [the plaintiff and its counsel] had no good-faith basis for this litigation." *Guava, LLC v. Merkel*, No. A13-2064, 2014 Minn. App. Unpub. LEXIS 829, *25 (Minn. Ct. App. August 4, 2014) (Plaintiff's counsel Hansmeier for appellants), *also available at* http://mn.gov/lawlib//archive/ctapun/2014/opa132064-080414.pdf. "If there was a true civil conspiracy at play in this action, the Court cannot imagine a scenario where discovery of what Merkel knew regarding his alleged co-conspirators would not be vital information." *Id.* at *16. Plaintiff's failure to pursue any discovery is evidence of its improper motive.

*Fourth*, Plaintiff not only brought suit knowing its claims were fraudulent and without merit.[10] Plaintiff also maintained this action long after it was aware that its claims had no practical chance of success. Evidence of Plaintiff's spurious relationship with Cooper and its counsel had come to light even before Olivas answered the complaint on January 25, 2013. See Countercl. ¶¶ 12-15. Plaintiff soon came under fire in *Ingenuity 13* and began to file a flurry of notices dismissing its pending actions. "After the show−cause order was entered in the Central District of California but before any sanctions were imposed, [Plaintiff's counsel] began voluntarily to dismiss similar cases filed across the country." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 703 (7th Cir. 2014); Doc. 41-1 p. 5. "On February 8, 2013 — i.e., the day after Judge Wright's order to show cause — or in the immediate days thereafter, AF and/or a related entity (Ingenuity 13) initiated voluntary dismissal of numerous copyright infringement cases that they had initiated in federal courts in California." *AF Holdings LLC v. Navasca*, 2013 U.S. Dist. LEXIS 58250, *6 (N.D. Cal. Apr. 23, 2013). In one such case, Plaintiff noticed dismissal even after obtaining a default judgment, with nothing left to prove but damages. *Id.* at *7 (citing *AF Holdings LLC v. Doe*, No. 12-cv-2207 KJM DAD (E.D. Cal. voluntary dismissal filed Feb. 11, 2013)). Three days after the March 11, 2013 show-cause hearing, the *Ingenuity 13* court added Plaintiff to the list of parties ordered to show cause why it should not be sanctioned, and ordered Plaintiff to appear at a second show-cause hearing. *Ingenuity 13*, ECF No. 86, No. 2:12-cv-08333-ODW (C.D. Cal. Mar. 14, 2013). That day, Plaintiff started another wave of dismissals by notice. *See* Timothy Lee, *Panicked porn troll Prenda Law now dismissing pending lawsuits*, Ars Technica (Mar. 15, 2013), http://arstechnica.com/tech-policy/2013/03/panicked-porn-troll-prenda-law-now-dismissing-pending-lawsuits/. Plaintiff knew the jig was up.

But Plaintiff refused to withdraw in this case. At the March 20, 2013 pre-filing conference, Plaintiff declared that it intended to file a motion to dismiss the counterclaims, and the Court set an April 19, 2013 deadline to file. Doc. 23, 24. Plaintiff ignored the deadline. On May 8, 2013 Olivas filed notice of the *Ingenuity 13* order sanctioning Plaintiff for fraud on the court. Doc. 25. Though the

---

[10] Plaintiff's attorney Steele knew before this action was initiated that he had acquired (or placed) a forged signature on the assignment on Plaintiff's behalf. Therefore Plaintiff knew, as Steele knew, that the document grounding its claims was a fraud, because his knowledge is imputed to his client. *See SEC v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) ("each party is deemed bound by the acts of his lawyer-agent"); *Tucker v. Am. Int'l Group, Inc.*, No. 3:09-cv-1499 (CSH), 2012 U.S. Dist. LEXIS 11584, *59-60 & n. 35 (D. Conn. Jan. 31, 2012) (collecting cases); *Allen v. Nissley*, 184 Conn. 539, 542-43 (Conn. 1981) ("The general rule is that the acts of an attorney are imputed to a client when they are performed in the furtherance of the business for which the attorney has been retained.").

preclusive effect of *Ingenuity 13* had taken hold, Plaintiff would not walk away from Olivas. On May 24, 2013, the Court gave notice seeking the parties' local Rule 26(f) report. Doc. 26. Plaintiff declined to participate in the report, putting the burden on Olivas. Doc. 27. Plaintiff gave no material response to Olivas' requests for discovery. *See* Doc. 28 ¶¶ 7-9; 28-1 ¶¶ 8-10. Plaintiff's own local counsel withdrew for fear of incurring Rule 11 or RICO liability by continuing to represent Plaintiff. Doc. 31 p. 4. Even then Plaintiff declined to dismiss its claims. Both Olivas and the Court proceeded toward disposing of the case while Plaintiff stayed absent for more than a year. Though attorney Steele filed a motion to "dismiss" Olivas' motion for default judgment, he did so *pro se* instead of formally appearing on behalf of Plaintiff, his long-time client, as he had in other cases. Doc. 40; *see AF Holdings LLC v. Doe*, 286 F.R.D. 39 (D.D.C. 2012) (Steele appearing for Plaintiff through Prenda Law). Plaintiff and its counsel showed bad faith in requiring Olivas and the Court to pick up the pieces of this suit after Plaintiff knew it would not prevail. *See Moorman v. Khan*, No. CV095025473S, 2014 Conn. Super. LEXIS 1261, *8-9 (Conn. Super. May 21, 2014) (vexatious litigation suit lies against party who failed to withdraw, and prosecuted and maintained, claims it knew were baseless).

*Fifth*, Plaintiff abdicated its role as a litigant. It sued only when its settlement demands to both Olivas and his mother were not met. At least in theory, active litigation provided a more intimidating platform for its demands, which continued during the pendency of the case. Plaintiff resorted to deception and delay, trying to eke out a settlement while keeping its specious claims on life support with the least effort possible. Plaintiff declined to participate in preparing for the pre-Rule 26(f) conference. Plaintiff never answered Olivas' counterclaims. Plaintiff misled the Court, insisting that it would file a motion to dismiss, and violated the Court-ordered deadline to do so. Plaintiff's counsel's declaration that he had been given permission to voluntarily dismiss its claims also bore no fruit. Plaintiff allowed its counsel to withdraw without substitution, but declined to dismiss its own claims.

Plaintiff was only playing chicken. Its conduct manifests improper motivation.

In a recent copyright case in this Circuit, also dismissed for failure to prosecute, a similar pattern of abusive conduct was detailed:

> Not only was plaintiff's copyright infringement claim so without merit as to make it objectively unreasonable, but so too was plaintiff's conduct in the litigation. *Plaintiff was put on notice of the weakness of its claim before the suit was brought*, but

nevertheless chose to commence this action, requiring [defendant] to defend itself against public allegations of copyright infringement and expend significant sums of money in doing so. Plaintiff apparently, however, did not care enough to engage in the process or pursue the matter on its merits and *basically abandoned the case*, after [defendant] engaged in considerable discovery (but with minimal expenditure of time or effort on plaintiff's part), *stopping contact with its attorney and failing even to show up for the attorney's motion to withdraw*, leading its case to be dismissed with prejudice. *All of this conduct is characteristic of abusive litigation* and further supports an award of fees and costs to [defendant].

*Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 Civ. 139 (GEL), 2009 U.S. Dist. LEXIS 29343, *12-13 (S.D.N.Y. Apr. 7, 2009) (emphasis added). As in *Diplomatic Man*, Plaintiff (and Steele, Hansmeier and Duffy) left at sea not just this action, Olivas, and the Court, but their own local counsel.

"A plaintiff cannot invoke the benefits of the judicial system without being prepared to satisfy its obligations as a litigant." *AF Holdings LLC v. Navasca*, No. 3:12-cv-02396-EMC, 2013 U.S. Dist. LEXIS 58250, *14 (N.D. Cal. Apr. 4, 2013) (citing *AF Holdings, LLC v. Magsumbol*, No. 12-4221 SC, 2013 U.S. Dist. LEXIS 25572, *2 (N.D. Cal. Feb. 25, 2013)). Olivas should be afforded every opportunity to redress the bad faith of Plaintiff and its counsel.

**2.     Plaintiff's improper motive in this suit is consistent with its pattern in similar cases.**

This action is just one of hundreds of instances of what the *Ingenuity 13* court called "vexatious litigation designed to coerce settlement" conducted by Plaintiff and its counsel. Doc. 25-1 p. 4. It fits their vexatious pattern so precisely that a finding of lack of good faith is further supported.

5.   For defendants that refused to settle, the Principals engaged in vexatious litigation designed to coerce settlement. These lawsuits were filed using boilerplate complaints based on a modicum of evidence, calculated to maximize settlement profits by minimizing costs and effort.

6.   The Principals have shown little desire to proceed in these lawsuits when faced with a determined defendant. Instead of litigating, they dismiss the case. When pressed for discovery, the Principals offer only disinformation—even to the Court.

*Id.* (calling Steele, Hansmeier, and Duffy "Principals"). *Accord Millennium TGA, Inc. v. Comcast Cable Commc'ns, LLC*, 286 F.R.D. 8, 15 (D.D.C. 2012) (Steele and Duffy for plaintiff) ("the lawyers representing Plaintiff in this case commonly bring these BitTorrent copyright actions, seek identifying information, keep the case pending for several months, and then never prosecute the lawsuit against those subscribers who do not settle with them"). Federal appellate courts have also recognized this aspect of Plaintiff and its counsel's bad faith:

> If an identified defendant sought to actually litigate, [Plaintiff's counsel] Prenda Law
> would simply dismiss the case. ... As Duffy acknowledged at oral argument, of the
> more than one hundred cases that AF Holdings has initiated, none has proceeded to
> trial or resulted in any judgment in its favor other than by default.

Doc. 41-2 pp. 4-5 (*AF Holdings, LLC v. Does 1-1,058*, 752 F.3d 990, 993 (D.C. Cir. 2014))

(citing *Ingenuity 13*, Doc. 25-1 p. 4) (discussing "Prenda Law's *modus operandi*")). *See also* Doc.

41-1 (*Lightspeed Media Corp. v. Smith*, 761 F.3d 699 (7th Cir. 2014)) (affirming 28 U.S.C. § 1927

and contempt sanctions against Steele, Hansmeier, and Duffy).

"[S]erial litigation" generated by such a "litigation factory" has been found to exemplify "the

ill-motivated, unreasonable, and frivolous type of lawsuit[.]" *Gordon v. Virtumundo, Inc.*, No.

06-0204-JCC, 2007 U.S. Dist. LEXIS 55941, *16-17 (W.D. Wash. Aug. 1, 2007) (CAN-SPAM Act

case)(*citing Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994)). A finding of improper motive

is fully supported on the record in this case.

**3.     A finding of Plaintiff's bad faith is dictated by its concession of the counterclaims'
        factual allegations through its default, and the issue-preclusive effect of *Ingenuity 13*.**

By defaulting, Plaintiff conceded the well-pleaded allegations in the counterclaim. Doc. 43

pp. 3-4. Among those allegations: "Plaintiff intentionally failed to disclose and concealed pertinent

and material information regarding Plaintiff's knowledge of the falsity of certain claims, its lack of

standing, and the ulterior or illegitimate purpose for which the complaints and summons were

employed." Countercl. ¶ 32. Plaintiff's action, like all its others, was improperly motivated by the

ulterior purpose of generating quick settlements for its attorneys.

Plaintiff exists solely for the purpose of litigation. Doc 25-1 ("*Ingenuity 13*") p. 5. Plaintiff

admitted in *Navasca* that it has never recognized any revenue through any source other than

settlement proceeds from litigation; it has not sought to recognize revenue through legitimate

licensing of its copyrighted works. Ex. B 21:9-17. But Plaintiff has also never received any

distribution of the settlements its attorneys arrange on its behalf. Those proceeds pay only for its

"litigation-related expenses," and are otherwise kept in trust to be used in future actions aimed at

further settlements. *Id.* 10:4-11:10. "[A]ny proceeds of settlements generated aren't distributed to AF

Holdings, but are instead used to either pay for previously incurred expenses or held by the attorneys

to pay for future litigation expenses." *Id.* 80:24-81:14. "There has never been a distribution out of

money held in trust for AF Holdings by its various attorneys, that has gone to anything other than the

litigation expense," according to Plaintiff. *Id.* 106:6-20. As per its *modus operandi*, those "litigation-

related expense[s] ... include expenses paid to AF Holdings' attorneys for the work that they have done on AF Holdings cases." *Id.* 107:13-108:3. That sole purpose, to generate windfall settlements for Plaintiff's counsel, excluded any supposed purpose to benefit the shell company Plaintiff. "The purpose of the litigation isn't to generate money for AF Holdings." *Id.* 106:20-22.

Plaintiff would be precluded from denying that its litigation serves only that ulterior purpose: to benefit not Plaintiff but its lawyers. At the *Ingenuity 13* show-cause hearing, the court concluded "that all of these lawsuits are being prosecuted on behalf of the lawyers, that all of the settlement funds inure solely to the benefit of the lawyers because not dime one has been transmitted to AF Holdings or to Ingenuity 13." Ex. A 17:7-14. This led the court to its finding, in the sanctions order, that Steele, Hansmeier, and Duffy "possessed all financial interests in the outcome of each case." Doc. 25-1 p.5. *See also Navasca*, Doc. 40-9 p. 17 (noting *Ingenuity 13* court's "findings (which AF, Steele, and Hansmeier are precluded from relitigating) establish that Steele and Hansmeier are the alter egos of AF...," including its finding that "they kept all litigation proceeds AF 'earned'").

Olivas is entitled to seek relief from the costs he incurred in defending this bad faith action.

## CONCLUSION

Wherefore, Olivas requests that the Court make a special finding, to be incorporated in the judgment or made a part of the record as the case may be, that the action, or any of its counts, was without merit, and was not brought in good faith, pursuant to Conn. Gen. Stat. § 52-226a; and grant Olivas all other relief appropriate in the Court's discretion.


Dated: February 20, 2015                        Respectfully,

                                                /s/ Jason E. Sweet

                                                Jason E. Sweet (BBO# 668596)
                                                BOOTH SWEET LLP
                                                32R Essex Street
                                                Cambridge, MA 02139
                                                Tel.: (617) 250-8619
                                                Fax: (617) 250-8883
                                                Email: jsweet@boothsweet.com

                                                *Pro Hac Vice*
                                                *Counsel for Elliot Olivas*

**CERTIFICATE OF SERVICE**

I hereby certify that on this February 23, 2015, I electronically filed the foregoing Defendant's Memorandum in Support of His Request for a Special Finding Against Plaintiff Pursuant to Conn. Gen. Stat. § 52-226a, and its exhibits, by using the Court's ECF system.

As Plaintiff's counsel has withdrawn without substitution, paper copies will be served via first-class mail on February 23, 2015 to Plaintiff, c/o Mark Lutz, its ostensible owner, at his last known address (910 West Avenue #1014, Miami Beach, FL 33139).

Paper copies will also be sent via first-class mail on February 23, 2015 to movant John Steele, at his address listed on the docket in this action (1111 Lincoln Road, Suite 400, Miami Beach, FL 33139) and electronic copies will be sent to his e-mail address listed on the docket of *Lightspeed Media Corp. v. Smith*, No. 3:12-cv-00089 (S.D. Ill.): jlsteele@wefightpiracy.com.

Paper and electronic copies will also be sent via first-class mail and e-mail on February 23, 2015 to Plaintiff's other attorney Paul Hansmeier, at his addresses listed on the docket in *AF Holdings, LLC v. Doe*, 12-cv-01445 (D. Minn.): Class Action Justice Institute LLC, 40 South 7th Street, Suite 212-313, Minneapolis, MN 55402, mail@classjustice.org.

Paper and electronic copies will also be sent via first-class mail and e-mail on February 23, 2015 to Plaintiff's other attorney Paul Duffy, at his addresses listed on the docket in both *AF Holdings, LLC v. Does*, No. 12-cv-00048 (D.D.C.) and *Lightspeed Media Corp. v. Smith*, No. 3:12-cv-00089 (S.D. Ill.): Prenda Law, Inc., 161 N. Clark Street Suite 3200, Chicago, IL 60601, paduffy@wefightpiracy.com.

/s/ Jason E. Sweet